USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_9/24/2019__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

THE TRAVELERS INDEMNITY CO., et. al.,   :
                                        :
                    Plaintiffs,         :
                                        :        16 Civ. 8778 (LGS)
          -against-                     :
                                        :        **OPINION AND ORDER**
NORTHRUP GRUMMAN CORP., et. al.,        :
                                        :
                    Defendants.  :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Travelers Insurance Indemnity Company ("Travelers") moves for a declaration on summary judgment that it is not obligated to cover any natural resource damages claim ("NRD Claim") against Defendant Northrup Grumman Corporation ("Grumman") by the State of New York. Travelers argues that Grumman did not give timely notice of a claim or occurrence, which are prerequisites to coverage. For the reasons below, the motion is granted.

## I. BACKGROUND

This background narrative construes disputed facts, as required, in favor of Grumman, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017). The issue on this motion is whether Travelers must cover any NRD Claim pertaining to the Bethpage Facility (the "Facility") or Bethpage Community Park (the "Park") (collectively, the "Bethpage Area"). Familiarity is assumed with the Bethpage Area events, which are discussed in a related summary judgment opinion. *See Travelers Indem. Co., et al. v. Northrup Grumman Corp., et al.*, No. 16 Civ. 8778, 2019 WL 4572761 (S.D.N.Y. Sept. 20, 2019) ("*Romano* Travelers Opinion").

## A. Regulatory Context of NRD Claims

The federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, empowers states to bring NRD Claims, which are claims for monetary damages used to restore or compensate for damaged natural resources. Under CERCLA, only designated "trustees" can assert NRD Claims on behalf of a state, against responsible parties.

The New York State Department of Environmental Conservation ("NYSDEC") became a CERCLA trustee on November 30, 1987. Before the designation, only the New York state Attorney General ("NYAG") pursued NRD Claims, none of which were against Grumman. NYSDEC's authority to bring NRD Claims exists alongside its authority to order environmental "remediation" or cleanup actions, under both CERCLA and New York statutes. NYSDEC considers NRD Claims to be "residual" to remediation, because the agency will only assert such claims when "injuries or service losses remain after remedial efforts are complete." Before bringing an NRD Claim, a trustee may conduct a natural resource damage assessment ("NRDA") to determine the necessity of an NRD claim.

## B. The Insurance Policies

All insurance policies, relevant to Travelers' coverage of an NRD Claim, have a notice of claim provision: "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." Failure to comply with this provision precludes coverage.

The policies also contain notice of occurrence provisions, although the Majority Primary Policies, Minority Primary Policies and Umbrella Policies, defined in the *Romano* Travelers Opinion, 2019 WL 4572761, at *1-2, have distinct provisions. While the Majority Primary

Policies require notice of events that result in injury, the Minority Primary Policies and Umbrella Policies require only notice of injury itself.

### C. Grumman's and NYSDEC's Interactions

Around the 1980s, NYSDEC and Grumman began communicating about remediation activity in the Bethpage Area. The parties dispute whether and at what point NYSDEC asserted an NRD Claim against Grumman.

#### a. The 1983 Letter

On December 6, 1983, NYSDEC sent Grumman a letter (the "1983 Letter"), notifying Grumman that it might have liability under CERCLA. Grumman forwarded the letter to its insurance broker, but the broker did not successfully deliver the letter to Travelers.

The letter is on NYSDEC letterhead and signed by a NYSDEC official. Its subject line, "Site 130003 - Grumman Aerospace Corp. Bethpage," referred to a sludge drying bed at the Facility. In a public registry, NYSDEC classified the site as "2a," meaning that NYSDEC had "insufficient data" to rate the severity of the site, but had not yet identified any groundwater violation. The letter provides:

> In accordance with the provisions of [CERCLA], [NYSDEC] has determined that you may be responsible for the release or threatened release of hazardous substances at the above-referenced site. As a potentially responsible party, you may be liable for the present and future costs of response, removal and remediation and for damages to the natural resources of the State of New York at and around the referenced site.
>
> In view of the foregoing, this letter constitutes a claim by the State of New York pursuant to 42 U.S.C. § 9612(a) for all costs, damages and claims recoverable now and in the future under federal and state law, including CERCLA. Unless, in a timely fashion, all investigative, removal and remedial work necessary at the site and its environs is performed and unless the State is reimbursed for all damages to its natural resources and for all past, present and future response, removal and remediation costs, this claim will not have been satisfied. In such event, the State of New York may hold you liable and subject to New York's claims under federal and state law through legal action."

