UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/26/2019__
```

-------------------------------------------------------------- X
THE TRAVELERS INDEMNITY CO., et. al.,       :
                                         :
                           Plaintiffs,   :
                                         :        16 Civ. 8778 (LGS)
                     -against-            :
                                         :        **<u>OPINION AND ORDER</u>**
NORTHRUP GRUMMAN CORP., et. al.,            :
                                         :
                           Defendants.   :
-------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Defendant Century Indemnity Company ("Century") seeks a declaration on summary

judgment that co-Defendant Northrup Grumman Corp. ("Grumman") is not entitled to coverage

for a putative class action lawsuit, *Romano et al. v. Northrop Grumman Corporation et al*, No.

16 Civ. 5760 (E.D.N.Y.) (the "*Romano* Lawsuit"), or any natural resource damages claim

("NRD Claim"), asserted against Grumman.  Century argues that Grumman failed to provide

timely notice of an occurrence, accident or claim, as required for coverage.  For the reasons

below, the motion is granted in part and denied in part.

## I.   BACKGROUND

Century joins Plaintiff Travelers Indemnity Company's ("Travelers") Motions for

Summary Judgment.  Familiarity with the prior opinions on these motions is assumed.  *See*

*Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 16 Civ. 8778, 2019 WL 4572761

(S.D.N.Y. Sept. 20, 2019) ("Travelers *Romano* Opinion"); *Travelers Indem. Co. v. Northrop*

*Grumman Corp.*, No. 16 Civ. 8778, 2019 WL 4643586 (S.D.N.Y. Sept. 24, 2019) ("Travelers

NRD Opinion").  This background recounts only facts unique to Century's motion.  To the

extent facts are disputed, they are construed, as required, in favor of Grumman, the non-moving

party.  *See Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).

### A.      The Century Policies

The Insurance Company of North America ("INA") issued to Grumman the insurance

policies at issue, in effect from 1950 to 1968.  Century is now responsible for these policies.  The

policies include both primary ("Century Primary Policies") and excess policies ("Century Excess

Policies").  This summary describes examples of the policies provided by the parties.

### 1.  Century Primary Policies

The Century Primary Policies, in effect from 1955 to 1962, contain a "Notice of

Accident" provision.  An endorsement to these policies states that, for payment of an additional

premium, and only when these policies cover "Bodily Injury Liability" but "not otherwise,"

"wherever the word 'accident' appears," the "word 'occurrence' is substituted."  The notice

provision states: "When an accident [or occurrence] occurs written notice shall be given by or on

behalf of the insured to the company or any of its authorized agents as soon as practicable."

The Century Primary Policies also have a notice of claim provision: "If claim is made or

suit is brought against the insured, the insured shall immediately forward to the company every

demand, notice, summons or other process received by him or his representation."

The policies do not define "occurrence," "accident" or "claim."  Failure to comply with

these notice provisions vitiates coverage.

### 2.  Century Excess Policies

#### a.  Excess Policies XPL 3500 and XPL 3506

 Two excess policies, XPL 3500, in effect from November 27, 1950, to January 1, 1951,

and XPL 3506, in effect from January 1, 1951, to January 1, 1963, have the following notice of

occurrence provision:  "Upon the happening of an occurrence or accident that appears reasonably

likely to involve liability on the part of the company written notice shall be given by or on behalf

of the insured to the company or any of its authorized agents as soon as practicable."  Both

policies state, "The word 'occurrence' and the word 'accident,' as used in this policy shall

respectively include a series of occurrences and a series of accidents arising out of one event."

The policies do not define "occurrence" or "event."

> The policies also have a notice of claim provision:

> The insured shall give like notice, with full particulars, of any claim made on account of such occurrence or accident.  If thereafter suit or other proceeding is instituted against the insured to enforce such claim, the insured shall, when requested by the company, forward to the company every demand, notice, summons or other process or true copies thereof, received by the insured or the insured's representatives, together with copies of reports or investigations made by the insured with respect to such claim, suit or proceeding.

