UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
THE TRAVELERS INDEMNITY CO., ET AL.,                        :
                                        Plaintiffs,         :
                                                            :        16 Civ. 8778 (LGS)
            -against-                                       :
                                                            :        **OPINION AND ORDER**
NORTHRUP GRUMMAN CORP., ET AL.,                             :
                                        Defendants.         :
                                                            :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    Plaintiffs, The Travelers Indemnity Co. ("Travelers"), and Defendants, Northrup

Grumman Corp. ("Grumman") and Century Indemnity Company ("Century"), move for

reconsideration of three related summary judgment opinions: (1) Travelers and Grumman seek

reconsideration of the September 20, 2019, Opinion granting in part and denying in part

Travelers' Motion for Summary Judgment as to the *Romano* Lawsuit (the "*Romano* Opinion");

(2) Grumman seeks reconsideration of the September 24, 2019, Opinion granting Travelers'

Motion for Summary as to the Natural Resource Damages ("NRD") Claim (the "NRD

Opinion"); and (3) Century and Grumman seek reconsideration of the September 26, 2019,

Opinion granting in part and denying in part Century's Motion for Summary Judgment as to the

*Romano* Lawsuit and the NRD Claim (the "Century Opinion") (collectively, the "Opinions").

Travelers also requests to file a sur-reply in support of its motion to reconsider the *Romano*

Opinion. For the reasons below, all motions to reconsider are denied, except to the extent that:

(i) late notice does not vitiate coverage of the NRD Claim under Travelers' primary policies, in

effect from 1977 to 1985, as a matter of law, and (ii) late notice of an "accident" does not vitiate

coverage of property damage claims under Century's excess policies, in effect before 1963, as a

matter of law.  These rulings are without prejudice to Travelers and Century continuing to assert late notice and other defenses as to these policies.  Travelers' request to file a sur-reply is denied as moot.

## I.    STANDARD

"A motion for reconsideration should be granted only when [a party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted); *accord Impax Labs., Inc. v. Turing Pharm. AG*, No. 16 Civ. 3241, 2018 WL 4007641, at *3 (S.D.N.Y. Aug. 21, 2018).  The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted); *accord In re Effecten-Spiegel AG*, No. 18 Misc. 93, 2018 WL 3812444, at *3 (S.D.N.Y. Aug. 10, 2018).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* (internal quotation marks omitted).  The decision to grant or deny a motion for reconsideration, whether under Local Rule 6.3, Rule 59(e) or 60(a), rests within "the sound discretion of the district court." *See Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009); *accord Reynolds v. Hearst Commc'ns, Inc.*, No. 17 Civ. 6720, 2018 WL 1602867, at *1 (S.D.N.Y. Mar. 29, 2018).

## II.    BACKGROUND

This action is part of a longtime dispute over what, if any, insurance coverage Travelers and Century owe for litigation arising from Grumman's alleged contamination around its Bethpage Facility, on Long Island, New York.

Travelers and Century filed a series of summary judgment motions, arguing that neither insurer had coverage obligations due to Grumman's failure to provide timely notice of an "occurrence" or "claim," as required for coverage.[1]  Some policies require notice of an injury, property damage or accident, in lieu of an occurrence.  The Opinions accordingly categorize the policies by notice provision and whether the policies provide primary or excess coverage, and issue distinct rulings for each category.  The categories are: Travelers' "Majority Primary Policies," "Minority Primary Policies" and "Umbrella Policies," and Century's "Primary Policies" and "Excess Policies."

For the first time on reconsideration, the parties argue how the terms "injury," "property damage" and "accident" should be interpreted, and how an insured's notice obligation differs under primary versus excess policies.  Failure to raise arguments on the original motion is sufficient to deny reconsideration.  But because reconsideration is within the sound of the discretion of the Court, the parties' belated arguments, except as noted below, are addressed and rejected on the merits.  *See Aczel*, 584 F.3d at 61 (internal quotation marks omitted); *accord Reynolds*, 2018 WL 1602867, at *1 (S.D.N.Y. Mar. 29, 2018).

---

[1] At summary judgment, both insurers argued that coverage was vitiated due to: (1) "Grumman's failure to provide notice of the occurrence giving rise to [the Romano Lawsuit]," *see* Traveler's Br. (Dkt. No. 209) at 30, and (2) Grumman's "late and inadequate notice of the claim and underlying occurrence" with respect to the NRD Claim, *see* Traveler's Br. (Dkt. No. 205) at 28. Century stated in its motion that it joined Travelers' briefs in full, reiterating these same defenses, *i.e.* late notice of an occurrence or claim.  *See* Century's Br. (Dkt. No. 199).

