```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
THE TRAVELERS INDEMNITY CO. et al.,                         :
                                  Plaintiffs,               :     16 Civ. 8778 (LGS)
                                                            :
              -against-                                     :     OPINION AND ORDER
                                                            :
NORTHROP GRUMMAN CORP. et al.,                              :
                                  Defendants.               :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

      In this environmental insurance coverage action, Plaintiffs The Travelers Indemnity Company and The Travelers Indemnity Company of Connecticut (collectively, "Travelers") move for a declaration on summary judgment that they owe no coverage to Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation (collectively, "Grumman") under various Travelers insurance policies with qualified pollution exclusions ("QPEs") for: (1) a natural resources damages claim ("NRD Claim") contemplated against Grumman by the New York State Department of Environmental Conservation ("NYSDEC") and (2) a putative class action lawsuit pending against Grumman, *Romano et al. v. Northrop Grumman Corporation et al.*, No. 16 Civ. 5760 (E.D.N.Y.) ("*Romano* Lawsuit").  Travelers contends that (1) *Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79 (S.D.N.Y. 2014) ("*Grumman I*") collaterally estops Grumman from claiming such coverage and, alternatively, (2) Grumman cannot show that any pollutant discharges for which it seeks coverage were "sudden and accidental" or not "expected and intended," as required to qualify for exceptions to the QPEs. The parties had a full and fair opportunity in *Grumman I* to litigate a key issue again presented in this case -- whether Grumman's discharges are subject to exceptions to the QPEs.  The parties extensively litigated this issue in *Grumman I* through appeal, and both the trial and appellate courts concluded that Grumman's discharges were not subject to the QPE exceptions.  Because

the same discharge practices and QPEs are at issue in this proceeding, Grumman is collaterally estopped from claiming coverage.

I.      BACKGROUND

This background summary construes disputed facts, as required, in favor of Grumman, the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017).

   A.  The Bethpage Facility

Familiarity with Grumman's activities is assumed from the prior opinions issued in this case, but a brief summary is provided here.  From the 1930s to the 1990s, Grumman operated an aircraft manufacturing and testing facility in Bethpage, New York, on Long Island ("Bethpage Facility").  Within the boundaries of the Bethpage Facility was an eighteen-acre parcel previously used as a dumping ground by Grumman, which it donated to the town of Oyster Bay in 1962, and which now constitutes the Bethpage Community Park (the "Park").  Grumman's activities at the Bethpage Facility generated a plume of groundwater contamination on Long Island.  During the Bethpage Facility's operation, Grumman discharged various contaminants into the groundwater: (1) volatile organic compounds ("VOCs") such as trichloroethylene ("TCE"); (2) chromium; (3) waste oil and (4) polychlorinated biphenyls ("PCBs").  These discharges occurred through direct dumping and flushing to the environment as well as the use of sludge pits and recharge basins.

In December 1983, NYSDEC began investigating pollution near the Bethpage Facility. NYSDEC issued Records of Decision ("RODs") addressing (1) soil contamination at the facility's Operable Unit 1 ("OU-1"), (2) groundwater contamination at Operable Unit 2 ("OU-2") and (3) Park contamination ("OU-3").

B.  *Grumman I* and Appeal

This action is related to *Grumman I*, litigated between the same parties.  In that action, Travelers sought a declaratory judgment that it was not obligated to cover environmental cleanup or "remediation" claims brought by NYSDEC, the town of Bethpage and various water districts for contamination around the Bethpage Facility.  Grumman cross-claimed for coverage.  Travelers argued at summary judgment that it had (1) no coverage obligation based on statutory and contractual QPEs and (2) late notice defenses under the asserted policies.  In March 2014, the Court granted Travelers' motions for summary judgment.  After extensively cataloging Grumman's activities and discharges at the Bethpage Facility, *Grumman I* concluded that (1) "Grumman's practices spanning decades require a determination that the 'sudden and accidental' statutory pollution exclusion or the 'expected or intended' policy-based exclusion preclude coverage with respect to the Travelers policies issued between January 1, 1972 and January 1, 1983," *Grumman I* at 105, and (2) no triable issue existed that Grumman had failed to timely put Travelers on notice of its anticipated claims, *id.* at 112-13.

