**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, *et al.*, | |
| Plaintiffs, | **Civil Action No. 16-CV-8778 (LGS)** **[rel.12-CV-3040 (KBF)]** |
| vs. | |
| NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION, | |
| Defendants, | |
| *and* | **ECF CASE** |
| CENTURY INDEMNITY COMPANY, eventual successor in interest to INSURANCE COMPANY OF NORTH AMERICA, | |
| Nominal Defendant. | |

**CENTURY'S RESPONSE TO GRUMMAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND CENTURY'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Nominal Defendant Century Indemnity Company ("Century") hereby respond to Defendant Northrop Grumman Corporation's and Defendant Northrop Grumman Systems Corporation's (collectively, "Grumman") Rule 56.1 Statement in support of its Motion for Summary Judgment That Century and Travelers Have a Duty to Defend the *Romano* Lawsuit, and submits the below Statement of Undisputed Material Facts in support of Century's Cross-Motion for Summary Judgment That Century Owes No Defense for the *Romano* Lawsuit.

### CENTURY'S RESPONSE TO NORTHROP GRUMMAN'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.    The Parties**

1.      NGSC is the successor by merger to Grumman Corporation, which was, from the date of its incorporation in 1929 until 1969, named Grumman Aircraft Engineering Corporation ("Grumman"). Exs. 1-5.

**Response 1: Undisputed.**

2.      The Plaintiffs are The Travelers Indemnity Company, The Travelers Indemnity Company of Connecticut, Travelers Casualty and Surety Company, and Travelers Property Casualty Company of America (collectively "Travelers"). ECF 1, Complaint ¶¶ 16-19.

**Response 2: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

3.      Nominal Defendant, Century Indemnity Company, is the successor in interest to Indemnity Insurance Company of North America ("IINA") and Insurance Company of North America ("INA") (collectively, "Century"). ECF 28, Century Ans. ¶ 22.

**Response 3: Undisputed.**

**II.    The 1955-1962 Primary Insurance Policies Issued by Century**

4.    Century's predecessors issued the following comprehensive general liability insurance policies to Grumman Aircraft Engineering Corporation and others, with consecutive one-year policy periods from January 1, 1955 to January 1, 1962 (the "Century Primary Policies"):[1]

| Carrier | Policy Number | Policy Begin Date | Policy End Date | Joint Exhibit Number[2] |
|---------|---------------|-------------------|-----------------|-------------------------|
| IINA | 9 CGL 52305 M | 1/1/1955 | 1/1/1956 | JX1 |
| IINA | 9 CGL 72518 M | 1/1/1956 | 1/1/1957 | JX2 |
| IINA | 9 CGL 84727 | 1/1/1957 | 1/1/1958 | JX3 |
| IINA | 9 CGL 96324 | 1/1/1958 | 1/1/1959 | JX4 |
| IINA | 9 CGL 107602 | 1/1/1959 | 1/1/1960 | JX5 |
| IINA | 9 CGL 122273 | 1/1/1960 | 1/1/1961 | JX6 |
| INA | CGL 175064 | 1/1/1961 | 1/1/1962 | JX7 |

**Response 4: Disputed in part. It is undisputed that Century issued comprehensive general liability policies to Grumman with consecutive once-year policy periods from January 1, 1955 to January 1, 1962. Disputed as to Footnote #1. Grumman has not met its burden to prove the existence of any alleged Century primary policies effective January 1, 1951 to January 1, 1955 and January 1, 1962 and January 1, 1968.**

5.    Insuring Agreement I (Coverage A—Bodily Injury Liability) in each Century Primary Policy provides that the company "Agrees … to pay on behalf of the *Insured* all sums

---

[1]  Still at issue in this case, but not this motion, are Century's obligations under primary policies effective 1/1/1951 to 1/1/1955 and 1/1/1962 to 1/1/1968. No party has a complete copy of these policies, but NG believes discovery established their terms and conditions. This motion also does not address Century's obligations under umbrella policies effective 11/27/1950 to 1/1/1963.

[2]  Unless otherwise noted, all exhibits cited herein are attached to the Declaration of Daniel L. Russell Jr., which is dated November 12, 2021, and is filed herewith. References to "JX[#]" refer to the exhibits submitted through the Stipulation Regarding the Parties' Joint Exhibits, dated November 12, 2021.

which the *Insured* shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."  JX1, 1955 Policy at CEN00000005; JX2, 1956 Policy at CEN00000045; JX3, 1957 Policy at CEN00000078; JX4, 1958 Policy at CEN00000118; JX5, 1959 Policy at NGINS000003732; JX6, 1960 Policy at NGINS000003974; JX7, 1961 Policy at NGINS000004214.

    **Response 5: Undisputed.**

   6. An endorsement to each Century Primary Policy states "it is agreed: (1) that the words 'caused by accident' appearing in Insuring Agreement I (Coverage A) of the policy are hereby deleted; and (2) that with respect to said Insuring Agreement Section I (Coverage A), but not otherwise, wherever the word 'accident' appears elsewhere in the policy, or any endorsement forming a part thereof, the word 'occurrence' is substituted therefore."  JX1, 1955 Policy at CEN00000021; JX2, 1956 Policy at CEN00000055; JX3, 1957 Policy at CEN00000088; JX4, 1958 Policy at CEN00000131; JX5, 1959 Policy at NGINS000003750; JX6, 1960 Policy at NGINS000003985; JX7, 1961 Policy at NGINS000004230.

    **Response 6: Undisputed.**

   7. Insuring Agreement I (Coverage B—Property Damage Liability) in each Century Primary Policy provides that the company "Agrees … to pay on behalf of the *Insured* all sums which the *Insured* shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."  JX1, 1955 Policy at CEN00000005; JX2, 1956 Policy at CEN00000045; JX3, 1957 Policy at CEN00000078; JX4, 1958 Policy at CEN00000118; JX5, 1959 Policy at NGINS000003732; JX6, 1960 Policy at NGINS000003974; JX7; 1961 Policy at NGINS000004214.

**Response 7: Undisputed.**

8.      Insuring Agreement Section II (Defense, Settlement, Supplementary Payment) in each Century Primary Policy states that, "[a]s respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the *Insured* alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."   JX1, 1955 Policy at CEN00000005; JX2, 1956 Policy at CEN00000045; JX3, 1957 Policy at CEN00000078; JX4, 1958 Policy at CEN00000118; JX5, 1959 Policy at NGINS000003732; JX6, 1960 Policy at NGINS000003974; JX7, 1961 Policy at NGINS000004214.

**Response 8: Undisputed.**

9.      An endorsement in each Century Primary Policy states that "[t]his policy applies only to occurrences and accidents which happen during the policy period anywhere in the world provided that claims are made or the suits are brought within the United States of America or the Dominion of Canada."   JX1, 1955 Policy at CEN00000025; JX2, 1956 Policy at CEN00000059; JX3, 1957 Policy at CEN00000092; JX4, 1958 Policy at CEN00000135; JX5, 1959 Policy at NGINS000003754; JX6, 1960 Policy at NGINS000003989; JX7, 1961 Policy at NGINS000004234.

**Response 9: Undisputed.**

10.     Century has previously taken the position in litigation that policies requiring "occurrence" or "accident" during the policy period are "functionally identical" to policies that require "bodily injury" or "property damage" during the policy period.  *See* Ex. 17, Century Reply Br. in *Keyspan* at 2; *id.* at n.2 ("[A]ll of the policies require that the 'occurrence' or 'accident' take place during the policy period.  In addition, some of the policies expressly require that the 'damage'

take place during the policy period…. In other words, some of the policies have both a belt and suspenders.").

**Response 10: Disputed as stated. Century admits the statements contained in its brief, which are documents in writing that speak for themselves, and any characterization thereof is denied.**

11.    The Century Primary Policies do not define "accident" or "occurrence." JX1-7.

**Response 11: Undisputed.**

12.    The Century Primary Policies do not include or incorporate any pollution exclusion. JX1-7; *see generally* 1971 N.Y. Sess. Laws 1968 (McKinney) ("statutory" pollution exclusion took effect on September 1, 1971).