At the time, the referenced provision, 42 U.S.C. § 9612(a) (1980), required advance notice of an intent to assert CERCLA claims.

### b. Remediation Activity in the 1980s-2010s

In late 1987, NYSDEC expanded "Site 130003" to include the "entire 600 acre Bethpage complex." NYSDEC reclassified the site as "2," meaning that the site posed a "significant threat to the public health or environment." NYSDEC then divided the Bethpage Area into three operable units ("OUs") for investigation: OU1 refers primarily to Facility soil, OU2 refers to groundwater at and around the Facility and OU3 to the Park.

On October 25, 1990, Grumman entered into a consent order with NYSDEC (the "1990 Consent Order"), which mandated a "remedial investigation/feasibility study" ("RI/FS") of Facility contamination. The parties entered into three more consent orders in May 2005, May 2014 and April 2015, which required respectively an RI/FS for the Park, Park cleanup and Facility groundwater cleanup. Each consent order expressly reserved NYSDEC's right to assert NRD claims against Grumman in the future.

NYSDEC also issued Records of Decision ("RODs"), setting out findings on Bethpage Area contaminations and the agency's selected remedies. Two RODs in 1995 and 2001 discuss Facility cleanup remedies, and an ROD in 2013 discusses Park remedies.

On May 23, 2019, NYSDEC published a proposed Amended ROD that supplements the prior RODs on groundwater remedies.[1] After a public comment period, NYSDEC intends to publish a final Amended ROD.

_____

[1] The parties notified the Court of NYSDEC's proposed Amended ROD and a related press release after summary judgment briefing was completed. *See* Dkt. No. 260 at 1 n.1 & n.2.

### c. Communications regarding Potential NRD Claims

At the same time that NYSDEC and Grumman communicated about remediation, they also communicated about potential NRD Claims.

For example, at an August 2000, meeting, NYSDEC proposed that it would never pursue any NRD Claims against Grumman, if Grumman agreed to implement certain remediation activities. Two weeks later, NYSDEC withdrew this suggestion, because it "would be giving away too much, i.e., the value of the NRD claim[.]"

At an October 28, 2011, meeting, NYSDEC said that, if Grumman did not consider a cleanup remedy that NYSDEC proposed, the agency could bring an NRD Claim instead. A NYSDEC official stated that the NRD Claim would be worth $300 million, but did not substantiate the figure.

On August 3, 2016, NYSDEC sent Grumman a letter, entitled "Notice of Intent to Perform a Natural Resources Damages Assessment" (the "NRDA Notice Letter"). The letter states that NYSDEC, as "natural resource trustee, has concluded its preliminary investigation of potential injuries to groundwater resources under its trusteeship that may have occurred as a result of releases/discharges of hazardous substances at, or from" the Facility. "Currently implemented and planned response actions will not sufficiently remedy the injury to groundwater[.]" Grumman may be "liable for the subsequent natural resource damages relating to these releases."

In a July 21, 2017, letter, responding to Grumman's third-party subpoena in this action, NYSDEC clarified that the NRDA Notice Letter did not actually assert an NRD Claim: "The letter from [NYS]DEC dated August 3, 2016 . . . which Travelers characterizes as a claim, is by its plain terms not a claim. Rather, by its plain language it is merely an invitation to . . .

participate in the NRD assessment process." "[D]eclin[ing] the invitation" would not result in "enforcement proceedings or penalties" against Grumman. The letter also stated that NYSDEC had never asserted an NRD Claim. Grumman informed Travelers of the July 21, 2017, letter, and filed a copy in this case.