### b.  Excess Policy XBC 1177

A later Excess Policy, XBC 1177, in effect from January 1, 1963, to January 1, 1968, has

the following notice of occurrence provision: "Upon the happening of an occurrence reasonably

likely to involve the company hereunder, written notice shall be given as soon as practicable to

the company or any of its authorized agents."  The policy does not define "occurrence" for

personal injury liability coverage.  For property damage coverage, "occurrence" means:

> [E]ither an accident happening during the policy period or a continuous or repeated exposure to conditions which unintentionally causes injury to or destruction of property during the policy period.  All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

> The notice of claim provision states:

> The insured shall give like notice of any claim made on account of such occurrence.  If legal proceedings are begun, the insured, when requested by the company, shall forward to it each paper thereon, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations made by the insured with respect to such claim proceedings.

### B.       Bethpage Area Events Prior to the 1970s

Familiarity with the events at the Bethpage facility (the "Facility") and Bethpage

Community Park (the "Park") (collectively, the "Bethpage Area") from the 1970s onward is

assumed.  *See* Travelers *Romano* Opinion, 2019 WL 4572761, at *1-5; Travelers NRD Opinion,

2019 WL 4643586, at *1-4.  The following summary recounts only events before the 1970s,

when Century's, but not Travelers', policies were in effect.

The Facility began operating in the 1930s.  Before the 1970s, in accordance with industry

practice and regulatory guidance, Grumman disposed of manufacturing wastewater in "recharge

basins" dug into the Facility ground.  Grumman was not required to, and generally did not, treat

wastewater until the 1950s.

In 1946, the State of New York began regulating the contaminant hexavalent chromium

in drinking water.  The New York State Department of Health ("NYSDOH") proposed to

Grumman in 1947 that it treat its wastewater to prevent hexavalent chromium, potentially a

byproduct of the Facility's manufacturing, from reaching the local drinking water supply.

Grumman's treatment plant became operational in 1952 and treated all process water by 1955.

During the 1950s, Grumman buried sludge, generated from the wastewater treatment, in a

remote parcel on the Facility, with NYSDOH's approval.  Grumman also disposed of used oil

and old rags in the parcel.  Although against company policy, at least one Grumman employee

periodically disposed of oil containing trichloroethylene ("TCE"), a contaminant at issue in the

*Romano* Lawsuit, in the parcel.

In 1962, Grumman donated the parcel to the Town of Oyster Bay, which developed it

into the Park.  Grumman thereafter dried sludge in "drying beds" at the Facility and transported

the sludge offsite for disposal.  Grumman used drying beds until the 1980s.

### C. Grumman's Notices to Century

On December 6, 1983, the New York State Department of Environmental Conservation ("NYSDEC") sent Grumman a letter (the "1983 Letter") regarding the company's potential liability under the Comprehensive Environmental Response, Compensation, and Liability Act. On January 30, 1984, Grumman forwarded the letter to Century's predecessor INA.

On August 7, 2015, Grumman forwarded to Century a June 29, 2015, solicitation letter from a law firm seeking plaintiffs, for a "property damage or potential personal injury claim," which eventually led to the *Romano* Lawsuit. Century disclaimed coverage for the prospective lawsuit on August 25, 2015, to the extent the claims would concern Bethpage Area contamination at issue in *Travelers Indem. Co. v. Northrop Grumman Corp.*, 12 Civ. 3040 (S.D.N.Y.) ("*Grumman I*"), for which Century had already disclaimed coverage.

On August 3, 2016, NYSDEC sent Grumman a letter regarding its intent to conduct a Natural Resource Damages Assessment ("NRDA") of Facility area groundwater. *See* Travelers NRD Opinion, 2019 WL 4643586, at *3. The letter attributed the potential groundwater injury to the discharge of hazardous substances from the Facility. *See id.* Grumman forwarded this letter to Century on August 11, 2016.