**III.    DISCUSSION**

**A.    The *Romano* Opinion**

Travelers' and Grumman's motions to reconsider the *Romano* Opinion are denied.

**1.    Travelers' Reconsideration Motion**

Travelers challenges the ruling that Grumman's notice of injury or property damage obligation did not arise until the *Romano* Complaint was filed in September 2016.  Travelers argues that this ruling (1) overlooks evidence that Grumman knew about notice-triggering injuries from Bethpage community meetings and a newspaper article in the 1990s, and (2) undermines the policy goal of early notice to insurers.  Travelers asserts that, by requiring an insured give notice only when it learns of the particular injuries of plaintiffs to a lawsuit -- often not possible until the lawsuit itself is filed -- an insurer will be denied an early opportunity to investigate and mitigate insurance claims.  These arguments are unavailing.

The *Romano* Opinion does not hold that only when an insured learns of the injuries of particular plaintiffs to a lawsuit is the notice-of-injury or -property damage provision triggered.[2] Rather, the provision requires "notice of injuries themselves, and not of any prior incidents resulting in injury." *Travelers Indem. Co. v. Northrop Grumman Corp.*, 413 F. Supp. 3d 263, 278 (S.D.N.Y. 2019) ("*Romano* Opinion").  Thus, an insured must give notice when it has sufficient knowledge of actual injury resulting from the insured's actions.  *See Am. Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F. Supp. 1485, 1502 (S.D.N.Y. 1983), *aff'd as modified*, 748

---

[2] To the extent the parties read statements in the Opinions otherwise, these statements only summarize the particular conclusion as applied to the facts here.  *See, e.g.*, *Travelers Indem. Co. v. Northrop Grumman Corp.*, 413 F. Supp. 3d 263, 270 n.1 (S.D.N.Y. 2019) ("Under the Minority Primary Policies and Umbrella Policies, Grumman's notice obligation arose only upon the filing of the *Romano* Complaint, when Grumman first learned of *any* of the Romano plaintiffs' injuries.").

F.2d 760 (2d Cir. 1984) (Under model insurance contract, the term "injury" means an "injury-in-fact," *i.e.* an actual injury has resulted from the insured's actions. "[W]hen injury occurs is a matter to be determined on the basis of facts."); *accord Downey v. 10 Realty Co., LLC*, 911 N.Y.S.2d 67, 67 (1st Dep't 2010) (recognizing "injury-in-fact" definition in New York insurance contracts); *see also Chiarello v. Rio*, 957 N.Y.S.2d 133, 136 (2d Dep't 2012) ("Failure or delay by insured in giving notice may be excused if insured lacked knowledge[.]"); *Mason v. Allstate Ins. Co.*, 209 N.Y.S.2d 104, 147 (2d Dep't 1960) (An insured need not give immediate notice of an injury if it lacks "knowledge of facts . . . that injury has resulted."); 18 A.L.R.2d 443 (updated weekly). Under these principles, Grumman gained knowledge of facts of notice-triggering injuries from the *Romano* Complaint. Although a complaint is not evidence, the allegations have a sufficient factual basis. *See* Fed. R. Civ. P. 11(b)(3). Grumman timely notified Travelers of the *Romano* Complaint.

The anecdotal accounts of injury, which Travelers argues triggered Grumman's notice obligation earlier, describe suspected injuries and suspected public health trends possibly attributable to Grumman.[3] For example, Travelers cites to how local residents and a newspaper described the "clusters of cancer," "cancer on 10th Street" or the "high rate of cancer" in the Bethpage area in the 1990s. Residents told Grumman at community meetings about health problems and property concerns, which they believed were Grumman's fault. Although these accounts are extremely serious, an insured must give notice of actual known injury, sufficiently grounded in fact. *See Am. Home Prod. Corp.*, 565 F. Supp. at 1502 (Injury is "determined on the basis of facts"). Here, the distinction between notice-of-injury and notice-of-occurrence

---

[3] Assuming without deciding that Grumman had knowledge of actual injuries from the Hartmann Letter dated April 11, 2013, *see infra* at III.A.1, Grumman gave timely notice of the letter eleven days later.

provisions is salient: notice-of-occurrence provisions require notice of even "colorable claim[s] of injury," a duty particularly relevant in contexts like environmental contamination, where injury may develop in a hidden or gradual way. *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 724 (2d Cir. 1992) ("*Olin I*"); *see Am. Home Prod. Corp.*, 565 F. Supp. at 1501 (Around 1960, New York insurers adopted "the 'occurrence' approach . . . [which] expressly provided that an occurrence included any injury or damage that resulted . . . from injurious exposure over an extended period.") By contrast, the notice-of-injury standard requires notice of actual injury, rather than of a colorable or even likely claim of injury.[4] *See Am. Home Prod. Corp.*, 565 F. Supp. at 102 (A notice-of-injury provision is triggered not upon knowledge of "the causative event of occurrence but . . . [of] the injuries or damages which result from such an event and which happened during the policy period.") As most Travelers policies require notice of an occurrence, Travelers is entitled to receive early notice of suspected claims of injury, consistent with the policy aims of New York insurance law.