Grumman appealed.  As relevant to the present motion, Grumman contended that (1) it provided timely notice and (2) its discharges were either not "expected and intended" or were "sudden and accidental," such that they qualified for exceptions to the QPEs.  The Second Circuit rejected these arguments and affirmed.  *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 677 Fed. App'x 701 (2d Cir. 2017) (summary order).  The Second Circuit addressed *Grumman I*'s notice holding, concluding that Grumman had failed to provide appropriate notice under New York law for all of its claims.  *Id.* at 706-09.  The Second Circuit then stated that it "ha[d] considered Grumman's remaining arguments and conclude[d] that they are without merit."  *Id.* at 709.

3

### C. The NRD Claim

On August 3, 2016, NYSDEC sent Grumman a letter, titled "Notice of Intent to Perform a Natural Resource Damages Assessment." The letter states that NYSDEC, as "natural resource trustee, has concluded its preliminary investigation of potential injuries to groundwater resources under its trusteeship that may have occurred as a result of releases/discharges of hazardous substances at, or from" the Bethpage Facility; "[c]urrently implemented and planned response actions will not sufficiently remedy the injury to groundwater" and that Grumman may be "liable for the subsequent natural resource damages relating to these releases." On May 23, 2019, then-Governor Cuomo issued a press release (the "Press Release"). The release states that NYSDEC "will soon[] releas[e] a Natural Resource Damages report under the federal Superfund law that determines that groundwater was substantially impacted and needs to be restored." As the Court previously held, "NYSDEC did not assert any NRD Claim until the May 23, 2019, Press Release."

### D. The *Romano* Lawsuit

The *Romano* Lawsuit is a putative mass tort class action brought by residents and property owners near the Bethpage Facility. The Third Amended Complaint, which is the operative *Romano* Complaint ("*Romano* TAC"), alleges that Grumman's discharges during its operation of the Bethpage Facility contaminated the groundwater, soil and air in the nearby community, causing bodily injury and property damage. The *Romano* TAC alleges that Grumman released at least the following hazardous substances: VOCs, semi-volatile organic compounds, TCE, PCBs, 2-butanone (methyl ethyl ketone), perchloroethylene, 2-hexanone, carbon tetrachloride, chromium, benzene, dioxin/furans, radium, radon, 1,4-dioxane, and perfluoroalkyl and polyfluoroalkyl substances.

4

### E. Policies at Issue

As outlined in the Court's previous Opinion and Order, three categories of insurance policies, which Travelers issued to Grumman between January 1, 1968, and January 1, 1985, potentially give rise to coverage obligations: the "Majority Primary Policies," the "Minority Primary Policies" and the "Umbrella Policies." The Court previously held that Grumman's failure to provide timely notice of covered event occurrences precludes coverage for (1) the NRD Claim under all policies except for primary policies in effect from 1977 to 1985 and (2) the *Romano* Lawsuit under the Majority Primary Policies.

Of the remaining policies, those at issue in the NRD Claim and the *Romano* Lawsuit date from 1968 to 1985. The parties do not dispute that the policies dating from 1972 to 1985 contain either statutory or contractual QPEs.[1] As outlined in *Grumman I*, all but one of the policies with periods from January 1, 1972, to January 1, 1983, incorporate New York State's statutory pollution exclusion:

> Policies . . . issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is *sudden and accidental*.

N.Y. Ins. Law § 46(13) & (14) (McKinney 1981) (emphasis added). The policies dating from 1983 to 1985, as well as one from the 1972 to 1983 period, contain a contractual, rather than statutory, QPE:

> This insurance does not apply . . . to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant . . . if such emission, discharge, seepage,

---

[1] Four Umbrella Policies in effect from 1968 to 1972 do not contain QPEs and are not at issue in this motion.