**Response 12: Undisputed.**

**III.    The 1968-1972 Umbrella Policies Issued by Travelers**

13.    Travelers issued the following Catastrophe Umbrella Policies to NG predecessors with consecutive one-year policy periods running from January 1, 1968 to January 1, 1974, (collectively, the "Travelers Umbrella Policies" or the "Umbrella Policies"):

| Carrier | Policy Number | Policy Begin Date | Policy End Date | Joint Exhibit Number |
|---|---|---|---|---|
| Travelers Indemnity Co. | T-CUP-932209-68 | 1/1/1968 | 1/1/1969 | JX8 |
| Travelers Indemnity Co. | T-CUP-932209-69 | 1/1/1969 | 1/1/1970 | JX9 |
| Travelers Indemnity Co. | T-CUP-932209-70 | 1/1/1970 | 1/1/1971 | JX9 |
| Travelers Indemnity Co. | T-CUP-932209-71 | 1/1/1971 | 1/1/1972 | JX9 |

**Response 13: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

14.    The Insuring Agreement in each Umbrella Policy states that Travelers:

*Agrees with the insured … To indemnify the insured for all sums which the insured shall become obligated to pay by reason of the liability imposed by law upon the insured, or assumed by the insured under any contract, for damages in excess of the retained limit because of bodily injury,*

*personal injury, malpractice injury, advertising injury or property damage to which this policy applies. In addition, all insurance, exclusive of limits of liability, afforded by the underlying insurance which is not also afforded by this policy shall be afforded by this policy as fully as though such insurance were written herein.*

JX8, 1968 Umbrella Policy at NGINS001109878; JX9, 1969-1972 Umbrella Policies at TRAV002729; *see also id.* at TRAV002761 & TRAV002764 ("renewal certificates" for the policy years January 1, 1970 to January 1, 1971 and January 1, 1971 to January 1, 1972).

**Response 14: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

15.    Each Umbrella Policy contains a "Defense, Supplementary Payments" ("DSP") provision that states:

*With respect to any claim or suit alleging bodily injury, personal injury, malpractice injury, advertising injury or property damage, insurance for which is not afforded by the underlying policies listed in Item 5 of the declarations or any other applicable insurance (hereinafter called "underlying insurance"), but which is insured by the terms and conditions of this policy (or would be so insured but for the application of the deductible amount stated in Item 4 of the declarations), the company shall:*
*(a) defend, at the sole option of the insured, any suit against the insured … alleging such injury or damage and seeking damages on account thereof, even if any of the allegations of the suit are groundless, false or fraudulent ….*

JX8, 1968 Umbrella Policy at NGINS001109882-883; JX9, 1969-1972 Umbrella Policies at TRAV002733-734; *see also id.* at TRAV002761 & TRAV002764 ("renewal certificates" for the policy years January 1, 1970 to January 1, 1971 and January 1, 1971 to January 1, 1972).

**Response 15: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

16.    Declarations Item 5 in the 1968-1969 Umbrella Policy entitled "Underlying Insurance Policies" lists policies that were in effect during the same policy period as the 1968-1969 Umbrella Policy. *See* JX8, 1968 Umbrella Policy at NGINS001109877.

**Response 16: These facts concern Travelers and do not relate to Century.
Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

17.    Declarations Item 2 of Policy No. T-CUP-932209-69 states that the policy period
for this Umbrella Policy was "January 1, 1969 to UNTIL CANCELLED."  JX9, 1969-1972
Umbrella Policies at TRAV002728.

**Response 17: These facts concern Travelers and do not relate to Century.
Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

18.    In a "renewal certificate" that became effective on January 1, 1970, the policy
period of Policy No. T-CUP-932209-69 was amended to January 1, 1970 to January 1, 1971 and
the policy number was changed to Policy No. T-CUP-932209-70. JX9, 1969-1972 Umbrella at
TRAV002764.

**Response 18: These facts concern Travelers and do not relate to Century.
Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

19.    In a "renewal certificate" that became effective on January 1, 1971, the policy
period of Policy No. T-CUP-932209-69 was amended to January 1, 1971 to January 1, 1972 and
the policy number was changed to Policy No. T-CUP-932209-71.  JX9, 1969-1972 Umbrella at
TRAV002761.

**Response 19: These facts concern Travelers and do not relate to Century.
Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

20.    Declarations Item 5 of Policy No. T-CUP-932209-69 entitled "Underlying
Insurance Policies" lists policies that were in effect during the period from January 1, 1969 to
January 1, 1970—i.e., the same policy period as the Umbrella Policy identified by Policy No. T-
CUP-932209-69. JX9, 1969-1972 Umbrella Policies at TRAV002728.  This Declarations Item 5

was never amended to list "Underlying Insurance Policies" corresponding to the one-year policy periods of the Umbrella Policy renewal years, January 1, 1970 to January 1, 1971, and January 1, 1971 to January 1, 1972.  *See* JX9.

**Response 20:  These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

21.    The Umbrella Policies define "property damage" as "injury to or destruction of tangible property."  JX8, 1968 Umbrella Policy at NGINS001109884; JX9, 1969-1972 Umbrella Policies at TRAV002735.

**Response 21: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

22.    The Umbrella Policies define "bodily injury" as "bodily injury, mental anguish, sickness or disease sustained by any person, other than malpractice injury."  JX8, 1968 Umbrella Policy at NGINS001109884; JX9, 1969 Umbrella Policy at TRAV002735.

**Response 22: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

23.    Each Umbrella Policy states that the "policy applies only to (1) bodily injury and property damage anywhere which takes place during the policy period and (2) with respect to personal injury, malpractice injury, and advertising injury, acts or omissions anywhere which take place during the policy period."  JX8, 1968 Umbrella Policy at NGINS001109886; JX9, 1969-1972 Umbrella Policies at TRAV002737.

**Response 23: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

24.    The Umbrella Policies contain an exclusion, which states: "This policy does not apply: … (c) to bodily injury, injury arising out of discrimination, advertising injury or property damage which was either expected or intended from the standpoint of the insured."  JX8, 1968 Umbrella Policy at NGINS001109878; JX9, 1969-1972 Umbrella Policies at TRAV002729.

**Response 24: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

25.    The 1968-1972 Umbrella Policies do not include or incorporate any pollution exclusion.  JX8-9; *see generally* 1971 N.Y. Sess. Laws 1968 (McKinney) ("statutory" pollution exclusion took effect on September 1, 1971).

**Response  25: Undisputed that the Travelers umbrella policies in effect between January 1, 1968 and January 1, 1972 do not contain any pollution exclusion.**

## IV.    The Underlying *Romano* Lawsuit

26.    On September 13, 2016, 15 plaintiffs filed a complaint ("Original Complaint") in the lawsuit against NG captioned *Romano, et al. v. Northrop Grumman Corp., et al.*, Index No. 607036/2016. *See* JX10, Orig. Compl., at 17.

**Response 26: Undisputed.**

27.    The named plaintiffs sued NG in their individual capacity and on behalf of a putative class consisting of "thousands" of "individuals who are and/or were residents and/or property owners of/in the Bethpage area." *Id.* at 1-2 & 49 ¶¶ 1, 209.

**Response 27: Undisputed that the *Romano* Original Complaint contains the language cited by Grumman above, although Century takes no position with respect to the legal conclusions set forth therein.**

28.    On November 4, 2016, plaintiffs filed an Amended Class Action Complaint ("First Amended Complaint" or "FAC") in the *Romano* lawsuit, which added no new claims against NG,

but which added the Town of Oyster Bay as a defendant.  JX11; *see* Ex. 8, Travelers Dec. 21, 2016 Letter at TRAV_NG2_00000178 ("[W]e have reviewed the Amended <u>Romano</u> Lawsuit and do not see any changes in the substantive allegations or claims asserted against Northrop Grumman.").

**Response 28: Undisputed.**

29.    On May 4, 2018, plaintiffs filed a Second Amended Class Action Complaint ("SAC") in the *Romano* lawsuit.  JX12.  The SAC named a total of 26 plaintiffs—14 of the 15 original plaintiffs, and 12 new plaintiffs.  *Id.* at 1-2.