On May 23, 2019, Governor Cuomo issued a press release (the "Press Release") which accompanied NYSDEC's proposed Amended ROD. The release states that NYSDEC "will soon [] releas[e] a Natural Resource Damages report under the federal Superfund law [CERCLA] that determines that groundwater was substantially impacted and needs to be restored."

Grumman filed a letter in this action on May 28, 2019, regarding the Press Release. The letter copies Travelers and links the Press Release. Grumman states in the letter that NYSDEC "has apparently conducted the Natural Resource Damages Assessment" for Facility area groundwater. In a May 29, 2019, response letter, Travelers states that Grumman's May 28, 2019, letter was the first time Grumman "advise[d] Travelers of the Governor's announcement about NYSDEC's completion of its NRD assessment."

### D. The *Grumman I* Litigation

In a related action, Travelers sought a declaratory judgment that it was not obligated to cover Bethpage Area remediation actions brought by NYSDEC and other public actors against Grumman. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79, 84 (S.D.N.Y. 2014), *aff'd*, 677 F. App'x 701, 704 (2d Cir. 2017) ("*Grumman I*"). In granting Travelers' summary judgment motion, Judge Forrest held, with respect to the remediation actions, that "Grumman was subject to a claim at least as early as December 1983" when Grumman received the 1983 Letter, but Grumman did not give timely notice to Travelers. *See id.* at 112-13. Grumman's "notice was due as to an occurrence" related to Facility groundwater remediation "by the late 1970s." *Id.*

## II.     STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248).

Under New York law,[2] compliance with the notice provisions in insurance policies, issued before 2009, "is a condition precedent to an insurer's liability under the policy," irrespective of whether noncompliance prejudiced the insurer. *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995); *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726 (2d Cir. 2014) (New York statute

---

[2] New York law governs the insurance policies. The parties have assumed that New York law applies throughout the litigation. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (Because "the parties' briefs assume that [a given] state law governs," such "implied consent is sufficient to establish the applicable choice of law.")

requiring an insurer be prejudiced to assert untimely notice defenses applies only for insurance policies issued after 2009). Whether an insured's notice is timely depends on (1) when the insured's notice obligation arose and (2) whether the insured promptly gave notice within the timeframe of the policy. *See Mark A. Varrichio & Assocs. v. Chicago Ins. Co.*, 312 F.3d 544, 547 (2d Cir. 2002) (For a notice of "immediate" suit or claim requirement, "even a relatively short delay in providing notice violates that requirement."); *Great Canal Realty Corp. v. Seneca Ins. Co.,* 5 N.Y.3d 742, 743 (2005) ("Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time.") (citation omitted).

## III.  DISCUSSION

Summary judgment is granted to Travelers. Travelers has no coverage obligation for any NRD Claim pertaining to Facility area groundwater, because Grumman did not give timely notice of the relevant occurrence or injury for the claim. Grumman did, however, give timely notice of the claim itself.

### A.    Notice of Claim

Grumman's notice of claim obligation arose on May 23, 2019, when the Press Release announced NYSDEC's intention to pursue an NRD Claim against Grumman. Grumman timely notified Travelers of the Press Release five days later.

All relevant insurance policies require Grumman to give notice "immediately" when a "claim is made or suit is brought against the insured." While the policies do not define "claim," the Second Circuit has stated that the ordinary meaning of "claim," in the absence of an express policy definition, is "an assertion by a third party that in the opinion of that party the insured may be liable to it for damages which are within the risks covered by the policy." *Andy Warhol*

8

*Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999) (*quoting Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir.1995)).  The assertion must be of a "legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer," but the "institution of a formal proceeding" is not required.  *See Fairchild*, 56 F.3d at 439 (*quoting Evanston Ins. Co. v. GAB Bus. Servs., Inc.*, 521 N.Y.S.2d 692, 695 (1st Dep't 1987)).