On September 16, 2016, the *Romano* Lawsuit Complaint was filed. Grumman forwarded the Complaint to Century on September 28, 2016. Century disclaimed coverage on October 27, 2016. On May 18, 2018, Grumman forwarded the *Romano* Amended Complaint to Century. Century again disclaimed coverage on June 8, 2018.

Century stated in its December 30, 2016, Answer in this action that it disclaimed coverage for the *Romano* Lawsuit and any NRD Claim. On August 8, 2017, Century stated in a supplemental letter to Grumman that it disclaimed coverage for the latter claim because

Grumman failed to provide Century or INA timely notice of the "accident" or "occurrence" precipitating the claim.

On May 28, 2019, Grumman filed a letter in this action, copying both Travelers and Century, which linked Governor Andrew Cuomo's press release on NYSDEC's completion of the NRDA (the "Press Release").  The release states that NYSDEC will an issue an NRDA report which finds that Facility area groundwater was substantially impacted and needs to be restored.  Grumman will be expected to implement the restoration plan.  *See id.* at \*3.

### D.    Procedural History

Travelers filed this declaratory judgment action on November 11, 2016, against both Grumman and Century.  Count X of the Complaint asserts an allocation claim against Century. Travelers alleges that Century should be allocated some portion of any coverage responsibility, because the *Romano* Lawsuit and NRD Claim implicate Century's, and not just Travelers', policy period.

Century's December 30, 2016, Answer does not assert any counterclaims or crossclaims formally.  In response to Count X, Century states that it "respectfully requests that this Court enter judgment in its favor" and "declare Century is not obligated to defend or indemnify Defendant [Grumman] with respect to the underlying claims."

## II.    STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fireman's Fund Ins. Co. v.*

*Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016).  Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor.  *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248).

Under New York law,[1] compliance with the notice provisions in insurance policies issued before 2009 "is a condition precedent to an insurer's liability under the policy," regardless of whether noncompliance prejudiced the insurer.  *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995); *Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726 (2d Cir. 2014) (New York statute requiring an insurer be prejudiced to assert untimely notice defenses applies only for insurance policies issued after 2009).  Whether an insured's notice is timely depends on (1) when the insured's notice obligation arose and (2) whether the insured promptly gave notice within the timeframe of the policy.  *See Mark A. Varrichio & Assocs. v. Chi. Ins. Co.*, 312 F.3d 544, 547 (2d Cir. 2002) ("[U]nder New York law, where a policy has an *immediate* notice of suit [or occurrence] requirement, even a relatively short delay in providing notice violates that requirement."); *Great*

---

[1] New York law governs the insurance policies because the parties have assumed throughout the litigation that it applies.  *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (Because "the parties' briefs assume that [a given] state law governs," such "implied consent is sufficient to establish the applicable choice of law.")

*Canal Realty Corp. v. Seneca Ins. Co.,* 5 N.Y.3d 742, 743 (2005) ("Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time.").

### III.   DISCUSSION

#### A.   Justiciability

As an initial matter, this motion is justiciable.  Grumman argues the motion should be denied for procedural and prudential reasons -- Century is not entitled to a declaratory judgment "against Grumman" when no cross-claims exist between Grumman and Century as co-defendants.  To the extent that Century relies on the allocation claim as a vehicle for declaratory relief, Grumman argues that this claim is not ripe yet and will only become ripe when Travelers is deemed to have coverage liability.  These arguments are rejected.

As a defendant, Century is entitled to move for summary judgment in this properly instituted declaratory judgment action.  Travelers filed "an appropriate pleading" to commence this action, and the pleading asserted, among other things, an allocation claim against Century. *See* 28 U.S.C. § 2201.  Grumman's argument that Century's summary judgment motion is improper reduces to the view that Grumman and Century cannot oppose each other on summary judgment when they are not technically opposing parties, but co-defendants.  Grumman concedes that if either Century or Grumman asserted a cross-claim, as Grumman did against Century in *Grumman I*, this issue would be moot.