### 2. Grumman's Reconsideration Motion

Grumman seeks reconsideration of the ruling that Travelers timely disclaimed coverage of the *Romano* Lawsuit. According to Grumman, the Court failed to consider: (1) an April 11, 2013, letter (the "Hartmann Letter"), forwarded by Grumman to Travelers, which allegedly triggered Traveler's disclaimer obligation, and (2) evidence undercutting that Travelers had timely disclaimed coverage as a matter of law. These arguments are rejected.

---

[4] To be clear, the notice-of-injury standard is based on facts reasonably known to an insured at the time, and an insured is not excused from late notice simply because later investigation or litigation (after the notice trigger) reveals that information then known about an injury or property damage was mistaken. *See Travelers Indem. Co. v. Northrop Grumman Corp.* ("NRD Opinion"), 413 F. Supp. 3d 224, 234 n.5 ("Notice of occurrence or injury analysis focuses on what an insured reasonably understands from its perspective[.]").

The *Romano* Opinion held that Travelers' disclaimer obligation arose around September 30, 2016, when Travelers received a copy of the *Romano* Complaint from Grumman. Travelers timely disclaimed coverage of the *Romano* Lawsuit around October 11, 2016, forty-two days later, by filing this declaratory judgment action in which it asserted it had no coverage obligation. Grumman argues that the disclaimer period was actually forty-six days, due to evidence that the *Romano* Complaint reached Travelers one day earlier and the *Romano* Lawsuit was served on Grumman a few days after filing, but this difference is immaterial. Even assuming a forty-six day period, Travelers' disclaimer is timely as a matter of law, for the reasons below and in the *Romano* Opinion.

While the Hartmann Letter describes bodily injuries of Bethpage residents possibly attributable to Grumman, an insurer has no "disclaimer obligation until it is notified of a *claim* for which the 'insured will seek coverage.'" *Romano* Opinion, 413 F. Supp. 3d at 279 (quoting *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 215 (2d Cir. 2004)) (emphasis added). "[T]his point may come before a formal lawsuit is filed in court," *id.* at 280, but the "ordinary meaning of 'claim' . . . is an 'assertion by a third party that in the opinion of that party the insured may be liable to it for damages[.]'" *Travelers Indem. Co. v. Northrup Grumman Corp.* ("NRD Opinion"), 413 F. Supp. 3d 224, 231 (S.D.N.Y. 2019) (quoting *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999)). The Hartman Letter is not a claim, and more generally, does not provide Travelers with "sufficient . . . facts" compelling disclaimer. *See Romano* Opinion, 413 F. Supp. 3d at 279 (The "obligation arises when 'the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage.'") (quoting *Country-Wide v. Preferred Trucking Servs. Corp.*, 22 N.Y.3d 571, 575, 983 N.Y.S.2d 460, 6 N.E.3d 578, 581 (2014)). The letter expressly states that the

writer is not bringing a legal claim or seeking damages, as she does not wish "to go through a system [where] everything has to be legal . . . [to] get[] answers." Rather, she presents herself as a community whistleblower, whose "main objective is to give [Grumman] information [it] may not have heard," so that Grumman may uncover "the truth" about Bethpage area illnesses. *See NRD Opinion*, 413 F. Supp. 3d at 233 (Where a letter demand is "for an action," it does not assert a claim). Nor does the letter identify many of the ill people it describes. That Century purportedly issued a disclaimer in response to the Hartmann Letter, out of an abundance of caution, does not mean that Century or Travelers was in fact obligated to do so. Indeed, Century's response letter expressly states that it did not necessarily conceive of the Hartmann Letter as a claim.