release or escape is either *expected or intended* from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable.

(emphasis added).

## II. STANDARD

### A. Summary Judgment

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58-59 (2d Cir. 2016). Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 71-72 (2d Cir. 2016). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *accord Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014).

### B. Collateral Estoppel

"Collateral estoppel prevents a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 737 (N.Y. 2021) (internal quotation marks and

alterations omitted); *accord Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018).[2] Collateral estoppel precludes a party from relitigating a particular issue when "the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the party who is being estopped had a full and fair opportunity to litigate the issue in the earlier action." *Simmons*, 170 N.E.3d at 737 (internal quotation marks omitted); *accord Flood*, 904 F.3d at 236. "[C]ollateral estoppel is a flexible doctrine," *In re Dunn*, 27 N.E.3d 465, 468 (N.Y. 2015) (internal quotation marks omitted), which "depends upon general notions of fairness involving a practical inquiry into the realities of the litigation," *Jeffreys v. Griffin*, 801 N.E.2d 404, 409 (N.Y. 2003); *accord Flood*, 904 F.3d at 236 ("A trial court or other adjudicator is generally accorded broad discretion in determining whether or not collateral estoppel should apply in a given case." (internal quotation marks omitted)). The doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 743 (N.Y. 2018) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *accord Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004). Collateral estoppel does not apply when the essential facts of the earlier case differ from the

---

[2] The preclusive effect of a federal court's diversity judgment, as in *Grumman I*, is determined by the law of that court's forum state, which in the case of *Grumman I* is New York. *See Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir.), *certified question accepted*, 166 N.E.3d 1053 (N.Y. 2021) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)) (applying New York law to find that collateral estoppel did not apply to preclude relitigation of an issue purely of law). The Second Circuit has recognized that there is "no significant difference between New York preclusion law and federal preclusion law." *Jordan v. Verizon Corp.*, No. 17 Civ. 9197, 2019 WL 340715, at *5 n.3 (S.D.N.Y. Jan. 28, 2019), (quoting *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001)). As the parties rely on both New York and federal law, this opinion does as well, recognizing that if the two conflict, then New York law governs.

instant one, even if they involve similar legal issues. *See Kudla v. Kudla,* 105 N.Y.S.3d 546, 548 (2d Dep't 2019); *accord Envtl. Def.*, 369 F.3d at 202 (citing *Montana v. United States*, 440 U.S. 147, 159 (1979)) ("When the facts essential to a judgment are distinct in the two cases, the issues in the second case cannot properly be said to be identical to those in the first, and collateral estoppel is inapplicable.").

### III. DISCUSSION

#### A. Collateral Estoppel

##### 1. Identical Issues

###### a. NRD Claim

As outlined in the Press Release, the NRD Claim involves potential payments for soil and groundwater contamination from Grumman's discharges at the Bethpage Facility. As noted in the Court's earlier opinion, these claims arise from the same Grumman discharge practices exhaustively cataloged in *Grumman I*, where a central issue was the applicability of QPEs in light of those practices. The applicability of the same QPEs to the same discharges is at issue here -- as in *Grumman I*, Grumman's discharges are not exempt from the QPEs unless they were "sudden and accidental" or not "expected or intended." The issues are the same for purposes of the NRD Claim.

In response, Grumman first argues that different contaminants may be at issue in the NRD Claim than in *Grumman I*, noting that (1) additional discovery took place in this action and (2) the Press Release discussed releases of TCE, which was explicitly discussed as a contaminant in *Grumman I*, and 1,4-dioxane, which was not. From those observations, Grumman extrapolates that *Grumman I* "did not address all of the . . . alleged releases at issue here." According to Grumman, the difference in contaminants renders the issues in this proceeding sufficiently

different from the issues in *Grumman I* to preclude application of collateral estoppel. Grumman reads *Grumman I* too narrowly. *Grumman I* exhaustively cataloged Grumman's historical discharge practices, based on an extremely fulsome record. That it did so in the context of a few specific contaminants does not alter the court's broad ruling, based on decades of evidence, that Grumman's discharges resulting in environmental contamination -- regardless of whether they included any specific contaminant (1,4-dioxane, for example) -- were not subject to exceptions to the QPEs, that is, that they were "expected or intended" and were not "sudden and accidental." That is the relevant issue for determining the applicability of the QPEs, and that issue was settled in *Grumman I*.