**Response 29: Undisputed.**

30.    In the SAC, plaintiffs asserted bodily injury and property damage claims against NG in their individual capacity.  *Id.* at 1 (caption) and ¶¶ 123-77.  Two plaintiffs also asserted claims on behalf of the estates of decedents.  *Id*. at 1 (caption).  In addition, some purported to act as representatives of the class described in Paragraph 27, above.  *See id.* at 1-2 & ¶¶ 1, 123-51.

**Response 30: Undisputed that the *Romano* plaintiffs assert bodily injury and property damage claims, and that Grumman accurately describes the cited paragraphs in the SAC, although Century takes no position with respect to the legal conclusions set forth therein.**

31.    The SAC asserted the same causes of action and contained similar allegations to those in the Original Complaint and FAC. *Compare* JX12, SAC *with* JX10, Orig. Compl. *and* JX11, FAC; *see also* Ex. 9, Travelers May 24, 2018 Letter at 2 ("We have reviewed the Second Amended Complaint and do not see any changes in the substantive allegations or claims asserted against Northrop Grumman …."); Ex. 10, Century June 8, 2018 Letter at 2 ("It appears that Grumman's alleged liability in the Second Amended Complaint is the same as in the original and amended complaints ….").

**Response 31: Undisputed that the SAC asserts the same causes of action as the Original Complaint and the FAC. Moreover, Century does not dispute, for purposes of this motion, that the allegations as against Grumman in the SAC are similar to those in the Original Complaint and the FAC.**

32.     On June 9, 2021, plaintiffs filed a Third Amended Class Action Complaint ("TAC") in the *Romano* lawsuit. JX13. The TAC names a total of 31 plaintiffs—23 of the 26 plaintiffs in the SAC and 8 new plaintiffs. Unlike the FAC and the SAC, the TAC did not name the Town of Oyster Bay as a defendant. *See id.* at 1 (caption).

**Response 32: Undisputed.**

33.     All plaintiffs named in the TAC assert claims against NG in their individual capacity and some purport to act as class representatives. JX13, TAC at 1 (caption) and ¶¶ 244-412 (identifying plaintiffs suing in their individual capacity and as "class representatives") and ¶¶ 413-95 (identifying plaintiffs "with individual claims" only). Two plaintiffs assert claims on behalf of the estates of decedents. *Id.* at 1 (caption). All named plaintiffs assert bodily injury claims and some, but not all, also assert property damage claims. *See id.* ¶¶ 244-412.

**Response 33: Undisputed that Grumman accurately describes the cited paragraphs in the TAC, although Century takes no position with respect to the legal conclusions set forth therein.**

34.     The TAC asserts the same causes of action and contains similar allegations to those in the Original Complaint, FAC, and TAC. *Compare* JX13, TAC *with* JX10, Orig. Compl. *and* JX11, FAC *and* JX12, SAC; *see also* Ex. 15, Century Aug. 9, 2021 Letter, at 1 ("It appears that

Grumman's alleged liability in the Third Amended Complaint is the same as in the original and amended complaints ….").[3]

> **Response 34:  Undisputed that the TAC asserts the same causes of action as the Original Complaint, the FAC, and SAC.  Moreover, Century does not dispute, for purposes of this motion, that the allegations as against Grumman in the TAC are similar to those in the Original Complaint, the FAC, and the SAC.**

### A.    The *Romano* Complaint Allegations

35.    The *Romano* plaintiffs assert causes of action against NG for negligence, strict liability, nuisance, and trespass, and seek damages for each cause of action.  JX13, TAC ¶¶ 17, 496-554 and Prayer for Relief ¶¶ a-d; *see also* JX 10, Orig. Compl. ¶¶ 7, 147-205 and Prayer for Relief ¶¶ A-D; JX11, FAC ¶¶ 7, 149-209 and Prayer for Relief ¶¶ A-D; JX12, SAC ¶¶ 7, 192-252 and Prayer for Relief ¶¶ A-D.

> **Response 35: Undisputed.**

36.    The *Romano* plaintiffs allege exposure to many different chemicals that they contend NG's predecessors spilled, leaked, or otherwise released during the multiple decades in which NG's predecessors engaged in manufacturing operations at the Bethpage facility, including: (1) volatile organic compounds ("VOCs"); (2) semi-volatile organic compounds ("SVOCs"); (3) trichloroethylene ("TCE") and TCE breakdown products; (4) 2-butanone, which is also known as methyl ethyl ketone ("MEK"); (5) tetrachloroethylene, also known as perchloroethylene ("PCE") or ("PERC"); (6) 1,1,1-trichloroethane ("1,1,1-TCA"); (7) 2-hexanone, also known as methyl butyl ketone ("MBK"); (8) carbon tetrachloride; (9) polychlorinated biphenyls ("PCBs");

---

[3]    NG hereinafter cites first to the TAC and then to similar or identical allegations in the Original Complaint, FAC, and SAC.

(10) cadmium; (11) chromium; (12) hexavalent chromium; (13) benzene; (14) dioxin/furans; (15) radium; (16) radon; (17) 1,4-dioxane; and (18) perfluoralkyl and polyfluoroalkyl substances ("PFAS").  JX13, TAC ¶¶ 7, 8, 9, 27, 28, 29, 34, 38, 41, 42, 46, 51, 56, 60, 61, 65-66, 71-73, 74, 78, 115, 119; *see also* JX10, Orig. Compl. ¶¶ 3, 4, 16, 17, 22, 23, 27, 30, 34, 41, 42, 85; JX11, FAC ¶¶ 3, 4, 9, 13, 14, 19, 20, 24, 27, 31, 38, 39, 85; JX12, SAC ¶¶ 3, 4, 9, 13, 14, 19, 20, 24, 27, 31, 38, 39, 85.

**Response 36: Undisputed that the *Romano* Complaint alleges that some or all of the *Romano* plaintiffs were allegedly exposed to each of the substances listed.  Disputed to the extent that Grumman's assertions that such exposure was allegedly caused by "NG's predecessors" is intended to suggest that such exposure was caused by an entity unaffiliated with Grumman—which is not supported by the cited paragraphs.  *See, e.g.,* JX13 ¶22 ("NGC and/or NGSC or their predecessors owned and/or operated the Site at the time of the disposal and/or release of the hazardous and toxic contaminants at the Site"); JX13 ¶25 ("Each of the Defendants are responsible, negligently, intentionally and/or in some actionable matter the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs…").**

37.    The *Romano* plaintiffs allege that the chemicals they expressly identify as having harmed them and their property are "by no means closed and [are] only meant to highlight some of the Contaminants [allegedly] released at the Site by Defendants."  JX13, TAC ¶ 26.

**Response 37: Undisputed that Grumman accurately describes the cited paragraph in the TAC.**

38.    The *Romano* plaintiffs allege, among other things, that NG's predecessors were negligent, including "in the processing, distribution, transporting, storing, handling and/or

disposing of toxic and/or hazardous substances at the Site," and that as a result of such negligence, "Contaminants were discharged into the soil, air and groundwater at the Site and the surrounding area, including Plaintiff's residence." JX13, TAC ¶¶ 246, 255, 262, 269, 278, 287, 296, 305, 315, 326, 335, 343, 350, 359, 367, 383, 391, 399, 408, 414, 423, 431, 438, 446, 453, 462, 469, 477, 484, 490; *see also* JX10, Orig. Compl. ¶¶ 125-34 (alleging bodily injury and property damage "[a]s a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances"); JX11, FAC ¶¶ 125-34 (same); JX12, SAC ¶¶ 127, 130, 133, 136, 139, 142, 148, 151, 153, 156, 159, 162, 165, 168, 171, 174, 177 (same).