NYSDEC did not assert any NRD Claim until the May 23, 2019, Press Release. Grumman acknowledges that the release demonstrates NYSDEC completed an NRDA.  The NRDA in turn "determine[d] that groundwater was substantially impacted and needs to be restored" by Grumman.  NYSDEC's August 3, 2016, NRDA Notice Letter previewed that the NRDA would focus on Facility area groundwater.  The release is therefore a plain "assertion" by NYSDEC that Grumman "may be liable" for Facility area groundwater "restor[ation]."  *See Andy Warhol*, 189 F.3d at 215.  Although Govenor Cuomo's office published the release, the office can authoritatively speak on behalf of NYSDEC and expressly attributed the NRDA results to NYSDEC.

After Grumman's notice of claim obligation arose on May 23, 2019, it promptly notified Travelers of the claim by letter on May 28, 2019.  All insurance policies require that Grumman "immediately forward" any claim to Travelers.  Whether an insured has acted "immediate[ly]" does not require instantaneous delivery but "reasonabl[y]" prompt delivery "under all the circumstances."  *See*, *e.g.*, *Fein ex rel. Estate of Fein v. Chicago Ins. Co*., 2003 WL 21688239, at *4-5 (S.D.N.Y. July 18, 2003) (*quoting Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992)); *Sirignano v. Chicago Ins. Co.*, 192 F. Supp. 2d 199, 203, 206 (S.D.N.Y. 2002) (plaintiff's forwarding of claimant's February 15, 2001 letter to insurer on February 20, 2001

satisfied the immediate "notice-of-claim or suit condition").  The Press Release was issued on a

Thursday, and Grumman filed a letter, linking and discussing the Press Release, the following

Tuesday.  Although Grumman's letter was addressed to the Court, the letter explicitly copies

Travelers in the "CC" line.  Travelers acknowledged receipt of the Press Release from Grumman

in a May 29, 2019, response letter.  Grumman's notice to Travelers five days after the Press

Release was published is reasonably immediate.

Travelers' arguments that an NRD Claim was asserted as early as the 1983 Letter,

subsequently at meetings in 2000 and 2011 and again in the 2016 NRDA Notice Letter are

rejected.  First, NYSDEC's July 21, 2017 letter, clarifying that it had not asserted an NRD Claim

yet, forecloses these arguments.  In *Fairchild*, 56 F.3d at 439 (emphasis added), the Second

Circuit emphasized that the notice of claim analysis "focuses on the actions of *third part[y]*"

*claimants*."  NYSDEC's actions in the July 21, 2017 letter -- its explicit statement that it had

never asserted an NRD Claim, its disavowal that the August 3, 2016, letter's invitation to

participate in an NRDA constituted a claim, and its position that whether NYSDEC asserts an

NRD Claim depends "on the results of the *yet to be undertaken* NRD assessment" -- are

controlling.  They preclude finding that NYSDEC had asserted an NRD Claim by that time.

Travelers' arguments have other infirmities.  The 1983 Letter cannot assert an NRD

Claim because NYSDEC did not have authority to do so at the time.  "[T]o constitute a claim

within the meaning of an insurance policy, the demand must be by the third party to whom a

right has allegedly accrued."  *Andy Warhol*, 189 F.3d at 215.  In 1983, NYSDEC had not been

designated a "trustee" for NRD Claims yet.  Under *Andy Warhol*, the 1983 Letter can only assert

claims to which NYSDEC had a right, *i.e.* remediation claims, as *Grumman I* held.[34]  *See*

*Grumman I*, 3 F.Supp.3d at 112.   Nor can an improper assertion of an NRD Claim by NYSDEC,

in the absence of trusteeship authority, be deemed a "claim."  Although sometimes baseless

assertions of liability are "claims," they are not when circumstances "negate the possibility of a

formal proceeding."  *Fairchild*, 56 F.3d at 439.  In 1983, NYSDEC indisputably could not bring

a "formal proceeding" for NRD Claims without trusteeship authority.

NYSDEC's threats in 2000 and 2011 to bring NRD Claims also were not "claims."  By

using these threats as bargaining chips, NYSDEC revealed that it was not asserting claims, but

*withholding* the claims as leverage to compel Grumman's remediation compliance.  *Accord*

*Garfield Slope Hous. Corp. v. Pub. Serv. Mut. Ins. Co.*, 973 F. Supp. 326, 329, 336 (E.D.N.Y.