Federal Rule of Civil Procedure 56 and the Declaratory Judgment Act implicitly permit this motion.  Rule 56 entitles any "party" to move for summary judgment, without dictating which parties are the "movant" or "nonmovant" or limiting who can oppose a motion.  The rule permits motions on particular issues, rather than entire claims, on which co-defendants may have

opposing interests.  The Declaratory Judgment Act similarly states that a court may "declare the

rights and other legal relations of any *interested party* seeking such a declaration," without

limiting who the "interested party" may be.  *See* 28 U.S.C. § 2201(a) (emphasis added).

Although a party cannot simply "make a motion for declaratory relief, but rather must bring an

action for a declaratory judgment," this does not preclude a defendant in an existing declaratory

judgment action from bringing a dispositive motion, as Century does now.  *See Mishcon de Reya*

*N.Y. LLP v. Grail Semiconductor*, *Inc.*, No. 11 Civ. 4971, 2014 WL 656062, at *6 (S.D.N.Y.

Feb. 20, 2014) (construing plaintiff's motion for declaratory relief as a motion for summary

judgment in a declaratory judgment action).  It also would be needlessly technical and inefficient

to deny Century's motion, allow Century to amend its Answer to assert a cross-claim against

Grumman, and then renew this motion on the newly pleaded cross-claim.  Century's motion may

proceed.

    Traveler's allocation claim against Century is also ripe.  "The ripeness doctrine is drawn

both from Article III limitations on judicial power and from prudential reasons for refusing to

exercise jurisdiction."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

Constitutional ripeness requires that a cause of action "present a real, substantial controversy"

under Article III, and "not a mere hypothetical question," *Nat'l Org. for Marriage, Inc. v. Walsh*,

714 F.3d 682, 687 (2d Cir. 2013), or "abstract disagreements," *Klein v. Qlik Techs., Inc*., 906

F.3d 215, 221 n.4 (2d Cir. 2018).  Prudential ripeness confers courts with discretion to delay

adjudicating a matter until "some later point, when the issues will be more amenable to a final

resolution."  *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003).

    Whether Century has any coverage obligation is a "real, substantial controversy."

Grumman has sought coverage from Century, which Century has denied. Century's Answer

seeks a declaration that it "is not obligated to defend or indemnify" Grumman. The parties agree that the timely notice issue turns on historical facts on which Century and Grumman have taken full discovery.  The resolution of this motion does not depend on any future events.

Grumman's argument that the allocation claim is "hypothetical" until Traveler's coverage obligation is resolved is incorrect.  A declaratory judgment action regarding insurance coverage "may be ripe even if the insured has not yet incurred any liability," because the coverage issue has "sufficient immediacy and reality," given the practical likelihood of liability.  *See Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 511 (S.D.N.Y. 2018) (*citing Associated Indem. Corp. v. Fairchild Indus., Inc*., 961 F.2d 32, 35 (2d Cir. 1992)).  That principle extends to the allocation context.  Although Travelers' coverage liability has not been definitively resolved, the issue of allocation is sufficiently immediate, especially now that the Travelers *Romano* Opinion has rejected some of Travelers' coverage defenses.  *See* Travelers *Romano* Opinion, 2019 WL 4572761, at *13.   Whether Century has viable coverage defenses is logically independent from whether Travelers does.  Simply because the allocation claim is styled as Travelers' seeking contribution from Century does not mandate sequential rather than parallel resolution of each insurer's coverage obligation.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 90 (2d Cir. 2002) (adjudicating both a primary insurer's and secondary insurer's coverage obligations simultaneously for "efficiency and judicial economy").  Parallel resolution of Century's and Travelers' motions now is efficient.

### B.    Notice of Claim

Century argues that it has no coverage obligation because Grumman did not provide timely notice of the NRD Claim.  For the reasons discussed in the Travelers NRD Opinion, Grumman's notice of claim was timely and this coverage defense is rejected.  *See* Travelers

NRD Opinion, 2019 WL 4643586, at \*5-6.   Grumman's notice obligation arose on May 23,

2019, when the Press Release announced that NYSDEC had completed an NRDA and found that

groundwater "restor[ation]" by Grumman will be necessary.  *See id.* at \*5.  Grumman timely

forwarded the Press Release to both Travelers and Century, in a letter filed in this action, on May

28, 2019.  *See id*.