As to Grumman's argument that the "Court overlooked evidence on which a jury could find that Travelers' disclaimer was late," none of the evidence compels a different result. Briefly, because the Complaint in this action laid out the specific grounds for coverage defenses, it was a sufficient vehicle by which Travelers disclaimed coverage. *See Romano* Opinion, 413 F. Supp. 3d at 281 (A sufficient disclaimer must "'apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated.'") (quoting *Gen. Accident Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 414 N.Y.S.2d 512, 387 N.E.2d 223, 225 (1979)). How quickly Century issued its own disclaimers is not the benchmark for Travelers' timeliness, given that the insurers had issued different policies, had different interactions with Grumman regarding coverage and were subject to different rulings in *Travelers I. See Travelers Indem. Co. v. Northrop Grumman Corp.,* 677 F. App'x 701 (2d Cir. 2017) ("*Travelers I*"). Nor did Travelers' statement in a letter, about a month after receiving the *Romano* Complaint, that Travelers "*will* inform" Grumman of a coverage determination indicate that Travelers had been

dilatory in the meantime. These facts, together or separately, do not override the significant evidence and case law establishing that the forty-two day disclaimer period was reasonable as a matter of law. *See Romano* Opinion, 413 F. Supp. 3d at 281-82.

**B.     The NRD Opinion**

Grumman seeks reconsideration of two rulings in the NRD Opinion: first, it argues that there are triable issues of fact regarding whether notice was late under the Umbrella Policies, because these policies only require notice when an insured reasonably knows that excess coverage will be reached. Second, Grumman argues that its failure to give timely notice of groundwater injury around June 1976, did not vitiate coverage of the NRD Claim, under Majority Primary Policies and Minority Primary Policies issued later, between 1977 and 1985. Reconsideration is denied on the first ground, but is granted on the second. This ruling is without prejudice to Travelers renewing a late notice defense or asserting any other defenses with respect to these policies.

**1.   The Travelers Umbrella Policies**

Grumman is correct regarding the standard for notice under excess policies, but it nevertheless did not give timely or sufficient notice under the Umbrella Policies. Furthermore, Grumman has waived any argument on reconsideration that its notice was reasonably delayed due to not knowing that coverage would be reached under the Umbrella Policies, as it failed to raise these arguments on summary judgment. *See Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) (Arguments raised for the first time in a reconsideration motion are "not properly presented to the district court [and therefore] waived"); *accord In re Gen. Motors LLC Ignition Switch Litig.*, -- F.Supp.3d --, No. 14 Md. 2543, 2019 WL 6827277 at *2 (S.D.N.Y. Dec. 12, 2019).

In its summary judgment briefing, Grumman argued that its notice was timely, assuming one blanket standard applied to primary and excess policies. But a notice obligation under excess policies arises only when an insured has "information from which it could reasonably conclude" that the policies are "likely to [be] trigger[ed]." *Olin Corp. v. Am. Re-Ins. Co.*, 74 F. App'x 105, 108 (2d Cir. 2003) ("*Olin II*") (A district court should make "findings" about when the insured reasonably knew that "potential claims at the sites in question were of sufficient magnitude to penetrate through the primary coverage and reach the excess policies."). Most Umbrella Policies, in effect from January 1, 1968, to June 20, 1973 ("1968-1973 Umbrella Policies") attach when the liability per occurrence exceeds $100,000. One Umbrella Policy, in effect from June 20, 1973, to January 1, 1974 ("1973-1974 Umbrella Policy") attaches when the liability per occurrence exceeds $100 million. The policies all require notice "as soon as practicable whenever . . . bodily injury or property damage takes place . . . which appears reasonably likely to involve" the Umbrella Policies. *See Romano* Opinion, 413 F. Supp. 3d at 269. Here, the relevant "property damage" underlying the NRD Claim was the groundwater injury.

Under the 1968-1973 Umbrella Policies, Grumman's notice was untimely. By August 1976, Grumman should have reasonably known that the $100,000 liability limit would be reached. As the Opinions held, Grumman was aware by June 1976, of the groundwater injury. By August 16, 1976, Grumman had concluded from "an extensive engineering analysis of the problem" that the groundwater was so damaged that (i) it would cost about $300,000 to take steps for "correction," and (ii) since such steps "could prove inconclusive" and "abatement might not be possible," Grumman could instead abandon correction and "perform work required to obtain potable water" from the local water supply "at a cost of $200,000." These figures are

proxies for the cost of the groundwater injury, and in turn, the liability Grumman reasonably faced at the time. Indeed, Grumman abandoned "correct[ing]" the groundwater injury because the initial steps alone would have cost $300,000. Regarding a substantially similar Century excess policy, Judge Forrest found that "ample evidence [established] that Grumman knew that liabilities would indeed exhaust the [primary] policies" with $100,000 per occurrence limits, based on "a Grumman internal memorandum dated in 1976 [which] estimated potential costs at approximately $500,000." *See Travelers Indem. Co. v. Northrop Grumman Corp.,* 3 F. Supp. 3d 117, 128 (S.D.N.Y. 2014) ("*Travelers I* (Century)")*, aff'd,* 677 F. App'x 701 (2d Cir. 2017) ("*Travelers I*"). Without deciding whether Grumman's December 1976, attempt at notice is sufficient, the nearly fourth-month delay, between August and December 1976, was untimely as a matter of law.[5] *See Travelers I*, 677 F. App'x 701 ("[E]ven relatively short periods of unexcused delay," such as over a month, "are unreasonable as a matter of law.").