Grumman next argues that the claims at issue in *Grumman I* addressed remediation of contamination, while "NRD claims are intended to cover the past injury and residual costs or losses *beyond* whatever restoration can be achieved through remediation." Grumman argues that this difference in claims renders the issues in the two proceedings non-identical. This argument is unpersuasive because it confuses claim preclusion and collateral estoppel. The relevant question for purposes of collateral estoppel is whether the same issues are presented in two proceedings, not whether the two proceedings involve identical claims. *See, e.g.*, *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 743 (N.Y. 2018) ("[T]he determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim."); *accord Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 82 (2d Cir. 2019) ("[T]he identicality standard does not require either that the two cases have the same scope or that they involve the same causes of action. Rather, it is met . . . so long as the *issues* are identical." (emphasis in original) (citation omitted)); *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (collateral estoppel "bars successive litigation of an issue of fact or law actually litigated

9

and resolved in a valid court determination essential to the prior judgment, *even if the issue recurs in the context of a different claim*" (emphasis added) (internal quotation marks omitted)).  The central issue in *Grumman I* and this action is whether the QPEs apply in light of Grumman's established discharge practices.

        b. ***Romano* Action**

The *Romano* Lawsuit "trace[s] back to the same [Bethpage] Facility groundwater contamination" as in *Grumman I*.  The *Romano* TAC alleges that the plaintiffs' injuries were caused by the same soil and groundwater discharges investigated in *Grumman I*, namely, those at issue in the investigations for OU-1, OU-2 and OU-3.  Grumman is precluded from relitigating the issue of whether those same discharges qualify for QPE exceptions.

In response, Grumman reiterates its argument as to the NRD Claim -- that many of the harmful contaminants identified in the *Romano* TAC were not explicitly discussed in *Grumman I*.  As with the NRD Claim, Grumman argues that the difference in contaminants means that collateral estoppel cannot bar determination of the applicability of the QPEs to Grumman's alleged discharges in the *Romano* Lawsuit.  Again, the issues before the Court in *Grumman I* were broad, encompassing Grumman's historical discharge practices across nearly six decades.  Its ruling as to whether those discharges were "sudden and accidental" or not "planned or expected" was similarly broad, comprehensively addressing Grumman's discharge practices and concluding that "Grumman's practices spanning decades require a determination that" the QPEs preclude coverage.  3 F. Supp. 3d at 105.  Grumman identifies no specific contaminant releases or release pathways at issue in the *Romano* Lawsuit that do not fall under *Grumman I*'s analysis of

10

Grumman's discharges.³

### 2. Full and Fair Opportunity to Litigate

The parties exhaustively litigated the applicability of the QPEs in *Grumman I*, exchanging millions of pages of documents, conducting approximately seventy-five depositions and proffering numerous expert reports. On that record, *Grumman I* thoroughly cataloged Grumman's history of discharge practices at the Bethpage Facility, made a factual finding that they were "expected or intended" and were not "sudden and accidental," and held that the QPEs precluded coverage of Grumman for groundwater contamination originating at the Bethpage Facility. On appeal, Grumman again heavily litigated the applicability of the QPEs, as well as its notice arguments. The Second Circuit first addressed the notice arguments, and then concluded that Grumman's remaining arguments -- which included the QPE arguments -- were "without merit." *Travelers Indem. Co.*, 677 Fed. App'x at 709. The applicability of the QPEs was fully litigated and decided in *Grumman I*.