**Response 38: Undisputed that the quoted language appears in the *Romano* complaints. Disputed to the extent that Grumman's assertion that its "predecessors" are alleged by the *Romano* plaintiffs to be negligent is intended to suggest that such exposure was caused by an entity unaffiliated with Grumman—which is not supported by the cited paragraphs.**

39.    As and for their negligence cause of action, the *Romano* plaintiffs allege that "Defendants … owed Plaintiffs a cognizable duty to exercise reasonable care in the storage, transportation, and disposal of toxic chemicals including but not limited to the Contaminants, and in the maintenance of their tools and equipment used for such acts" and "breached their duty of reasonable care which a reasonably prudent person should use under the circumstances by causing and/or allowing and/or failing to prevent the releases of Contaminants into the air, soil and groundwater in and around the Site and the surrounding neighborhoods, where they caused toxic exposures to Plaintiffs and the contamination of their homes." JX13, TAC ¶¶ 498-99; *see also* JX10, Orig. Compl. ¶¶ 149-50 (similar to TAC ¶¶ 498-99); JX11, FAC ¶¶ 151, 153 (similar to TAC ¶¶ 498-99); JX12, SAC ¶¶ 194, 196 (similar to TAC ¶¶ 498-99); JX13, TAC ¶¶ 507-08

(alleging that "Defendants had a duty to the Plaintiffs and the putative Class to ensure that their refining and storage facilities were safe and sufficiently secure as to prevent the releases of Contaminants into the environment" and that the breach of that duty caused "the injuries suffered by the Plaintiffs to their health and well-being and to their properties and the adjacent properties"); JX10, Orig. Compl. ¶¶ 161-163 (similar to TAC ¶¶ 507-508); JX11, FAC ¶¶ 161-163 (similar to TAC ¶¶ 507-508); JX12, SAC ¶¶ 207-209 (similar to TAC ¶¶ 507-508).

**Response 39: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

40.    The *Romano* plaintiffs allege that "Defendants' negligent … actions … caused an uncontrolled quantity of Contaminants to be spilled, disposed of, or otherwise released into the air, ground, soil, groundwater, and aquifer at the site."  JX13, TAC ¶ 543; *see also* JX10, Orig. Compl. ¶ 195 (alleging that "Defendants' negligent . . . actions . . . caused an uncontrolled quantity of Contaminants to be spilled disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site"); JX11, FAC ¶ 199 (same); JX12, SAC ¶ 242 (same).

**Response 40: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

41.    The *Romano* plaintiffs allege other negligent spills, leaks, or releases of purportedly toxic contaminants.  *E.g.,* JX13, TAC ¶ 529 (alleging that the defendants "negligently" created "a dangerous condition on their property by allowing massive quantities [sic] toxic Contaminants to be spilled"); *see also* JX10, Orig. Compl. ¶ 182 (same); JX11, FAC ¶ 186 (same); JX12, SAC ¶

229 (same); JX13, TAC ¶ 116 ("Until 1982, the drum storage area did not have a cover or spill containment.").

**Response 41: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

42.    The *Romano* plaintiffs allege that, during "its decades-long operations at the Site, Grumman released toxic substances, including but not limited to, TCE and hexavalent chromium, into the air, through its stacks."  JX13, TAC ¶ 96.  Purportedly, "[t]hese and other hazardous substances were also released directly into the surrounding environment in the form of fugitive air emissions from the manufacturing plants."  *Id.* ¶ 97.  According to plaintiffs, "Grumman did not take adequate pollution control measures to prevent and mitigate these harmful air emissions" and "[a]s a direct result of Grumman's actions and inactions which created severe air pollution in the community, many Bethpage area residents living in the vicinity of the Site have been exposed to toxic substances, causing and/or contributing to their injuries."  *Id.* ¶¶ 98-99; *see also id.* ¶ 12 ("Toxic air emissions from Grumman's industrial operations polluted the air in the surrounding area for decades."); *id.* ¶ 232 (alleging exposure from "inhaling Site-related air emissions").

**Response 42: Undisputed that the quoted language appears in the *Romano* TAC, although Century takes no position with respect to the legal conclusions set forth therein.**

43.    The *Romano* plaintiffs do not define "fugitive air emissions," but that term often refers to irregular and unintentional emissions from equipment and sealed surfaces due to leaks or other unforeseen mishaps.  *E.g.,* ScienceDirect, https://www.sciencedirect.com/topics/engineering/fugitive-emission (last accessed Nov. 12, 2021)

("Fugitive emissions are unintentional leaks from sealed surfaces, such as packings or gaskets ...."); Envirotech Online, https://www.envirotech-online.com/news/health-and-safety/10/breaking-news/what-are-fugitive-emissions/36064 (last accessed Nov. 12, 2021) ("Fugitive emissions are accidental emissions of vapours or gases from pressurised apparatus, either due to faulty equipment, leakage or other unforeseen mishaps.").

**Response 43: Undisputed that the TAC does not define "fugitive air emissions." Undisputed that Paragraph 43 accurately quotes the Envirotech Online website. Disputed in that the purported quoted language attributed to the Science Direct website does not appear on the cited webpage. Further disputed to the extent that Paragraph 43 asserts that the supplied definition of "fugitive emissions" is "often" used, as Grumman's citation to two websites—neither of which is a dictionary or similar source—is insufficient to establish that assertion.**

44.    The plaintiffs alleged exposure to air contamination in the Original Complaint, FAC, and SAC.  *E.g.,* JX 10, Orig. Compl. ¶107 ("Each and every one of the Plaintiffs named herein have been and continue to be exposed to these toxic contaminants through dust dispersing through the air into Plaintiffs [sic] properties and surrounding communities."); JX11, FAC ¶¶ 107 (same); JX12, SAC ¶ 107 (same); JX 10, Orig. Compl. ¶ 87 ("The contaminants and hazardous substances from the property have been released and dispersed or otherwise discharged via groundwater, air and other manners onto the Plaintiffs [sic] properties and persons."); JX 11, FAC ¶ 87 (same); JX 12, SAC ¶ 87 (same).

**Response 44:  Undisputed that the quoted language appears in the *Romano* complaints.  Disputed to the extent that Paragraph 44 asserts a conclusion as to the legal**

17

**import of the quoted language, rather than a "material fact," to which no response is required.**

45.    The *Romano* plaintiffs allege for their strict liability cause of action that "Defendants' … failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise handling toxic substances, including the Contaminants, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances" and that "Defendants allowed or caused these ultra-hazardous substances and abnormally dangerous substances to be released into the air, land and groundwater, and in doing so, failed to warn Plaintiffs of the dangerous condition that was caused thereby." JX13, TAC ¶¶ 516-17; *see also* JX10, Orig. Compl. ¶¶ 171-72 (similar); JX11, FAC ¶¶ 174-75 (same as Orig. Compl. ¶¶ 171-72); JX12, SAC ¶¶ 217-218 (same as Orig. Compl. ¶¶ 171-72, except also including an allegation regarding "the Putative Class").

**Response 45: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

46.    The *Romano* plaintiffs allege that they "were personally exposed and continue to be exposed to hazardous and toxic substances, contaminants, and pollutants from the above-mentioned sites via ingestion, inhalation, and/or dermal contact during normal day activities such as walking in the neighborhood, gardening and doing yard work, playing in their yards, as well as living in their homes" and also "while engaging in various activities in the neighborhood, attending local schools and businesses, using water from the local providers, and inhaling Site-related air emissions." JX13, TAC ¶¶ 231-32; *see also* JX10, Orig. Compl. ¶ 136 (same as TAC ¶ 231, except

also including an allegation of exposure while "playing at the park"); JX11, FAC ¶ 136 (same as Orig. Compl. ¶ 136); JX12, SAC ¶ 179 (same as Orig. Compl. ¶ 136).

**Response 46: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

47.    As a result of alleged exposure to toxic chemical substances, the plaintiffs assert that they have suffered "permanent and continuing harm to Plaintiffs' persons." JX13, TAC ¶ 226; *see also* JX10, Orig. Compl. ¶ 100 (same); JX11, FAC ¶ 100 (same); JX12, SAC ¶ 100 (same).