1997) (threat to bring claim over toxic carpet was not a "claim" because, although "implicit in

such a demand is the suggestion that [the insured] may be liable for damages," the demand was

actually for an action, *i.e.* removal of the carpet).  NYSDEC sought from Grumman compliance

with certain remediation actions, not monetary damages which could be "defended, settled and

paid by the insurer" at the time.  *Fairchild*, 56 F.3d at 439.

---

[3] *Grumman I* did not decide whether the 1983 Letter asserted NRD Claims, and instead focused
on remediation claims, the subject of the coverage dispute.  *See Grumman I*, at 3 F.Supp.3d at
112-13.  Although the opinion mentions in passing that the 1983 "letter also refers to a claim for
damages to natural resources," *see id.* at 92, the court ultimately held that "Grumman was subject
to a claim at least as early as December 1983, when the . . . letter initiated a formal proceeding
against Grumman."  NYSDEC indisputably did not and could not bring a "formal proceeding"
for NRD in 1983, *see id*. at 112.  *Grumman I*'s holding therefore refers only to remediation
claims.  Likewise, *Fairchild*'s dicta that a "powerful argument" could be made that a similar
letter as the 1983 Letter, from NYSDEC to an insured, might assert a "claim" is not binding,
because *Fairchild* is discussing notice of a claim for *remediation*.  *See Fairchild*, 56 F.3d at 439.
Travelers' collateral estoppel arguments based on *Grumman I* are rejected.

[4] Although NYSDEC did not directly publish the Press Release, the release explicitly speaks on
behalf of, and represents the authoritative position of, NYSDEC.  As a result, the Press Release
does not contravene the *Andy Warhol* principle.  The letter at issue in *Andy Warhol* did not
expressly speak on behalf of any other party beside the author.

### B. Notice of Occurrence or Injury

Travelers has no coverage obligation for the NRD Claim, based on groundwater

contamination at and around the Facility, because Grumman failed to give timely notice of the

relevant "occurrence" or "injury" under all policies.

### 1. The Majority Primary Policies

The Majority Primary Policies require Grumman to give notice of an "occurrence" as

soon as practicable. An "occurrence," under these policies, is defined as an exposure to injurious

conditions. *Romano* Travelers Opinion, 2019 WL 4572761, at *1-2. Functionally, Grumman

must give notice as soon as it has "sufficient information reasonably to apprehend that a

colorable claim" of injury could be made against it due to an exposure. *Id.* at *6-7. To the

extent any NRD Claim arises from the "occurrence" of Facility groundwater contamination,

Travelers has no coverage obligation due to late notice of occurrence, for the reasons discussed

in the Travelers *Romano* Opinion. *See id.* at *8-9.

Grumman argues that this ruling is premature if NYSDEC has not yet asserted an NRD

Claim. As discussed, NYSDEC has asserted a claim. The contours of the present dispute are

clear. This action resolves only whether an NRD Claim that arises from Facility area

groundwater contamination is coverable. This limitation reflects how NYSDEC has defined the

issue. Since the 1980s, NYSDEC has issued consent decrees, RODs and a proposed amended

ROD, the NRDA Notice Letter and a preview of the NRDA results in the Press Release which

all indicate that the pending NRD Claim focuses on Facility area groundwater contamination.

The NRDA Notice Letter previews, for example, that the NRD Claim concerns "injuries to

groundwater" around the "Grumman Bethpage" Facility that "currently implemented response

actions will not sufficiently remedy[.]" The Press Release confirms NYSDEC completed this

NRDA.  To the extent NYSDEC brings NRD Claims for any other contaminations, this decision does not address those hypothetical claims.