### C.      Notice of Occurrence or Accident

Summary judgment is denied with respect to the Century Primary Policies, because

interpretation of the notice of "occurrence" or "accident" provision requires factual

determinations not possible on the summary judgment record.  Summary judgment is granted as

to the Century Excess Policies, because Grumman failed to give timely notice of an occurrence

under these policies.

### 1.   Century Primary Policies

The Century Primary Policies require "notice of an accident."  An endorsement states

that, for bodily injury claims only, the term "occurrence" replaces every instance of the term

"accident."  The notice of occurrence endorsement therefore applies to the *Romano* Lawsuit's

bodily injury claims.  The notice of accident provision applies to the NRD claim, which is based

on property damage, and the *Romano* Lawsuit, to the extent it is based on property damage

claims.

### a.  Coverage of Bodily Injury Claims in the *Romano* Lawsuit

On the current summary judgment record, the relevant set of "occurrences," and

therefore, viability of Century's late notice defense, cannot be determined.  Although Century

incorporates Travelers' late notice of occurrence arguments, these arguments are inapplicable

because the Century Primary Policies and Travelers policies diverge in a critical respect.  While

the Travelers policies provide that "bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of *one* occurrence," the Century Primary Policies do not have comparable grouping language.  They do not define "occurrence" at all.

In the absence of grouping language and any other express definition, the identification of a single "occurrence" across a series of incidents depends on the "spatial" and "temporal" proximity among the incidents.  *See Appalachian Ins. Co. v. Gen. Elec. Co.*, 863 N.E.2d 994, 998-1000 (N.Y. 2007); *see also Roman Catholic Diocese of Brooklyn v. Natl. Union Fire Ins. Co. of Pittsburgh, Pa*., 991 N.E.2d 666, 671-72 (N.Y. 2013).  The closer in time and place incidents are, the more likely they are deemed one "occurrence."  *See Appalachian Ins*., 863 N.E.2d at 1000-01.  Thus, the New York Court of Appeals in *Appalachian Insurance* held that each individual plaintiff's exposure to asbestos insulation was a separate "occurrence," but noted that in some cases, like for "the accidental release of a hazardous substance . . . result[ing] in numerous injuries or losses . . . .  the grouping of some or all of" the exposures into a single occurrence is appropriate.  *See id.*

Without any grouping language, the *Romano* plaintiffs' exposures cannot be grouped into a single "occurrence" under the Century Primary Policies, unlike under the Travelers policies. *See* Travelers *Romano* Opinion, *2019* WL 4572761, at *7.  But the relevant set of "occurrences" cannot be determined either.  *See, e.g., Mt. McKinley Ins. Co. v Corning Inc.*, 946 N.Y.S.2d 136, 138 (1st Dep't 2012) (denying summary judgment where "[a] more fully developed evidentiary record is required before the number of 'occurrences' into which the underlying claims can be grouped may be determined"); *see Diocese of Brooklyn,* 991 N.E.2d at 672 ("Generally, the issue of what constitutes an occurrence [is] a legal question for courts to resolve.").  A more developed

12

evidentiary record is needed to resolve whether each *Romano* plaintiff's exposure to the

contaminations is a unique "occurrence," or whether groups of plaintiffs were exposed at nearly

the same time and in the same place, therefore warranting some aggregation.  Summary

judgment is denied as to the bodily injury claims under the Century Primary Policies.

### b.   Coverage of Property Damage Claims in the *Romano* Lawsuit and NRD Claim

The property damage claims in the *Romano* Lawsuit and NRD Claim are subject to the

Century Primary Policies' notice of accident provision.  Because the term "accident" is

ambiguous, summary judgment is denied.