Nor did Grumman give timely and sufficient notice under the 1973-1974 Umbrella Policy. By at least August 2002, Grumman had learned that groundwater injury liability would likely exceed $100 million, triggering its notice obligation. An August 12, 2002, Grumman internal presentation showed that the groundwater contamination had cost Grumman $25 million and was expected to cost an additional $90 million, totaling over $100 million. But per

---

[5] Grumman cannot justify any delay in notice by arguing that it did not know whether policies in effect for particular years would be triggered or whether liability would be allocated pro rata across policy years, in the absence of "'evidence that the timing of its notice was the result of [such ] a deliberate determination.'" *Travelers Indem. Co. v. Northrop Grumman Corp.,* 3 F. Supp. 3d 117, 128 (S.D.N.Y. 2014) ("*Travelers I* (Century)") (quoting *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 24 A.D.3d 172, 805 N.Y.S.2d 74, 75 (1st Dep't 2005))*, aff'd,* 677 F. App'x 701 (2d Cir. 2017) ("*Travelers I*"); *see New York State Elec. & Gas Corp. v. Century Indem. Co.*, 767 F. App'x 188, 191 (2d Cir. 2019) (summary order) (an insured should point to "evidence suggesting that, during the relevant period, it was reasonable for it to believe that a pro rata allocation rule applied to the [insurance] contracts."). Grumman has not identified any evidence of such deliberations between August and December 1976.

Grumman's Rule 56.1 counterstatement, the next time Grumman attempted any notice of groundwater injury after the August 2002, trigger point, was in February 2007, four and half years later.

Nor can earlier attempts at notice before August 2002, be construed as providing notice under the 1973-1974 Umbrella Policy. In *Travelers I*, the Second Circuit emphasized that "'each [insurance] policy imposes upon the insured a separate, contractual duty to provide notice.'" *Travelers I*, 677 F. App'x at 707 (quoting *Sorbara Constr. Corp. v. AIU Ins. Co.*, 11 N.Y.3d 805, 806, 868 N.Y.S.2d 573, 574, 897 N.E.2d 1054 (2008)). The Second Circuit found that Grumman's attempt to give notice to Century was insufficient where Grumman did not "identify any Century policies under which coverage was sought."[6] Similarly, the New York Court of Appeals affirmed in *Sorbara* that, even though an insured had provided notice under one policy, it was still required to provide notice to the same insurer under an excess policy. *See Sorbara Const. Corp*, 11 N.Y.3d at 806 (affirming *Sorbara Const. Corp. v Aiu Ins. Co.*, No. 602317-05, 2006 WL 5110778, at *2 (N.Y. Sup. Ct. Dec. 08, 2006), which held that notice given under a separate policy "is not notice to [the insurer] under the policy issued to [the insured] for excess coverage"); *Sorbara Const. Corp. v. AIU Ins. Co.*, 41 A.D.3d 245, 246, 838 N.Y.S.2d 531, 533 (1st Dep't 2007), *aff'd*, 11 N.Y.3d 805, 897 N.E.2d 1054 (2008) (An insurer's "duty to provide notice to the excess insurer is not negated by the insurer's actual knowledge [of the injury at issue] acquired from another source," including notice under another policy provided by the insurer). Grumman's purported notice to Travelers, at meetings in December 1976, and January

_____

[6] To be clear, this rule does not mean that an insured cannot give notice under multiple policies at the same time. For example, in Grumman's 2016 notice of the *Romano* Complaint, its representative expressly stated that the notice was with respect to the "general liability policies" in effect "from at least 1968 to 1995."

1977, did not raise the 1973-1974 Umbrella Policy or the likelihood of liability exceeding $100 million. Indeed, Grumman argues on reconsideration that it did not even know that liability would exceed $100,000 around that time. Nor did Grumman raise the policy at a 1989 meeting. Five years later in December 1994, Grumman was still reporting to Travelers that it had incurred only about $5 million of liability for the groundwater injury. Six years after that, in March 2000, Grumman told Travelers that it expected groundwater injury might eventually cost $80 million. Under these facts, Grumman failed to provide timely and sufficient notice under the 1973-1974 Umbrella Policy.