In response, Grumman first argues that QPE applicability was not litigated and decided on appeal because the Second Circuit merely stated that it had considered and rejected Grumman's other arguments but did not address them in detail. This argument is misplaced. The proper focus of the collateral estoppel inquiry is *Grumman I*, where the QPEs were fully litigated and whose findings were undisturbed by the Court of Appeals after extensive briefing and argument.

---

³ Grumman correctly notes that the *Romano* TAC alleges releases of airborne pollution, but that *Grumman I* cataloged pathways only for soil and water contamination. To the extent Grumman considers soil vapor intrusion -- the process by which contaminants in groundwater or soil move into air spaces in the soil -- to be air pollution, that type of discharge was considered in the OU-3 investigation underlying *Grumman I* and is barred. *See* ECF 380-33 at 15 (stating that "[t]he potential for soil vapor intrusion resulting from the presence of site-related soil or groundwater volatile organic compound contamination was evaluated").

11

Grumman next argues that it was denied a full and fair opportunity to litigate the QPE issue when the Court *sua sponte* excluded the opinions of one of its expert witnesses, Dr. Langseth, and then denied Grumman permission to supplement the record with his deposition transcript following a summary judgment hearing.  This argument is unpersuasive as Grumman (1) filed Dr. Langseth's report, (2) addressed its admissibility during the summary judgment hearing and on appeal and (3) does not explain how Dr. Langseth's opinion was crucial. Grumman cannot be said to have lost a key witness or crucial evidence sufficient to deprive it of a full and fair opportunity to litigate.

### 3. Necessarily Decided and Material

*Grumman I* ruled for Travelers on two alternative, independent bases: (1) that Grumman's discharges did not qualify for the QPE exceptions and (2) no triable issue existed that Grumman had failed to provide Travelers timely notice of its anticipated claims.  *Grumman I* at 105, 112-13.  A trial court's alternative rulings have preclusive effect if they are "neither 'casual [n]or of any lesser quality than had the outcome of the trial depended solely on [the alternative] issue.'" *Malloy v. Trombley*, 405 N.E.2d 213, 216 (N.Y. 1980) (first alteration in original); *accord Tydings v. Greenfield, Stein & Senior, LLP*, N.E.2d 1044, 1047 (2008) (collecting cases, noting that an alternative ruling has preclusive effect where the court addressed the issue with "unhurried and painstaking care," and that an alternative ruling will not have preclusive effect where it is "not clear that the prior determination squarely addressed and specifically decided the issue" (internal quotation marks omitted)); *Sutherland Glob. Servs., Inc. v. Adam Techs. Int'l SA de C.V.*, 639 F. App'x 697, 701 (2d Cir. 2016) (summary order) ("'[E]ach of two alternative, independent grounds for a prior holding is given effect' in this Circuit for purposes of issue preclusion." (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 n.6 (2d Cir. 2003)).  As discussed

12

above, *Grumman I* painstakingly analyzed QPE applicability at length, with reference to a fulsome record. Under governing law, the applicability of the QPEs to Grumman's discharges was necessarily decided and material in *Grumman I*.

In response, Grumman first argues that *Grumman I*'s primary basis of decision was on lack of notice, not the merits of whether Grumman's discharges qualified for the QPEs. In support of this argument, Grumman cites *Bobby v. Bies*, 556 U.S. 825, 835 (2009), a death penalty case stating that a determination is necessary or essential to a case "only when the final outcome hinges on it." Grumman's reliance on this case is unavailing, as the outcome of *Grumman I* rested on two independent, alternative findings: (1) that Travelers lacked notice of the coverage claims at issue and (2) that the discharges did not qualify for the QPE exceptions. Finding that the outcome of a case does not "hinge" on each of two alternative bases would be inconsistent with governing law and would subvert the doctrine of collateral estoppel by precluding a finding of collateral estoppel whenever a judicial decision rests on multiple independent grounds; this would result in the exact duplication of effort, inefficiency and potential for conflicting decisions that the doctrine is designed to avoid. *See Envtl. Def.*, 369 F.3d at 202.