**Response 47: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

48.    The *Romano* plaintiffs further allege that, as a result of exposures to chemicals purportedly released due to NG's or its predecessor's negligence and other conduct, they have suffered "and continue[] to suffer severe physical injury, pain and suffering," and numerous plaintiffs also allege that they have incurred "and continue[] to incur property damage due to the contamination of the[ir] property and the surrounding area." JX13, TAC ¶¶ 250-251, 260, 266, 274-75, 283-84, 292-93, 301-02, 310-11, 322-23, 330-31, 340, 348, 356, 363, 371-72, 379, 388-89, 396, 404-05, 412, 419, 428, 435, 442, 450, 459, 466, 474, 481, 488, 494-95; *see also* JX10, Orig. Compl. ¶¶ 125-34 (alleging that each plaintiff "has suffered and continues to suffer severe physical injury, pain and suffering" and "has developed significant debilitating personal injuries, as well as damage to [his, her, or their] personal property"); JX11, FAC ¶¶ 125-34 (same); JX12, SAC ¶¶ 127, 130, 133, 136, 139, 142, 148, 151, 153, 156, 162, 165, 168, 171, 174, 177 (same, except that some plaintiffs do not include the allegation of "damage to personal property").

**Response 48: Undisputed that the quoted language appears in the *Romano* complaints, although Century takes no position with respect to the legal conclusions set forth therein.**

49.    The diseases or other bodily injuries of which one or more plaintiffs allege they suffer include, but are not limited to, brain cancer, breast cancer, non-Hodgkin's lymphoma, thyroid abnormalities, kidney abnormalities, and bladder abnormalities.  JX13, TAC ¶¶ 248, 249, 257, 265, 272, 273, 281, 282, 290, 291, 299; *see also* JX10, Orig. Compl. ¶¶ 125, 126, 127, 128, 129, 130, 131, 132, 133, 134; JX11, FAC ¶¶ 125, 126, 127, 128, 129, 130, 131, 132, 133, 134; JX12, SAC ¶¶ 127, 130, 133, 136, 139, 142, 145, 148, 151, 153, 156, 159, 162, 165, 168, 171, 174, 177.

**Response 49: Undisputed.**

50.    In addition to bodily injury, many *Romano* plaintiffs allege that their real and personal property has been damaged.  *E.g.,* JX 13, TAC ¶ 14 ("Plaintiffs who are current property owners have and continue to sustain property damage caused by the contamination, including diminution of value and stigma damages."); *see also, e.g.,* JX10, Orig. Compl. ¶ 112 ("Defendants, through their negligent and/or reckless acts, have caused continuing damage to Plaintiffs' and Class Members' persons, as well as real and personal properties, and have caused continuous injury to the land values of those Plaintiffs and the Class holding real property due to devaluation resulting from negative publicity that has unfairly injured their competitive status in home equity and re-sale value in relation to real property owners similarly situated in areas outside the areas affected by the plume and contamination."); JX11, FAC ¶ 112 (same as Orig. Compl. ¶ 112); JX12, SAC ¶ 112 (same as Orig. Compl. ¶ 112).

**Response 50: Undisputed.**

**B.     The Timing Of The *Romano* Plaintiffs' Alleged Exposures, Bodily Injuries, And Property Damage**

51.     The *Romano* plaintiffs allege that "Grumman's operations at the Bethpage Facility began" in the 1930s and continued until 1996.  JX13, TAC ¶ 92; *see also* JX10, Orig. Compl. ¶¶ 41, 44; JX11, FAC ¶¶ 38, 41; JX12, SAC ¶¶ 38, 41.

**Response 51: Undisputed.**

52.     According to the plaintiffs, "[t]hroughout its operations at the Site, Grumman used, stored and disposed of various hazardous wastes and solvents from industrial processes directly into the environment."  JX13, TAC ¶ 94; *see also* JX10, Orig. Compl. ¶ 42 (similar to TAC ¶ 94); JX11, FAC ¶ 39 (same as Orig. Compl. ¶ 42); JX12, SAC ¶ 39 (same as Orig. Compl. ¶ 42).

**Response 52: Undisputed.**

53.     Plaintiffs allege that their persons and their properties have been "expos[ed] to toxic air emissions, unsafe drinking water, soil vapor intrusion, and other pathways of exposure through soil, air and groundwater," and, as a result of such exposures, they have suffered bodily injuries and property damage.  JX13, TAC ¶¶ 224-28; *see also* JX 13, TAC ¶ 555.a-555.b (alleging classes of residents and property owners, including "all current and former residents of the Bethpage area," whose persons and property allegedly were exposed to "Contaminants" in "the air, dust, soil, groundwater, drinking water, soil vapor or any other" pathway); *see also supra* ¶ 46 (discussing other exposure allegations); JX10, Orig. Compl. ¶ 107-08 (alleging exposure "through dust dispersing through the air into Plaintiffs properties and surrounding communities; through migration of the contaminants into the water table and groundwater which percolates up through the soil, into the soil and the environment and ultimately into the Plaintiffs' homes through the vapor intrusion pathway" and exposure "through contact with the air and soil at their homes");

JX11, FAC ¶ 107-08 (same Orig. Compl. ¶¶ 107-08); JX12, SAC ¶ 107-08 (same Orig. Compl. ¶¶ 107-08).

> **Response 53: Undisputed.**

54.    The plaintiffs broadly allege that their bodily exposures took place over a period of years at least during the periods when they resided in or around Bethpage, but plaintiffs do not allege that they were exposed only and exclusively during their periods of residency.  *See* JX13, TAC ¶¶ 231-495 (alleging exposure at homes and while engaging in activities in the Bethpage area, and also alleging periods of residence in that area); *see also* JX10, Orig. Compl. ¶ 1 ("Plaintiffs and the Class, at the time of sustaining the injuries complained of herein, have been the owners and/or occupants of certain real property consisting of various lands and various types of residences located in Nassau County, New York that are located near the real property and facilities … formerly known as the Grumman Aerospace-Bethpage Facility Site."); JX11, FAC ¶ 1 (same); JX12, SAC ¶ 1 (same); *supra* ¶ 46 (discussing plaintiffs' allegations of exposure in the Bethpage area).

> **Response 54: Disputed in part.  Undisputed that the referenced language appears in the *Romano* complaints.  Undisputed that, as Grumman acknowledges, the *Romano* Complaint alleges that the plaintiffs, inclusive of the putative class plaintiffs, suffered bodily injury and property damage dating back to at least the late 1930s and running through at least 2016.  *See* NG Br. at 1.  Disputed to the extent that Paragraph 54 suggests that the assertions therein reflect the allegations of every named plaintiff and putative class plaintiff, as that assertion is unsupported by the cited allegations.**

55.    Based on the allegations of residence in the Bethpage area that are included in the *Romano* Complaint, the periods of alleged bodily exposure of the plaintiffs date back to at least

1956 (e.g., Catherine Lewonka) and potentially earlier (e.g., each plaintiff that did not allege a precise time period or dates of residence, and the class allegations referring to "all current and former residents of the Bethpage area"); the periods range from no fewer than 7 years (e.g., Dana Blickensderfer) to at least 51 years (e.g., Donald Lagomarsino); and, the periods potentially include the entire time period during which the Century Primary Policies and the Travelers Umbrella Policies were in effect. *See* JX13, TAC ¶¶ 244, 252, 254, 261, 267, 276, 285, 294, 303, 312, 314, 324, 332-33, 342, 349, 357, 364, 365, 373, 380, 381, 390, 397, 406, 407, 413, 420, 421, 430, 437, 444, 452, 461, 468, 476, 483, 489, 555; *see also* JX10, Orig. Compl. ¶¶ 125-34 (allegations regarding residence in the Bethpage area); JX11, FAC ¶¶ 125-34 (same); JX12, SAC ¶¶ 125, 128, 131, 134, 137, 140, 143, 146, 149, 152, 154, 157, 160, 163, 166, 169, 172, 175 (same); *infra* ¶ 65 (admission by Century that the allegations in *Romano* leave open the possibility that plaintiffs' bodily exposures and injury happened during the period of each Century Primary Policy); *infra* ¶ 67 (admission by Travelers that the allegations in *Romano* leave open the possibility that plaintiffs' bodily exposures and injury happened during the period of each Travelers Umbrella Policy).