The *Romano* Travelers Opinion concluded that, under the Majority Primary Policies, Facility groundwater contamination is one "occurrence" and Grumman failed to give timely notice of this occurrence by the late 1970s.  *See id.* at \*7-8.  *Grumman I* also provides strong persuasive authority.  Judge Forrest determined, for coverage of remediation actions concerning Facility groundwater contamination, Grumman's "notice was due as to an occurrence by the late 1970s."  *Grumman I*, 3 F. Supp. 3d at 112-13.  The NRD Claim arose only after the *Grumman I* remediation actions proved insufficient, as the Press Release announced.  In *Olin*, 966 F.2d at 723-24, the Second Circuit held that the relevant "occurrence," for two different lawsuits based on injuries in disparate locations, was the initial water contamination caused by a chemical plant leak.  Similarly, the NRD Claim, the *Grumman I* remediation claims and Travelers *Romano* claims all trace back to the same Facility groundwater contamination. Grumman was therefore required to notify Travelers of this occurrence by June 1976, but did not timely do so.

Grumman argues that it could not give notice by June 1976, because NRD Claims did not exist then and CERCLA was not passed until 1980.  But *Olin* requires an insured give notice as soon as it knows of *any* colorable claims, not when it knows of particular claims.  *See Olin*, 966 F.2d at 723-24 ("The filing of [an earlier] suit [preceding the one at issue] would have suggested to a reasonable person the possibility of other claims, and would surely have alerted a reasonable person to suspect that other claims by varied plaintiffs with more attenuated injuries might follow," therefore notice of occurrence was due upon the filing of the earlier suit.) (internal quotation marks omitted).  By June 1976, Grumman was aware of its exposure to various claims, even if not to the NRD Claim specifically.

13

### 2. The Minority Primary Policies and Umbrella Policies

The Minority Primary Policies and Umbrella Policies require that Grumman give notice of an "injury," not an "occurrence." *See* Travelers *Romano* Opinion, 2019 WL 4572761, at \*2. Under these policies, the damage to groundwater asserted in the NRD Claim is "property damage." *See Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 875 (S.D.N.Y. 2018) (damage to environmental resources is a type of "property damage"). The Minority Primary policies define "property damage" as either:

> (1) physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The Umbrella Polices define "property damage" simply as "injury to or destruction of tangible property."

By June 1976, Grumman was required to notify Travelers of the groundwater injury.[5] Specifically, Grumman knew by that time that aggressive remedial measures might not entirely abate groundwater contamination; the contamination had likely reached an underlying aquifer; Grumman employees should not drink the groundwater; and groundwater contaminants exceeded regulatory limits, among other facts.[6] *See* Travelers *Romano* Opinion, 2019 WL 4572761, at \*8. Under the definitions of "property damage" in the Minority Primary Policies and Umbrella

---

[5] The date on which Grumman knew of a groundwater injury for notice purposes is self-evidently not the same as when Grumman knew of an NRD Claim. Notice of occurrence or injury analysis focuses on what an insured reasonably understands from its perspective, while the notice of claim analysis focuses on the objective actions of a third-party claimant.

[6] Although the *Romano* Travelers Opinion discusses the June 1976 notice obligation and December 1976 late notice in the context of the Majority Primary Policies, the analysis is relevant here. The opinion found that Grumman's notice obligation arose when the insured reasonably understood that the groundwater was sufficiently injured to give rise to colorable claims. *See Romano* Travelers Opinion, 2019 WL 4572761 at \*8. Similarly, the analysis here focuses on when Grumman reasonably understood the groundwater was injured.

Policies, these facts demonstrate the loss of use of and direct injury to groundwater. As Judge

Forrest held in *Grumman I*, Grumman "had an obligation to provide Travelers with notice by the

late 1970s, based on 'property damage'" to the groundwater. *Grumman I*, 3 F. Supp. 3d at 112.

The earliest Grumman gave notice of this injury was December 1976, which was untimely as a

matter of law. *See* Travelers *Romano* Opinion, 2019 WL 4572761, at *8.

## IV.  CONCLUSION

For the foregoing reasons, Travelers' motion is GRANTED. Travelers has no coverage

obligation for any NRD Claim arising out of groundwater contamination at and around the

Bethpage Facility.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 204.

Dated: September 24, 2019
      New York, New York

                LORNA G. SCHOFIELD
             UNITED STATES DISTRICT JUDGE