The ambiguity of a contract is a question of law for the court.  *See Lend Lease (US)*

*Const. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 559-61 (N.Y. 2017).  If a contract term

is reasonably susceptible to more than one meaning, it is ambiguous.  *Glob. Reins. Corp. of Am.*

*v. Century Indem. Co.,* 91 N.E.3d 1186, 1193 (N.Y. 2017).  A term will be deemed unambiguous

only if it has a single meaning "when viewed objectively by a reasonably intelligent person who

has examined the context of the entire integrated agreement and who is cognizant of the customs,

practices, usages and terminology understood in the particular trade or business."  *Orchard Hill*

*Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156-57 (2d Cir. 2016) (internal citations

omitted).

The Century Primary Policies do not define "accident."  Nor does the context or usage

compel a single interpretation.  Courts have construed "accident" to mean only a sudden discrete

event or to encompass a gradual course of events.  *Compare, e.g., Connelly v. Hunt Furniture*

*Co.*, 147 N.E. 366, 367 (N.Y. 1925) (Then-Judge Cardozo holding that a "whole group of events,

beginning with the [exposure] and ending with death, was an accident, not in one of its phases,

but in all of them"), *with Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 532 (S.D.N.Y.

2010) (applying New York law, exposure to a pathogen "through normal means brought about

by everyday life" is not an accident), *and Appalachian Ins.*, 863 N.E.2d at 1000 (the "sudden"

nature of "events," unlike a gradual "contamination," is characteristic of an "accident").  As

Judge Chin observed, before his elevation to the Second Circuit, "[t]he word 'accident' simply

does not have a definite and precise meaning, as shown by the extent to which courts have

struggled over the years to interpret the word[.]"  *Barnes v. Am. Int'l Life Assur. Co. of N.Y.*, 681

F. Supp. 2d 513, 524 (S.D.N.Y. 2010) (collecting cases).

The Century Primary Policies offer some support that "accident" refers only to sudden

events and therefore would not apply to the contaminations here, but the evidence is not

definitive.  The policies distinguish between an "accident" and "occurrence."  Some courts have

explained this distinction by noting that "accident" is "traditionally associated" with "sudden

events" and "occurrence" "embrace[s] a wider range of liability" like gradual "contamination."

*See Appalachian Ins.*, 863 N.E.2d at 1000.  The "occurrence" endorsement requires payment of

additional premium, suggesting further that an "occurrence"-based policy may provide a broader

range of coverage than an "accident"-based one, focused only on sudden events.  *See* 9A Couch

on Ins. § 129:3 ("'[O]ccurrence' language is generally understood to offer broader coverage than

that offered by the former term, 'accident.'").  But these facts alone, not particular to the Century

Primary Policies, are insufficient to resolve the ambiguity.

Even if "accident" encompassed the contaminations here, summary judgment is denied

because the relevant set of "accidents" cannot be identified on the current record.  The Second

Circuit, in a non-precedential opinion, adopted the *Appalachian Insurance* test of spatial and

temporal proximity for identifying discrete "accidents."  *See Natl. Liab. & Fire Ins. Co. v.*

*Itzkowitz*, 624 Fed. App'x 758, 760 (2d Cir 2015) (summary order), *as amended* (Sept. 22, 2015)

14

(affirming district court's determination that three separate accidents occurred, although all three were caused by a single incident of a dump truck striking an overpass).  Because the Century Primary Policies have no grouping language, all incidences of property damage in the *Romano* lawsuit or NRD Claim cannot be grouped together into a single "accident."  But the complete set of "accidents" is not determinable either.  Without identifying these accidents, it is impossible to determine whether notice of each accident was timely.  Summary judgment is denied as to the property damage claims under the Century Primary Policies.

### 2. Century Excess Policies

Grumman failed to give Century timely notice under the Century Excess Policies.  These policies hold Grumman to the same notice of occurrence standard as the Travelers Majority Primary Policies do.  For the reasons in the Travelers opinions, Grumman's notice to Century was late and Century has no coverage obligation.  *See* Travelers *Romano* Opinion, 2019 WL 4572761, at *8-13; Travelers NRD Opinion, 2019 WL 4643586, at *6-7.