### 2. The 1977-1985 Travelers Primary Policies

Reconsideration is granted as to the ruling that Grumman's late notice vitiated coverage of the NRD Claim under *all* Majority Primary Policies and Minority Primary Policies. This ruling does not apply to primary policies in effect from 1977 to 1985, which Travelers issued after Grumman's June 1976, late notice. As just discussed, notice must be given with respect to a specific policy or set of policies. An insured does not have a notice obligation under a policy that is not yet in effect, nor do an insured's earlier attempts at notice inoculate it against a late notice defense under future policies. *See Travelers I*, 677 F. App'x at 707 ("Each policy imposes upon the insured a separate, contractual duty to provide notice."); *Sorbara Const. Corp*, 11 N.Y.3d at 806. Grumman's argument that its purported December 1976, notice preemptively satisfied its notice obligations under the 1977-1985 Travelers Primary Policies is rejected. Similarly, Travelers' argument that Grumman's failure to give timely notice around June 1976, vitiated coverage under the later 1977-1985 policies is also rejected. The parties have not fully briefed policy exclusion issues, or fully addressed how a late notice defense should apply when a relevant occurrence, injury or property damage arose before the policy incepted. This ruling is

without prejudice to Travelers continuing to assert a late notice defense or any other defenses under the Travelers policies.

### C. The Century Opinion

Century's motion to reconsider the Century Opinion is denied. Grumman's motion to reconsider the Century Opinion is denied in part and granted in part. Late notice does not vitiate coverage of the property damage claims in the *Romano* Lawsuit and the NRD Claim, under the Century Excess Policies, which require notice of an "accident." This ruling is without prejudice to Century's continuing to assert a late notice defense or other coverage defenses under its policies on a more developed record.

### 1. Century's Reconsideration Motion

The Century Opinion held that, because the terms "occurrence" and "accident" in the Century Primary Policies are ambiguous, summary judgment could not be granted to Century on the late notice defense. Century now argues that Grumman's notice is late as a matter of law because: (1) Grumman was required to notify Century of the dangerous "conditions" of groundwater contamination by June 1976, and soil contamination by May 2001, (2) the term "accident" is unambiguous as the parties agree it encompasses the gradual contaminations at issue, and (3) the policies include grouping language requiring treating the groundwater or soil contamination as a single "occurrence" or "accident." These arguments are unpersuasive.

First, Century does not point to evidence or case law that compels ruling that Grumman was required to give notice of the groundwater contamination by June 1976, and the soil contamination by May 2001, as under the Travelers policies. These notice points are bound up in the language of the Travelers policies. *See generally Romano* Opinion, 413 F.Supp.3d 263, 274-75. Those polices define a single "occurrence" to include injuries arising out of a

continuous exposure to substantially similar conditions.  Second Circuit precedent in turn provides that, under such policy language, an occurrence arises once an insured reasonably understands it may be liable for the injurious conditions, *i.e.* when Grumman apprehended by June 1976, and May 2001, that the respective contaminations could give rise to colorable claims. *See Olin I*, 966 F.2d at 724.

This reasoning, however, cannot apply to the Century policies without first resolving the meaning of critical terms.  The Century policies require notice "when an occurrence occurs," but do not define "occurrence" or establish whether an occurrence arises when an insured has knowledge of injurious conditions (as in the Travelers policies) *or* knowledge of particular victim's and property's *exposures* to the conditions (like the policies in *Appalachian Ins. Co. v. Gen. Elec. Co.*, 863 N.E.2d 994, 999-1000 (N.Y. 2007)).  If the latter interpretation applies to the Century policies, it is an open issue how many and at what time Grumman learned of each exposure.  *See Travelers Indem. Co. v. Northrup Grumman Corp.* ("Century Opinion"), 416 F. Supp. 3d 290, 298-99, No. 16 Civ. 8778, 2019 WL 4722678, at *6 (S.D.N.Y. Sept. 26, 2019) (holding that some victims and property may be exposed at roughly the same time, so their exposures may be treated as a single occurrence).  Critically, the *Romano* Opinion does not hold that Grumman's notice obligation arose by June 1976, because Grumman necessarily knew of particular third-party exposures at that time.  *See Romano* Opinion, 413 F. Supp.3d at 276 ("The totality of these facts shows that by June 1976, Grumman reasonably understood that it could be responsible for a 'severe' contamination spreading into the local water supply.  It therefore knew it may have liability for the contamination.").  Similarly, the evidence underlying the May 2001, notice point is also not definitive as to particular exposures.  *See id.* at 278 (Grumman knew by May 2001, of colorable claims of injury due to soil contamination, because an internal

presentation recognized the possibility of "tort claims" based on contaminants in "soil samples exceed[ing] regulatory standards.")  Century's various arguments on reconsideration that Grumman still has a "duty to give notice when it *first* becomes aware of an occurrence" begs the question, because these arguments assume a particular meaning of "occurrence" applies. Century is not precluded from arguing that these same notice points should apply under its policies.  The Court is ruling only that the applicability of the late notice defense cannot be determined on the current summary judgment record.