Grumman next argues that because not all of the policies at issue in *Grumman I* contained QPEs, the only portion of *Grumman I* that conclusively settled all claims was the Court's notice ruling, which addressed all of the policies, rather than the discharge ruling, which addressed only those policies with QPEs. This argument is unpersuasive because the only policies at issue in this proceeding are those containing QPEs, and Travelers has not moved for summary judgment on the applicability of policies not containing QPEs. Again, requiring the issue of QPE exception to be relitigated simply because an alternative basis of decision in *Grumman I* addressed policies

13

with and without QPEs would produce the same issues that the doctrine of collateral estoppel is designed to avoid.

Grumman also notes that the Second Circuit did not explicitly address its QPE arguments and suggests that the Second Circuit's decision should not be given preclusive effect for that reason.  *See Tydings v. Greenfield, Stein & Senior, LLP*, 897 N.E.2d 1044, 1047 (N.Y. 2008) (adopting the federal rule that if an "*appellate* court affirms on one ground and disregards the other, there is no collateral estoppel" based on the appellate decision (emphasis added)).  This argument is unpersuasive.  As described above, the Court's thorough analysis in *Grumman I* of Grumman's arguments relating to QPE exceptions justifies application of collateral estoppel.  That the Court of Appeals did not address the QPE arguments in detail, but explicitly stated that it would leave *Grumman I*'s QPE findings undisturbed after extensive appellate briefing and argument, bolsters *Grumman I*'s preclusive effect.

### 4. Fairness

Courts also must satisfy themselves that application of collateral estoppel is fair.  *See Jeffreys v. Griffin*, 801 N.E.2d 404, 409 (N.Y. 2003) ("[W]hether to apply collateral estoppel in a particular case depends upon general notions of fairness involving a practical inquiry into the realities of the litigation." (internal quotation marks omitted)); *accord Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018).  In making this determination, a court must, "[c]onsidering the facts of each case, . . . examine the realities of litigation, such as recognition that if the first proceeding involved trivial stakes, it may not have been litigated vigorously." *Simmons*, 170 N.E.3d at 737 (internal quotation marks omitted).  "[T]he fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court

14

and the litigants, and the societal interests in consistent and accurate results." *Id.* (internal quotation marks omitted).

It is beyond reasonable dispute that *Grumman I* was a high-stakes, vigorously litigated case. On a massive factual record exhaustively cataloging sixty years of Grumman's operations through closure of the Bethpage Facility, *Grumman I* addressed whether Grumman's discharges were accidental enough to qualify for exceptions to the pollution exclusion clauses in the insurance contracts. The answer was a clear "no." Declining to reopen that question in this matter is fair to both parties, conserves their resources and those of the Court, and prevents inconsistent or inaccurate results. Put simply, in *Grumman I*, Grumman took full advantage of the opportunity to litigate the applicability of the QPEs to its discharges, and the Court squarely addressed that issue. Providing Grumman a second chance in this proceeding is contrary to the basic purpose of collateral estoppel: to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Paramount Pictures*, 96 N.E.3d at 743.

## IV.  CONCLUSION

For the reasons stated above, Travelers' motion for a declaratory judgment precluding Grumman from claiming coverage for the NRD Claim and the *Romano* Lawsuit under the QPE exceptions for the policies containing QPEs is GRANTED. Grumman is collaterally estopped from claiming coverage for the NRD Claim and the *Romano* Lawsuit under the QPE exceptions

for the policies containing QPEs. The parties' motions to preclude expert testimony are DENIED as moot. The Clerk of Court is respectfully directed to close the docket entries at numbers 356, 357, 396 and 407.

Dated: September 17, 2021
      New York, New York

                                                      **LORNA G. SCHOFIELD**
                                                      **UNITED STATES DISTRICT JUDGE**