**Response 55: Disputed in part.  Undisputed that the referenced language appears in the *Romano* complaints.  Undisputed that, as Grumman acknowledges, the *Romano* Complaint alleges that the plaintiffs, inclusive of the putative class plaintiffs, suffered bodily injury and property damage dating back to at least the late 1930s and running through at least 2016.  *See* NG Br. at 1.  Disputed to the extent that Paragraph 55 suggests that the assertions therein reflect the allegations of every named plaintiff and putative class plaintiff, as that assertion is unsupported by the cited allegations.**

56.     The *Romano* plaintiffs' property damage claims do not allege the specific time periods during which plaintiffs' properties were exposed to and/or damaged by purportedly toxic chemicals, and instead, these claims generally allege that such exposures and damage potentially began as early as the beginning of Grumman's operations at the Bethpage facility and continued thereafter.  For example, plaintiffs allege that:

1.     Chemicals were released "throughout" the period of Grumman's operations at the Bethpage Facility.  *Supra* ¶¶ 51-52 (alleging releases "throughout" Grumman's operations at the facility).

2.     Such chemicals "repeatedly" migrated to the plaintiffs' properties.  *Supra* ¶ 53 (identifying pathways of alleged exposure); JX13, TAC ¶ 228 ("Defendants, through their negligent and/or reckless acts, have repeatedly and unreasonably invaded each and every Plaintiff's right to possession and undisturbed occupancy of their residences and have repeatedly trespassed thereon by causing migration of toxic contaminants onto Plaintiffs' real properties and harm to their persons."); *see also* JX10, Orig. Compl. ¶ 111 (similar to TAC ¶ 228); JX11, FAC ¶ 111 (same as Orig. Compl. ¶ 111); JX12, SAC ¶ 111 (same as Orig. Compl. ¶ 111).

3.     There has been a "continuous trespass" onto plaintiffs' properties.  JX13, TAC ¶¶ 513, 520, 554; *see also* JX10, Orig. Compl. ¶¶ 168, 175, 191 (same); JX 11, FAC ¶¶ 171, 178, 195 (same); JX 12, SAC ¶¶ 214, 221, 238 (same); JX10, Orig. Compl. ¶113 (alleging "sudden, repeated and continual invasions of [plaintiffs'] rights of possession and to undisturbed occupancy of their residences and living areas"); JX 11, FAC ¶ 113 (same as Orig. Compl. ¶ 113); JX12, SAC ¶113 (same as Orig. Compl. ¶113).

**Response 56: Disputed in part.  Undisputed that the referenced language appears in the *Romano* complaints.  Undisputed that, as Grumman acknowledges, the**

*Romano* Complaint alleges that the plaintiffs, inclusive of the putative class plaintiffs, suffered bodily injury and property damage dating back to at least the late 1930s and running through at least 2016. *See* NG Br. at 1.    Disputed to the extent that Paragraph 56 suggests that the assertions therein reflect the allegations of every named plaintiff and putative class plaintiff, as that assertion is unsupported by the cited allegations. Disputed to the extent that Paragraph 56 asserts a conclusion as to the legal import of the quoted language, rather than a "material fact," to which no response is required. Century also objects that Paragraph 56 violates Local Rule 56.1(a), which required Grumman to set forth a "short and concise statement" of "material facts" in "numbered paragraph[s]."

## V.    Century's Denial Of Coverage For *Romano*, Its Subsequent Admission That *Romano* Triggers Its Defense Duty Under The Century Primary Policies, And Its Offer To Provide NG With Only A Fractional Pro Rated Payment Of Defense Costs.

57.    On October 27, 2016, Century denied coverage for the *Romano* lawsuit on the ground that "notice of the alleged 'accident' or 'occurrence' leading to the *Romano Action* was not timely made as required by the Century policies."  Ex. 6 at CEN_NG2_00000370.

**Response 57: Undisputed. Century further disclaimed to the extent that the *Romano* Lawsuit does not contain any allegation that property damage or bodily injury occurred during the alleged Century policy periods or to the extent that any alleged property damage or bodily injury arose from Grumman's intentional disposal practices. *See id.***

58.    On September 26, 2019, this Court denied Century's summary judgement motion seeking a declaration that NG had failed to give timely notice of occurrence and accident and thus was not entitled to coverage for *Romano*, holding that triable issues of fact concerning the relevant set of occurrences and accidents precluded summary judgment on the notice issue.  ECF 275.

**Response 58: Disputed.  This Court did not hold that triable issues of fact concerning the relevant set of occurrences and accidents precluded summary judgment on the notice issue, but rather stated that it was "ruling only that the applicability of the late notice defense cannot be determined on the current summary judgment record."  ECF No. 315, at 16.**

59.     With respect to the *Romano* plaintiffs' bodily injury claims, the Court held, among other things, that "[w]ithout any grouping language, the *Romano* plaintiffs' exposures cannot be grouped into a single 'occurrence' under the Century Primary Policies" and that "[a] more developed evidentiary record is needed to resolve whether each *Romano* plaintiff's exposure to the contaminations is a unique 'occurrence,' or whether groups of plaintiffs were exposed at nearly the same time and in the same place, therefore warranting some aggregation." *Id.* at 12-13.

**Response 59: Disputed as incomplete and out of context.**

60.     With respect to the *Romano* property damage claims, the Court held, in pertinent part, that "the relevant set of 'accidents' cannot be identified on the current record."  *Id.* at 14-15.

**Response 60: Disputed as incomplete and out of context.**

61.     In an Opinion and Order dated March 26, 2020, the Court denied Century's motion seeking reconsideration of the Court's denial of Century's summary judgment motion on late notice of "occurrence" and "accident."  ECF 315 at 14-17.

**Response 61: Undisputed.**

62.     In a letter dated June 2, 2020, Century stated that "given the District Court's recent ruling that the applicability of Century's late notice defense could not be determined based on the current record before the Court (which the Court stated was without prejudice to Century continuing to assert late notice or any other defense) Century will agree to participate in

Grumman's defense of the Underlying Actions under the Century Primary Policies in effect from January 1, 1955 to January 1, 1962." Ex. 11, June 2, 2020 Letter at 2. Century stated that the Century Primary Policies were "potentially applicable" to the *Romano* suit. *Id.*

**Response 62: Disputed as incomplete and misleading. In its June 2, 2020 letter, Century set forth its coverage position in detail and offered to participate in Grumman's defense of the *Romano* Lawsuit at a pro rata share of Grumman's reasonable and necessary attorney fees and expenses under the Century Primary Policies in effect from January 1, 1955 to January 1, 1962 subject to a complete reservation of rights, including the right to deny coverage and/or withdraw from the defense on the grounds that Grumman failed to provide timely notice to Century as required by the Century Primary Policies, to the extent the alleged property damage or bodily injury at issue did not occur during the Century policy period, and to the extent that any alleged property damage or bodily injury arose from Grumman's intentional disposal practices. *See id.***

63.    Century refused to provide NG with a complete defense against *Romano*. *Id.* at 2-

**Response 63: Disputed as incomplete and misleading. *See* Response 62.**

64.    Instead, Century stated that it "will contribute a pro rata share based on the number of years of the Century primary policies compared with the number of years that the alleged property damage or bodily injury at issue in the Underlying Actions could have occurred." *Id.* at 2.

**Response 64: Disputed as incomplete and misleading. *See* Response 62. Undisputed that Century's June 2, 2020 letter contains the quoted language.**

65.    Century stated that the "the alleged property damage or bodily injury" at issue in *Romano* "could have occurred" throughout or at any time during a 78 year period, from January

1938 (when "Grumman's operations at the Bethpage facility began") until "September 2016 (when Grumman was served with the *Romano* lawsuit)." *Id.* Century characterized this period as "the total potential exposure period." *See id.*

**Response 65: Disputed as incomplete and misleading. *See* Response 62. Undisputed that Century's June 2, 2020 letter contains the quoted language.**

66.     Century further stated that "the period of potentially applicable Century primary policies" is 7 years, from January 1, 1955 to January 1, 1962. *Id.* Because, according to Century, that period is "9% of the total potential exposure period," Century stated that it "will therefore contribute its pro rata share of 9% of Grumman's reasonable and necessary attorney fees and expenses incurred in the defense of the Underlying Actions subsequent to the tender of the Romano lawsuit to Century on September 28, 2016." Ex. 11, June 2, 2020 Letter at 2-3.