The Century and Travelers policies define "occurrence" in materially similar ways.  Both sets of policies require notice as soon as Grumman reasonably understands that colorable claims may arise for which it may seek coverage.  *See* Travelers *Romano* Opinion, 2019 WL 4572761, at *1-2, *6-7 (*citing N.Y. Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992)); Travelers NRD Opinion, 2019 WL 4643586, at *6-7 (discussing the Majority Primary Policies). Excess Policies XPL 3500 and 3506 require notice "[u]pon the happening of an occurrence or accident that appears *reasonably likely to involve liability* on the part of the company [insurer]" (emphasis added). Similarly, Excess Policy XBC 1177 requires notice "[u]pon the happening of an occurrence *reasonably likely to involve the company* [insurer] hereunder" (emphasis added).

The Century Excess Policies have grouping language, as the Majority Primary Policies do, which requires construing a continuous exposure to conditions as a single occurrence.

Given these similarities between the policies, the same timeliness analysis follows. By at least June 1976 for groundwater contamination and May 2001 for Park contamination, Grumman was required to notify Century of these "occurrences," but failed to do so. *See* Travelers *Romano* Opinion, 2019 WL 4572761, at \*8-10 (identifying the relevant *Romano* Lawsuit occurrences); Travelers NRD Opinion, 2019 WL 4643586, at \*6-7 (identifying the NRD Claim occurrence). The groundwater "occurrence" precipitates only the NRD Claim, while both "occurrences" precipitate the *Romano* Lawsuit. The earliest Grumman argues it provided notice of groundwater contamination was in a January 30, 1984, letter to INA. This nearly eight-year delay, from the time Grumman's notice obligation arose, is untimely as a matter of law. *See*, *e.g.*, *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995) ("Under New York law, delays for one or two months are routinely held unreasonable"); *Juvenex Ltd. v. Burlington Ins. Co.*, 882 N.Y.S.2d 47, 48 (1st Dep't 2009) (a two-month delay is untimely as a matter of law). Grumman next attempted to give Century notice in August 2015, which is plainly untimely. The argument that Grumman had no notice obligation until it learned of each plaintiff's or property's exposure to contaminations is rejected for the reasons discussed in the Travelers *Romano* Opinion. *See* Travelers *Romano* Opinion, 2019 WL 4572761, at \*7.

Grumman further argues that its notice obligation was triggered only when it understood that the Century policies, in effect from 1950 to 1968, would be implicated. In the 1970s, Grumman argues that it could not have known that the Bethpage Area contaminations involved events from during Century's coverage period. But the undisputed facts belie this argument. Grumman used the relevant waste disposal practices, like recharge basins, sludge drying beds

16

and Park parcel disposal, since the 1950s. The March 1995 and March 2001 Records of

Decision set out timelines of relevant events tracing back to Grumman's activities in the 1940s.

By June 1976, Grumman reasonably understood that these longtime practices were causing

groundwater contamination. *See* Travelers *Romano* Opinion, 2019 WL 4572761, at \*8 (As

Grumman's consultant report found in June 1976, the "sources of contamination [around the

Facility] consisted of basins, lagoons, spills, [which] have created a slug of contaminated ground

water in the shallow aquifer."). Similarly, Grumman was aware that Park contamination was

attributable to its historical activities by the May 2001, notice point. *See id.* at \*4, \*10 (by May

2001, Grumman understand that the source of Park contamination was "the fill material used in

the Park grounds derived from scrapings from the Facility's recharge basins," and therefore

Grumman was exposed to "tort claims") (internal quotation marks omitted). The Century Excess

Policies require Grumman to give notice as soon as it understands that an occurrence "reasonably

likely" involves Century, but Grumman failed to do so.

## IV. CONCLUSION

For the foregoing reasons, Century's motion is GRANTED in part and DENIED in part.

Summary judgment is granted as to the Century Excess Policies under which Century has no

coverage obligations. Summary judgment is denied as to the Century Primary Policies.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 197.

Dated: September 26, 2019
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

17