Second, Century argues that "accident" is unambiguous because the parties consented to a single definition, but that apparently is not the case.  Grumman's opposition does not evince consent.  Nor does the Century Opinion foreclose Century from arguing, on a more developed record, that "accident" excludes the kind of contamination for which Grumman seeks coverage.[7] Indeed, the Century policies at issue were in effect from 1950 to 1968, and insurance policies only began switching from accident-based to occurrence-based coverage around 1966.  In policies from that era, it was unclear whether the term "accident" encompassed gradual injurious exposures.  *See Am. Home Prod. Corp.*, 565 F.Supp. at 1501 (With respect to the "uncertainty created by the 'accident' orientation of pre-1966 liability policies," "[t]he courts were left in doubt as to whether, and to what extent, the standard policy was meant to cover liability for injuries that resulted from gradual processes, rather than from sudden events.").

---

[7] Century argues that the Second Circuit in *Travelers I* fixed the interpretation of the Century policies already.  But that opinion finds against Grumman due to deficiencies in Grumman's notice, including the form of Grumman's notice and the fact that "Grumman never even attempted to notify Century" of a particular claim and was delayed in notifying Century of claims not at issue here.  *See Travelers I*, 677 F. App'x at 707-09.

Finally, the purported grouping provision that Century identifies is not persuasive.[8]  The provision does not define what a single occurrence is, as the Travelers policies do.  Rather, the provision states that, where there *is* "one accident" or "one occurrence," then a single liability limit will apply to all damages and injuries arising from that accident or occurrence.  Each separate injury will not be entitled to its own liability limit.  Although the Travelers policies have a similar restriction, they contain additional language defining a single occurrence as a continuous exposure to substantially similar conditions: "The 'limit of liability' provision states that, where 'all bodily injury and property damage aris[e] out of continuous or repeated exposure to substantially the same general conditions[, they] shall be considered as arising out of one occurrence."  *See Romano* Opinion, 413 F. Supp. 3d at 268 (alteration in original).  The parallelism in this provision, centered around the term "arising out," suggests that "continuous or repeated exposure to substantially the same general conditions" is deemed "one occurrence."

## 2. Grumman's Reconsideration Motion

Grumman seeks reconsideration of three aspects of the Century Opinion.  Grumman argues that notice under the Century Excess Policies is not late as a matter of law, because (1) a subset of the policies requires notice of an "accident," which is an ambiguous term, for property damage claims in the *Romano* Lawsuit and NRD Claim, (2) a subset of policies does not contain

---

[8] The provision states that:

> The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person in any one accident; the limit of such liability stated in the declaration as applicable to "each [occurrence]" is, subject to the above provisions respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons in any one [occurrence].

grouping language, and (3) Grumman's notice obligation did not arise until Grumman reasonably understood that the excess policies would be reached. Each of these grounds, according to Grumman, creates material disputes of fact. Reconsideration is granted on the first ground only.

The Pre-1963 Excess Policies require notice "upon the happening of an occurrence or accident." Grumman correctly identifies that another provision in the policies clarifies that the term "occurrence" will apply only for personal injury claims and "shall not be deemed to apply" to property damage claims. In determining whether Grumman's notice was timely as to the property damage claims in the *Romano* Lawsuit and NRD Claim, the relevant question then is whether Grumman gave timely notice of an "accident," not an "occurrence." The Pre-1963 Excess Policies do not define "accident." For the same reasons the Court held that "accident" in the Century Primary Policies is ambiguous, the term is likewise ambiguous in the Pre-1963 Excess Policies. Therefore, the timeliness of Grumman's notice under these policies cannot be determined as a matter of law on the current record.