**Response 66: Disputed as incomplete and misleading. *See* Response 62. Undisputed that Century's June 2, 2020 letter contains the quoted language.**

67.     Century has reiterated its offer to contribute a purported fractional "pro rata share" of NG's defense costs incurred in *Romano* several times, including on August 11, 2020, February 2, 2021, and Aug. 9, 2021. Ex. 12, Aug. 11, 2020 Letter at 1-2; Ex. 13, Feb. 2, 2021 Letter at 2; Ex. 15, Aug. 9, 2021 Letter at 2.

**Response 67: Disputed as incomplete and misleading.  In its August 11, 2020, February 2, 2021, and August 9, 2021 letters Century set forth its coverage position in detail and offered to participate in Grumman's defense of the *Romano* Lawsuit at a pro rata share of Grumman's defense under the Century Primary Policies in effect from January 1, 1955 to January 1, 1962 subject to a complete reservation of rights, including the right to deny coverage and/or withdraw from the defense on the grounds that**

**Grumman failed to provide timely notice to Century as required by the Century Primary**

**Policies, to the extent the alleged property damage or bodily injury at issue did not occur**

**during the Century policy period, and to the extent that any alleged property damage or**

**bodily injury arose from Grumman's intentional disposal practices.** *See id.*

**VI.    Travelers' Response To The *Romano* Lawsuit**

**A.    Travelers Acknowledged That *Romano* Triggers Its Defense Duty Under Policies In Effect During The 1968-1972 Umbrella Policy Period But Offered To Pay Only A Fractional Pro Rated Share Of Defense Costs.**

68.    On October 29, 2016, Travelers sent a letter to NG in which it acknowledged that

the primary policies in effect from January 1, 1968 to January 1, 1972, are "potentially applicable"

to the *Romano* lawsuit.    Ex. 7, Travelers' Oct. 29, 2016 Letter, at TRAV_NG2_00000098,

00000107.    Travelers explained that "based on [its] review of the <u>Romano</u> lawsuit, the language

of Northrop Grumman's policies, the District Court's prior rulings, as well as the applicable law,

Travelers will agree to participate in Northrop Grumman's defense of the <u>Romano</u> Lawsuit under

the primary-level general liability policies in effect from January 1, 1968 to January 1, 1972,

subject to a complete reservation of all rights and defenses to coverage."    *Id.* at

TRAV_NG2_00000100.

**Response 68: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

69.    Notwithstanding its statement that the 1968-1972 primary policies are "potentially

applicable," Travelers offered to reimburse NG for only 4.65% of its defense costs.    *Id.* at

TRAV_NG2_00000107.

**Response 69: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

70.    In discussing its refusal to defend NG fully and completely against *Romano*, Travelers stated that it "will contribute a pro-rata share of defense costs based on a comparison of the number of years Travelers provided potentially applicable insurance to Grumman, with the number of years during which the alleged bodily injury or property damage that is the subject of the <u>Romano</u> Lawsuit and which Northrop Grumman is allegedly liable, could have occurred." *Id.*

**Response 70: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

71.    Travelers' letter stated:

*Travelers will assume a date of first potential injury of 1930.… From January 1930 to September 2016, (the date when Northrop Grumman was served with the <u>Romano</u> Lawsuit) is a period of approximately eighty-seven (86) [sic] years. Travelers provided potentially applicable insurance to Grumman January 1, 1968 to January 1, 1972, a period of four (4) years. Based on the foregoing, the period of potentially applicable Travelers coverage (4 years) is 4.65% of the period of North Grumman's alleged and potentially insurable involvement in this matter. Accordingly, Travelers will contribute its pro-rata share (4.65%) of Northrop Grumman's reasonable and necessary attorneys' fees and expenses incurred in the defense of the <u>Romano</u> Lawsuit subsequent to the tender of that lawsuit to Travelers on September 29, 2016.
Id.*

**Response 71: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

72.    By letter dated May 24, 2018, Travelers stated that it would use 1938, rather than 1930, "as the date of first potential injury based on information that operations at the site began in 1938." Ex. 9, May 24, 2018 Letter at 2.  Due to that change in the "date of first potential injury," Travelers recalculated its "pro-rata share" as 5.129% "of Northrop Grumman's reasonable and necessary defense costs in connection with the <u>Romano</u> Lawsuit." *Id.*

**Response 72: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

73.    Travelers did not, in either its October 2016 or May 2018 letter, disclaim or otherwise set forth any coverage position under its 1968-1972 Umbrella Policies. *See* Ex. 7, Oct. 29, 2016 Letter; Ex. 9, May 24, 2018 Letter.  Instead, Travelers stated in its October 2016 letter that it "reserves all of its rights and defenses to coverage … under the Umbrella liability policy [sic] in effect from January 1, 1968 to January 1, 1972." Ex. 7, Travelers' Oct. 29, 2016 Letter, at TRAV_NG2_00000109.

**Response 73: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

**B.    Nearly Five Years After *Romano* Was Filed, Travelers For The First Time Denied Coverage Under The 1968-1972 Umbrella Policies Due To Late Notice.**

74.    On June 29, 2021, NG sent Travelers a copy of the TAC.  Ex. 14, NG's June 29, 2021 Letter.

**Response 74: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

75.    On August 10, 2021, nearly five years after the *Romano* lawsuit was filed and six weeks after Travelers received notice of the TAC, Travelers sent a letter to NG denying, for the first time, coverage for *Romano* under the 1968-1972 Umbrella Policies.  Ex. 16, Travelers' Aug. 10, 2021 Letter at 1, 4, 8 ("umbrella policies do not provide any coverage for … the Romano Lawsuit").

**Response 75: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

76.    According to Travelers, NG "did not timely notify Travelers, as required by the [Umbrella] Policies." *Id.* at 8.  In so stating, Travelers disregarded the Court's Opinion and Order of September 20, 2019 (ECF 273) partially denying Travelers' late notice summary judgment

motion and holding that NG had, in fact, given timely notice of bodily injury and property damage under these same Umbrella Policies.  *Id.* at 8.

**Response 76: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

77.    In its August 2021 letter, Travelers stated that it "respectfully disagrees with the District Court's interpretation of" the language requiring notice of bodily injury or property damage in the Umbrella Policies.  Ex. 16, Travelers' Aug. 10, 2021 Letter at 8; *see also* JX8, 1968-1969 Umbrella Policy at NGINS001109886-87 (requiring notice of "bodily injury or property damage"); JX9, 1969-1972 Umbrella Policies at TRAV002737-38 (same).  Travelers reiterated the argument it had set forth in its late notice summary judgment motion that NG's notice obligation was "triggered" when "residents confronted Grumman with both health and property concerns (i) related to contamination at and emanating from the Bethpage Facility by at least the early to mid-1990s, and (ii) related to contamination at and emanating from the Park by at least June 2002."  Ex. 16, Travelers' Aug. 10, 2021 letter at 8.

**Response 77: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

78.    In granting summary judgment that NG had, in fact, satisfied the notice of bodily injury or property damage requirement as set forth in the Umbrella Policies, including in the 1968-1972 Umbrella Policies at issue here, the Court rejected Travelers' position that generalized health complaints in the 1990s and early 2000s triggered NG's notice obligation under these policies. *See* ECF 209 at 29-30 (Travelers' summary judgment motion, arguing that "concerns in the mid to late 1990s" triggered NG's notice obligation); ECF 273 at 20-21 (holding that NG gave timely notice under the Umbrella Policies).

**Response 78: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

79.    In denying Travelers' motion for reconsideration, the Court reiterated its timely notice holding and expressly rejected Travelers' position that generalized health complaints in the 1990s and early 2000s triggered NG's notice obligation under the Umbrella Policies.  ECF 315 at 4-6 (stating that "[r]esidents told Grumman at community meetings about health problems and property concerns, which they believed were Grumman's fault.  Although these accounts are extremely serious, an insured must give notice of actual known injury, sufficiently grounded in fact" and holding that "anecdotal accounts of injury, which Travelers argues triggered Grumman's notice obligation [in the 1990s], describe suspected injuries and suspected health trends possibly attributable to Grumman" and do not trigger a notice obligation under Travelers' 1968-1972 Umbrella Policies).

**Response 79: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

80.    In its August 2021 letter, Travelers did not identify any Umbrella Policy exclusion as applying or potentially applying to *Romano*.  *See* Ex. 16, Travelers' Aug. 10, 2021 letter.

**Response 80: These facts concern Travelers and do not relate to Century. Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

81.    Travelers further stated in that letter that "[n]o defense obligation exists as to the Third Amended Complaint in the <u>Romano</u> Lawsuit because insurance is or may be afforded by listed underlying policies and/or other applicable insurance available from Century."  *Id.* at 8 n.4; *see also supra* ¶ 15 (quoting DSP provision in 1968-1972 Umbrella Policies).

**Response 81: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

82.     In a letter to the Court, Travelers explained that it interprets the DSP Provision in its 1968-1972 Umbrella Policies as absolving Travelers of defending NG against *Romano* if Century has an obligation to defend NG against *Romano*:

*Travelers would have no defense obligation for the Romano lawsuit under the remaining Umbrella Policies from 1968 through 1972 because those policies do not require Travelers to participate in the defense of any action where other insurance coverage is available. See, e.g., ECF 212-3 (Policy No. T-CUP-932209-68) at NGINS001109882 (defense obligation arises for claim or suit where "insurance … is not afforded by … any other applicable insurance"). Here, with respect to Romano, the Court may rule that insurance may be "afforded by" one of Grumman's other insurers, such as Century.*
ECF 328 at 2.

**Response 82: These facts concern Travelers and do not relate to Century.**

**Accordingly, Century lacks sufficient information to state whether these facts are disputed.**

## CENTURY'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The *Romano* Lawsuit and Grumman's Insurance Coverage Program

1.     Century incorporates by reference Section A of Travelers' Statement of Undisputed Material Facts regarding the *Romano* Lawsuit and Grumman's insurance coverage program.

### B.    The Century Primary Policies at Issue

2.     The Century policies at issue are primary policies in effect from January 1, 1955 to January 1, 1962.  They expressly "appl[y] only to occurrences and accidents which happen during the policy period … ."[4]

3.     The Century primary policies require that "[Grumman] shall immediately forward to [Century] every demand, notice, summons or other process received by [Grumman] or [its] representative."[5]

4.     The primary policies further require "written notice" of an accident or occurrence "as soon as practicable."[6]

---

[4] JX 1, Policy No. 9 CGL 52305, at CEN00000025; JX 2, Policy No. 9 CGL 72518, at CEN00000059; Ex. J25, JX 3, at CEN00000092; JX 4, Policy No. 9 CGL 96324, at CEN000000135; JX 5, Policy No. 9 CGL 107602, at NGINS000003754; JX 6, Policy No. 9 CGL 122273, at NGINS000003989; JX 7, Policy No. CGL 17 50 64, at NGINS000004234.

[5] JX 1, Policy No. 9 CGL 52305, at CEN00000006; JX 2, Policy No. 9 CGL 72518, at CEN00000046; Ex. J25, JX 3, at CEN00000079; JX 4, Policy No. 9 CGL 96324, at CEN000000119; JX 5, Policy No. 9 CGL 107602, at NGINS000003734; JX 6, Policy No. 9 CGL 122273, at NGINS000003973; JX 7, Policy No. CGL 17 50 64, at NGINS000004213.

[6] *Id.*

5.     In addition, the Century policies require written notice to include "reasonably obtainable information respecting the time, place and circumstances of the accident," as well as "the names and addresses of the injured and of available witnesses."[7]

### C.     The Claims History for the *Romano* Lawsuit

6.     On September 28, 2016, Grumman tendered the first *Romano* Class Action Complaint to Century under the policies allegedly issued to Grumman between 1950 and 1968.[8]

7.     On October 27, 2016, Century disclaimed coverage "to the extent that claims for property damage or bodily injury in the *Romano Action* arise from Grumman's historical operations at the Bethpage Facility."[9]

8.     On May 18, 2018, Grumman tendered the Second Amended *Romano* Complaint to Century.  On June 8, 2018, Century reiterated its disclaimer of coverage.[10]

9.     On September 26, 2019, the Court found that, "on the current summary judgment record, the relevant set of 'occurrences,' and therefore the viability of Century's late notice defense, cannot be determined."  ECF No. 275, at 11.

10.     On June 2, 2020, Century set forth its coverage position in detail and offered to participate in Grumman's defense of the *Romano* Lawsuit at a pro rata share of Grumman's

---

[7]   JX 1, Policy No. 9 CGL 52305, at CEN00000006; JX 2, Policy No. 9 CGL 72518, at CEN00000046; JX 3, Policy No. 9 CGL 84727, at CEN000000079; JX 4, Policy No. 9 CGL 96324, at CEN000000119; JX 5, Policy No. 9 CGL 107602, at NGINS000003734; JX 6, Policy No. 9 CGL 122273, at NGINS000003973; JX 7, Policy No. CGL 17 50 64, at NGINS000004213.

[8] ECF No. 442-6, Ex. 6 to the Declaration of Daniel L. Russell Jr. ("Russell Dec."), Letter from J. Fog to J. Dorion, dated Oct. 27, 2016, CEN_NG2_00000362.

[9] *Id.*, CEN_NG2_00000363.

[10] ECF No. 442-10, Ex. 10 to the Russell Dec., Letter from K. Winey to M. Pingor, dated Jun. 8, 2018.

reasonable and necessary attorney fees and expenses under the Century Primary Policies in effect from January 1, 1955 to January 1, 1962 subject to a complete reservation of rights, including the right to deny coverage and/or withdraw from the defense on the grounds that Grumman failed to provide timely notice to Century as required by the Century Primary Policies, to the extent the alleged property damage or bodily injury at issue did not occur during the Century policy period, and to the extent that any alleged property damage or bodily injury arose from Grumman's intentional disposal practices.[11]

11.    Grumman did not respond to Century's reservation or offer.

12.    On August 11, 2020, February 2, 2021, and August 9, 2021 (in response to Grumman's tender of the Third Amended *Romano* Complaint to Century on June 20, 2021), Century once again set forth its coverage position in detail and offered to participate in Grumman's defense of the *Romano* Lawsuit at a pro rata share of Grumman's defense under the Century Primary Policies.[12]

13.    On November 11, 2021, shortly before filing its pending motion for summary judgment, Grumman finally responded to Century's correspondence and rejected Century's offer to participate in the defense of the *Romano* Lawsuit.[13]

---

[11] ECF No. 442-11, Ex. 11 to the Russell Dec., Letter from A. Scott to M. Pingor, dated Jun. 2, 2020.

[12] ECF No. 442-12, Ex. 12 to the Russell Dec., Letter from A. Scott to M. Pingor dated Aug. 11, 2020; ECF No. 442-13, Ex. 13 to the Russell Dec., Letter from A. Scott to M. Pingor dated Feb. 2, 2021; ECF No. 442-15, Ex. 15 to the Russell Dec., Letter from A. Scott to M. Pingor dated Aug. 9, 2021.

[13] Ex. 1 to the Declaration of Shane R. Heskin, Letter from Michelle Pingor to Anneliese Scott, dated Nov. 10, 2021.

Respectfully submitted:

Dated: December 3, 2021

/s/ Shane R. Heskin
Shane R. Heskin
Adam M. Berardi (admitted *pro hac vice*)
WHITE AND WILLIAMS LLP
One Penn Plaza, Suite 4110
New York, NY 10119
Tel.:  (212) 244-9500
Fax:  (215) 399-9603
heskins@whiteandwilliams.com
berardia@whiteandwilliams.com

*Attorneys for Nominal Defendant Century
Indemnity Company*