Grumman's argument, however, that the Pre-1963 Excess Policies do not contain grouping language is not persuasive. Per Grumman, in the absence of such language, it is ambiguous for which "occurrences" Grumman was required to provide notice in order to preserve coverage of the bodily injury claims in the *Romano* Lawsuit. The Pre-1963 Policies plainly state: "The word 'occurrence' and the word 'accident,' as used in this policy shall respectively include a series of occurrences and a series of accidents arising out of one event." Although this provision does not define "occurrence" or "accident," the critical language is that a "series . . . arising out of one event" will be deemed a single "occurrence" or "accident." That is, where "occurrences" or "accidents" may otherwise appear separate, they must be grouped

together if they all flow from one "event." "Event" in turn is a generic term for, as multiple dictionaries provide, "a thing that happens." *See, e.g.*, "Event." MERRIAM WEBSTER DICTIONARY. A continuous exposure, *i.e.* a contamination, qualifies as a single "event" from which a "series" of otherwise separate occurrences and accidents may result. *See, e.g., Olin I*, 966 F.2d at 723 (2d Cir. 1992) (suggesting interchangeability of "an *event* or continuous exposure to conditions") (emphasis added). Therefore, the groundwater contamination and soil contamination are each a unique occurrence. For the reasons discussed extensively in the Opinions, Grumman's notice of these occurrences was untimely, including with respect to the *Romano* Law bodily injury claims under the Pre-1963 Excess Policies.

Finally, Grumman has waived any argument that its notice was reasonably delayed under the Century Excess Policies based on not knowing that these policies would be reached, because it failed to raise this argument on summary judgment. *See Phillips*, 775 F.3d at 544. This argument is also unavailing on the merits. As discussed, an insured's notice obligation arises under excess policies when the insured has a "reasonable expectation of liability vis-à-vis the attachment points of each excess policy." *Olin II*, 74 F. App'x at 108. The Century Excess Policies attach for liability above $100,000 for property damage claims, and above $100,000 per person (or $500,000 per occurrence) for bodily injury claims. As to the NRD Claim, Section III.B.1 discusses above how Grumman's notice obligation arose by August 1976, under materially similar Travelers Umbrella Policies with a $100,000 attachment point. According to Grumman's Rule 56.1 statement, Grumman did not provide any notice to Century until January 1984, which the Second Circuit in any case deemed deficient. *See Travelers I*, 677 F. App'x at 707 (The 1984 notice failed to "identify any Century policies under which coverage was sought," let alone the Excess Policies, and was therefore deficient). As to the *Romano* Lawsuit claims,

Grumman's internal presentations showed that it foresaw the possibility of "enormous" third-party "toxic tort claims" by May 2001.  In an August 2002 presentation, Grumman internally recognized that it had potential liability for "Property Damage Claims" and "Toxic Tort Suits," whose costs would be "[i]ndeterminate" but would include "Legal Defense Costs."  In the directly adjacent bullet point, Grumman noted that its liability for environmental damage in general would be "tens of millions of dollars."  Because the extent of third-party claims tracks the extent and scope of the underlying environmental damage, *i.e.* the more widespread a contamination is, the higher the number of people and properties affected, this multimillion figure provides some benchmark of the order of magnitude of third-party claims.  Yet, the next time Grumman attempted to give notice to Century regarding any third-party issues was in August 2015.[9]  For Grumman to sustain an argument that it had no notice obligation until August 2015 or even later, because it believed the Excess Policies would not be reached, Grumman had the burden of adducing evidence of this "deliberate determination."  *See Long Island Lighting Co.*, 805 N.Y.S.2d at 75.  No such evidence was offered.[10]  In any case, this argument has been waived.

## IV.    CONCLUSION

For the foregoing reasons, the Motions for Reconsideration are DENIED, except that Grumman's Motion to Reconsider the NRD Opinion is GRANTED in part and Grumman's Motion to Reconsider the Century Opinion is GRANTED in part.   At the summary judgment

---

[9] Grumman's purported letter notice to Century in June 2005, concerned a different lawsuit not at issue, and in any case, did not identify any of the Century policies, excess or otherwise.

[10] Because Grumman's arguments are deficient procedurally -- both due to the failure to adduce evidence and due to the waiver -- the Court is not ruling by when Grumman was required to give notice of the *Romano* Lawsuit under the Century Excess Policies.  As discussed, however, the record contains evidence that the time arose well before August 2015.

stage, the late notice defense cannot be deemed to vitiate coverage of: (i) the NRD Claim under the 1977-1985 Travelers Primary Policies and (ii) the property damage claims in the *Romano* Lawsuit or NRD Claim under the Century Excess Policies.  These rulings are without prejudice to Travelers and Century continuing to assert late notice or any other defenses to these policies, consistent with the foregoing and the Opinions.

The Clerk of Court is respectfully directed to close Dkt. Nos. 276, 277, 279, 291 and 292.

Dated:  March 26, 2020
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE