UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THE TRAVELERS INDEMNITY COMPANY,
THE TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT, formerly known as THE
TRAVELERS INDEMNITY COMPANY OF
RHODE ISLAND, TRAVELERS CASUALTY
AND SURETY COMPANY, formerly known as
THE AETNA CASUALTY AND SURETY
COMPANY, and TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA, formerly
known as THE TRAVELERS INDEMNITY
COMPANY OF ILLINOIS,

                Plaintiffs,

         vs.

NORTHROP GRUMMAN CORPORATION,
NORTHROP GRUMMAN SYSTEMS
CORPORATION,

                Defendants,

*and*

CENTURY INDEMNITY COMPANY, eventual
successor in interest to INSURANCE COMPANY
OF NORTH AMERICA,

                Nominal Defendant.

**CASE NO. 1:16-cv-08778-LGS**
    **[rel. 1:12-cv-03040-KBF]**

**ECF CASE**

-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE INSURERS' CROSS-MOTIONS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I. CENTURY DOES NOT OWE A DEFENSE UNDER ITS POLICIES ........................... 1

    A. The Court Has Not Found A Disputed Issue Of Fact As To Notice And Even If Such A Dispute Exists, Century Still Does Not Owe Grumman A Defense ................................................................................................................ 1

    B. Collateral Estoppel Applies Despite Grumman's Too Narrow Reading Of Past Rulings ........................................................................................................ 4

II. TRAVELERS OWES NO DEFENSE UNDER THE UMBRELLA POLICIES ............... 5

    A. Travelers Is Not Required To Defend Under The Umbrella Policies Because Underlying Primary Policies Afford A Defense ....................................... 5

    B. Travelers Does Not Owe a Defense Under The Umbrella Policies To The Extent That Century Must Defend ........................................................................ 8

III. IF THE ISSUE IS REACHED, DEFENSE COSTS MUST BE ALLOCATED PRO RATA ................................................................................................................................. 9

    A. New York Law Provides For Pro Rata Allocation Of Defense Costs ................... 9

    B. There Is A Reasonable Basis to Allocate Defense Costs to Grumman ................ 13

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Gigante*,
   229 A.D.2d 975 (4th Dep't 1996) ............................................................................................ 3

*Atl. Mut. Ins. Co. v. Greater N.Y. Mut. Ins. Co.*,
   241 A.D.2d 427 (1st Dep't 1997) .......................................................................................... 11

*Avondale Indus., Inc. v. Travelers Indem. Co.*,
   774 F. Supp. 1416 (S.D.N.Y. 1991) ........................................................................................ 3

*Bausch & Lomb, Inc. v. Lexington Ins. Co.*,
   414 Fed. App'x 336 (2d Cir. 2011) ..................................................................................... 2, 3

*Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*,
   36 F. Supp. 3d 336 (S.D.N.Y. 2014) ....................................................................................... 6

*Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*,
   822 F.2d 267 (2d Cir. 1987) ................................................................................................ 2, 3

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
   80 N.Y.2d 640 (1993) ................................................................................................. 9, 12, 13

*Danaher Corp. v. Travelers Indem. Co.*,
   414 F. Supp. 3d 436 (S.D.N.Y. 2019) .............................................................................. 12, 13

*Generali-U.S. Branch v. Caribe Realty Corp.*,
   1994 WL 903279 (N.Y. Sup. Ct. Dec. 5, 1994) ...................................................................... 9

*In re Viking Pump, Inc.*,
   148 A.3d 633 (Del. 2016) ........................................................................................................ 7

*Keyspan Gas E. Corp. v. Munich Reins. Am. Inc.*,
   73 N.Y.S.3d 113 (2018) ............................................................................................... 9, 10, 11

*Md. Cas. Co. v. W.R. Grace & Co.*,
   1994 WL 167962 (S.D.N.Y. Apr. 29, 1994) ....................................................................... 2, 3

*Narragansett Elec. Co. v. Am. Home Assurance Co.*,
   999 F. Supp. 2d 511 (S.D.N.Y. 2014) .............................................................................. 11, 12

*Olin Corp. v. Century Indem. Co.*,
   522 Fed. App'x 78 (2d Cir. 2013) ......................................................................................... 13

*Sec. Ins. Co. of Hartford v. Lumbermen's Mut. Cas. Co.*,
   826 A.2d 107 (Conn. 2003) ................................................................................................... 13

*Sumner Builders Corp. v. Rutgers Cas. Ins. Corp.*,
   101 A.D.3d 417 (1st Dep't 2012) ............................................................................................ 3

*Town of Smithtown v. Nat'l Union Fire Ins. Co.*,
   191 A.D.2d 426 (2d Dep't 1993) .......................................................................................... 2, 3

*United Specialty Ins. Co. v. CDC Hous., Inc.*,
    233 F. Supp. 3d 408 (S.D.N.Y. 2017) .................................................................................. 11

*Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*,
    7 F.4th 50 (2d Cir. 2021) ........................................................................................................ 6

**PRELIMINARY STATEMENT**

Grumman presents no basis for a finding that the Insurers must provide a "complete defense" of *Romano* because neither Century nor Travelers has any obligation to defend. Century has no duty to defend Grumman until Grumman establishes that it has complied with conditions precedent to coverage, including timely notice, which Grumman concedes it has not done. But Grumman is collaterally estopped from doing so in light of the Court's ruling on Travelers' pollution exclusion motion and the Court's decision in *Grumman I,* both of which Grumman reads too narrowly in an attempt to avoid their clear implication.

Travelers has no duty to defend Grumman pursuant to the Umbrella Policies because these policies do not obligate Travelers to defend where "insurance" is "afforded" by underlying primary policies. Grumman fails to rebut this plain language reading or to refute that the Second Circuit's interpretation of a similar umbrella defense provision in *Utica* is dispositive. Moreover, if the Court finds that Century owes a complete defense, then the Umbrella Policies do not respond because insurance is "afforded" by "other applicable insurance."

Even under Grumman's view that a defense obligation is owed, Grumman must bear the lion's share of all defense costs. If the Court reaches the issue, it should find, in accordance with numerous New York court rulings, that defense costs must be allocated pro rata, with Grumman sharing in the allocation for periods when it self-insured or its other insurance is not responding.

**ARGUMENT**

**I.     CENTURY DOES NOT OWE A DEFENSE UNDER ITS POLICIES**

    **A.     The Court Has Not Found A Disputed Issue Of Fact As To Notice And Even If Such A Dispute Exists, Century Still Does Not Owe Grumman A Defense**

Grumman argues that "New York courts permit an insurer to refuse to defend until discovery on late notice is completed and while a summary judgment motion is pending," but not

1

after "discovery has been completed and a court determines that extrinsic evidence is inconclusive regarding timeliness of notice . . . ." ECF No. 464, at 10.  Even if Grumman accurately describes the law in the New York (which it does not), the procedural posture of this case does not justify imposing a duty to defend.  The Court has *not* determined that the evidence is inconclusive regarding timeliness of notice.  Instead, the Court has held only that "the applicability of the late notice defense cannot be determined on the . . . summary judgment record" that was previously before the Court.  ECF No. 315, at 16.  Accordingly, under Grumman's own interpretation of New York law, Century has no present obligation to defend.

Moreover, Grumman misreads New York law.  In every case in which a New York court has specifically considered whether an insurer owes a defense before the insured has established a condition precedent, such as timely notice, the court has refused to impose a duty to defend, no matter the case's procedural posture.  *See Bausch & Lomb, Inc. v. Lexington Ins. Co.*, 414 Fed. App'x 336, 370–71 (2d Cir. 2011); *Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 272–73 (2d Cir. 1987); *Md. Cas. Co. v. W.R. Grace & Co.*, 1994 WL 167962, at *5 (S.D.N.Y. Apr. 29, 1994); *Town of Smithtown v. Nat'l Union Fire Ins. Co.*, 191 A.D.2d 426, 427–28 (2d Dep't 1993).  Where compliance with a condition precedent is disputed, no New York court has ever specifically stated that an insurer must defend (including after summary judgment briefing).  The cases indicate the opposite.  Further, as noted above, summary judgment proceedings in this case have not resolved the notice issue.

Grumman attempts to limit Century's right to deny a defense on the basis of a condition precedent by couching that right as merely an exception to the "four corners" rule.  But New York law holds that the four corners rule does not govern conditions precedent.  The Second Circuit, for instance, has explained that, *irrespective of allegations within the four corners of a*

*complaint*, an insured that fails to comply with a condition precedent has no right to coverage *to begin with*.  See *Bausch & Lomb*, 414 Fed. App'x at 370–71; *Int'l Flavors*, 822 F.2d at 273.  Likewise, in *W.R. Grace*, the U.S. District Court for the Southern District of New York held, *without qualification*, that "insurers have no obligation to incur defense costs pending the judicial determination of whether timely notices of suits and occurrences were provided to the insurers."  1994 WL 167962, at *5.  It is Grumman's burden to establish timely notice, not Century's burden to establish late notice.  *See, e.g.*, *Smithtown*, 191 A.D.2d at 427–28.  Applying the four corners rule would improperly impose Grumman's burden onto Century.  Because Grumman has yet to establish the "occurrence" or "occurrences" at issue and that it gave Century timely notice of that "occurrence" or those "occurrences," Century cannot be required to provide Grumman a defense at this juncture.

Grumman relies on three cases that do not specifically consider whether an insurer owes a defense before the insured has established compliance with a condition precedent and are thus inconsistent with New York's actual jurisprudence on how conditions precedent relate to the duty to defend.  *See Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416 (S.D.N.Y. 1991); *Sumner Builders Corp. v. Rutgers Cas. Ins. Corp.*, 101 A.D.3d 417 (1st Dep't 2012); *Aetna Cas. & Sur. Co. v. Gigante*, 229 A.D.2d 975 (4th Dep't 1996).  Because these cases fail to consider the issue, they provide no support for Grumman's argument.  Indeed, it was for this very reason that the *W.R. Grace* court held that reliance on *Avondale* (the only of the three cases cited by Grumman decided before *W.R. Grace*) was "misplaced."  1994 WL 167962, at *5 ("[T]he court's opinion [in *Avondale*] did not address the issue of whether [the insurer] was bound to make defense cost payments until the notice dispute was resolved.").

Finally, Grumman ignores the fact that the Court's ruling on late notice was limited to the

3

record before any of the facts in *Romano* had been developed through discovery in that action. The Court's ruling explicitly permitted Century to make its arguments "on a more developed record" which necessarily requires further discovery regarding the alleged exposures in *Romano*. ECF No. 315, at 16.  As the court in *W.R. Grace* stated, "It would serve no purpose to require the insurers to undertake a defense or bear the costs when they may very well secure a judgment at the end of the day which establishes that there never was a duty to defend."  1994 WL 167962, at *5.  The Court should follow suit and adhere to well-established New York law requiring the insured to prove timely notice, which is a condition precedent, before obtaining defense coverage.

> **B.     Collateral Estoppel Applies Despite Grumman's Too Narrow Reading Of Past Rulings**

Grumman argues that the Court's decision on Travelers' pollution exclusion motion did not expressly identify the "occurrence" (or "occurrences") in *Romano*.  Nonetheless, that decision resolved any outstanding issue underlying what could constitute an "occurrence" in *Romano*.  It did so by explicitly recognizing—as the *Romano* plaintiffs have consistently alleged—that the bodily injury and property damage alleged in *Romano* arise from the same contamination at issue in *Grumman I*.  ECF No. 430, at 10.  And if Grumman failed to provide timely notice of the contamination—the "occurrence"—in *Grumman I*, it necessarily failed to provide timely notice of that same contamination and "occurrence" with respect to *Romano*.  In short, Grumman reads the Court's decision on Travelers' pollution exclusion motion, and its implications with respect to the notice issue, too narrowly.

Grumman reads *Grumman I* too narrowly as well.  In its decision on Travelers' pollution exclusion motion, the Court rejected Grumman's attempts to distinguish *Grumman I* from *Romano* on this very basis.  Grumman argued that *Romano* involves different contaminants than

4

were addressed in *Grumman I*.  The Court correctly disagreed, holding that "Grumman reads *Grumman I* too narrowly.  *Grumman I* exhaustively cataloged Grumman's historical discharge practices, based on an extremely fulsome record.  That it did so in the context of a few specific contaminants does not alter the court's broad ruling[.]"  *Id.* at 9; *see also id.* at 10.

Now, Grumman argues that *Romano* involves a different "occurrence" (or "occurrences") than in *Grumman I*.  As it did with respect to Travelers' pollution exclusion motion, the Court should reject Grumman's attempt to distinguish *Grumman I* from *Romano*, particularly now that the Court has explicitly recognized that the bodily injury and property damage alleged in *Romano* arise from the same contamination at issue in *Grumman I*.

## II. TRAVELERS OWES NO DEFENSE UNDER THE UMBRELLA POLICIES

### A. Travelers Is Not Required To Defend Under The Umbrella Policies Because Underlying Primary Policies Afford A Defense

As previously established (Ins. Br. at 16-23), Travelers has no defense obligation under the plain language of the Umbrella Policies because the underlying Primary Policies afford a defense for suits, such as *Romano*, alleging bodily injury or property damage.  In response, Grumman largely reiterates its argument that "coverage is not 'afforded by' underlying insurance" because, as a result of its breach of contract and consequent forfeiture of coverage under the Primary Policies, "NG cannot obtain a defense from the underlying policies."  Opp. at 13.  Specifically, Grumman continues to insist that its proposed interpretation of Insuring Clause II should be adopted because "afford" means "furnish" or "provide."  *Id*. at 14.  But even exploring Grumman's assertion, it is clear that what must be afforded, furnished or provided under the plain terms of this provision is "***insurance***" for a given risk.  Grumman does not challenge that "insurance" is synonymous with "coverage" for purposes of Insuring Clause II, using these terms interchangeably in its briefs.  *See e.g*., NG Br. at 21 ("Travelers must provide a

5

defense if the underlying insurance does not afford coverage[.]"); Opp. at 13 ("Travelers defense duty turns on whether coverage is 'afforded by' underlying insurance."). Under well-established New York law, "coverage" refers to the scope of coverage, as specified in the insuring clauses and exclusions. *See* Ins. Br. at 21-22; *Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 7 F.4th 50, 57 (2d Cir. 2021) ("'Covered' is a term of art that usually describes a risk that is insured . . . Correspondingly, 'not covered' refers to risks that are uninsured."). Because it is undisputed that the bodily injury and property damage alleged to have taken place between 1968 and 1972 are within the scope of claims to be defended under the underlying Primary Policies, such that they would (absent Grumman's late notice) furnish a defense for *Romano* (TSF ¶ 24; ECF No. 318), insurance is afforded by those underlying policies. As a result, the Umbrella Policies do not provide a defense.[1]

Grumman fails to cite a single case supporting its proposed interpretation. By contrast, Travelers' plain language reading of Insuring Clause II is reinforced by the Second Circuit's decision in *Utica*. Ins. Br. at 20-23. Grumman asserts that *Utica* is inapt because the policy at issue "used the term 'covered,' not 'afforded.'" Opp. at 15. Not so. The *Utica* policy contained, and the Second Circuit construed, both terms. The court found that the phrase "occurrence not ***covered by*** the underlying polic(ies) of insurance" unambiguously refers to "a risk that is outside the scope of the primary policy." *Utica*, 7 F.4th at 57 (emphasis added). In so holding, it

---

[1] "Afforded" is not ambiguous, as Grumman suggests. Opp. at 18. Whether insurance is "afforded" in this provision simply means whether insurance is made available for a given risk. *See* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/afford (last visited Jan. 10, 2021) ("afford" means "to make available, give forth, or provide"). When the insured and insurer are two sophisticated parties who each possessed bargaining power when the policy was negotiated and issued, the *contra proferentem* rule does not apply and there is no favoring of the policyholder's interpretation. *See Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 342 (S.D.N.Y. 2014), *aff'd sub nom.* 629 Fed. App'x 127 (2d Cir. 2015) ("*Contra proferentem* does not apply where contracts are negotiated by sophisticated parties of equal bargaining power.").

reasoned that this phrase was consistent with, and had the same meaning, as the phrase "***insurance afforded by*** [the underlying policies] is inapplicable to the occurrence," used elsewhere in the policy to refer to drop down defense coverage. *Id.* (emphasis added). This logic confirms that determining whether a risk is afforded "insurance" by, or is "covered" by, underlying policies involves the same inquiry.[2]

Grumman offers a poorly-reasoned response to Travelers' argument that other references to "insurance" and "afforded" in the Umbrella Policies demonstrate that Insuring Clause II refers to whether a risk is within the scope of underlying policies. Ins. Br. at 19-20 & n.12. Grumman asserts that "afforded" in these other provisions refers to a policy that actually "furnishes or pays defense costs or limits" because the word "afforded" appears "in close proximity" to the words "limits of liability." Opp. at 16. However, as Grumman acknowledges, umbrella policies blend primary ***and excess*** coverage. *Id.* Thus, the reference to "limits of liability" in Insuring Clause I (which provides indemnification for certain injury and damage in excess of underlying policy limits) simply makes clear that the "limits of liability" provision in the underlying policy is not applicable ***to Insuring Clause I***, which makes sense given the excess-type insurance set forth in that provision. *See* TSF ¶ 21. Likewise, Exclusion (j) to Insuring Clause I clarifies the interplay between the limits of liability in an applicable underlying policy and those in the umbrella policy as to a particular type of injury (*e.g.*, products liability) under that provision. *See id.* ¶ 22. It does not, as Grumman suggests, indicate that an Umbrella Policy drops down to defend pursuant to an entirely different provision when Grumman cannot obtain a payout from an underlying policy as a result of its coverage forfeiture. Finally, with respect to the Limits of Liability

---

[2] Grumman cites *In re Viking Pump, Inc.*, 148 A.3d 633 (Del. 2016), for the proposition that "covered" means "whether the underlying insurance is collectible." Opp. at 15 n.6. *Viking Pump* involves materially different policy language from that at issue here.

7

provision in the Umbrella Policies, the term "afforded" plainly refers to the scope of the risks insured under such policies. *See id.* ¶ 23 ("With respect to any *occurrence* for which *insurance* is *afforded hereunder*[.]") (emphasis added). That this provision goes on to clarify that the Umbrella Policy shall "apply only to the amount of damages in excess of the retained limit" does not indicate that it defends if an underlying policy does not due to the policyholder's failings.

> **B.     Travelers Does Not Owe a Defense Under The Umbrella Policies To The Extent That Century Must Defend**

If the Court accepts Grumman's argument that the Century Policies afford a complete defense for *Romano*, the Court should find that the Umbrella Policies do not drop down to provide a defense because a defense for alleged injury during the 1968 to 1972 Travelers policy periods would be afforded by "other applicable insurance"—the Century Policies. Ins. Br. at 23-24. Grumman denies that its requested relief would result in Century "'providing a defense for allegations of injury' during Travelers' policy periods." Opp. at 17-18. That denial, however, cannot be squared with the reality that a "complete defense" of the *Romano* "suit" includes a defense against the allegations of injury during the 1968 to 1972 Travelers policy periods. Appearing to acknowledge this, Grumman resorts to a counterfactual hypothetical: that if a suit "alleges an 'occurrence' or 'accident' only during Travelers' policy periods, Century has no defense obligation." *Id.* at 17. This abstract argument is irrelevant. Grumman contends that *Romano* **does** allege an occurrence or accident during both Travelers' and Century's policy periods, and that Century is obligated to defend the entire "suit" (including allegations of injury during the Travelers policy periods). Thus, Grumman must accept that a defense for injury alleged during years covered by the Travelers policies would be afforded by the Century Policies.

8

### III.  IF THE ISSUE IS REACHED, DEFENSE COSTS MUST BE ALLOCATED PRO RATA

#### A.  New York Law Provides For Pro Rata Allocation Of Defense Costs

Grumman does not seriously dispute that New York law requires pro rata allocation of defense costs among insurers.[3]  Instead, Grumman principally argues that it should not bear its fair share of costs for periods when it self-insured or its other insurance is not responding. Grumman is wrong.  In *Continental Casualty Company v. Rapid-American Corp.*, 80 N.Y.2d 640 (1993), the New York Court of Appeals expressly recognized that an insured may be required to contribute to defense costs for claims involving losses in periods during which an insured procured no applicable insurance, and thus knew it was responsible for its own defense. In the wake of *Rapid-American*, numerous courts applying New York law have required an "insured [to] pay its fair share for the defense of the non-covered risk," where, as here, it can "be readily apportioned."[4]  *See Generali-U.S. Branch v. Caribe Realty Corp.*, 1994 WL 903279, at *2 (N.Y. Sup. Ct. Dec. 5, 1994); *see also, e.g.*, cases cited at Ins. Br. 28-29.

These decisions are consistent with *Keyspan Gas East Corp. v. Munich Reinsurance America Inc.*, 73 N.Y.S.3d 113, 116-17 (2018), in which the Court of Appeals described the pro rata allocation of indemnity to the insured, under policy language substantively similar to the policies at issue here, in the context of "gradual" and "continuous harm" that implicated a multi-year period.  *Keyspan* concluded that allocating uninsured periods to the insured was reasonable and consistent with policy terms and the parties' reasonable expectations.

Grumman dismisses *Keyspan* as inapposite because it "involved allocation of the narrower duty to indemnify." Opp. at 3.  However, the factors emphasized in *Keyspan* compel

---

[3] *See, e.g.*, Opp. at 4 & n. 1 (acknowledging Insurers' authorities "appl[y] pro rata allocation to defense costs . . . among insurers"); *see generally* Ins. Br. at 25-27.

[4] *See* Part III.B, *infra* (addressing basis for apportioning defense costs).

pro rata allocation of defense costs as well. As in *Keyspan*, the relevant language in the Century and Travelers policies tethers the duty to defend to an accident or occurrence (Century) or bodily injury or property damage (Travelers) that happen during the applicable policy period. While Grumman concedes that the "during the policy period" limitation "applies to the duty to indemnify," it claims that it does "not [apply to] the duty to defend." *Id*. That is not the case. Each Century Policy expressly "applies only to occurrences and accidents which happen ***during the policy period***." *See, e.g*., JX1 at 0025 (emphasis added). Century agreed to pay for those "sums which the Insured shall become legally obligated to pay as damage because of bodily injury. . . caused by occurrence" and "injury or destruction to property caused by accident," and has "the right and duty to defend any suit against the Insured alleging such injury… and seeking damages on account thereof." *See, e.g*., *id*. at 0005, 00021. Thus, Century's duty to defend extends only as to those suits seeking damages on account of injury caused by an occurrence or accident "which happen during the policy period" – not suits seeking damages on account of "***any*** injury." Similarly, each Travelers Umbrella Policy states that "this policy applies only to . . . bodily injury and property damage which takes place ***during the policy period***." *See, e.g*., JX8 at 9882 (emphasis added). Consequently, Travelers' duty to defend extends only to those suits seeking damages on account of bodily injury or property damage "which takes place during the policy period." *Id*. As in *Keyspan*, no reasonable insured could read this language as providing a defense of losses or occurrences that do not take place during the applicable policy periods. *See Keyspan,* 31 N.Y.3d at 61 (declining to "effectively provide insurance coverage . . . for years in which no premiums were paid" in part because "the average insured . . . would not expect to receive coverage without regard to the number of years for which it purchased applicable

10

insurance").[5]

      Fairness and sound policy also support treating defense costs like indemnification costs for purposes of allocation.  As *Keyspan* explains, failing to allocate periods of non-coverage to a policyholder "would effectively provide insurance coverage . . . for years in which  . . . insurers made the calculated choice not to assume or accept premiums for the risk in question."  *Id.* at 61.  As a result, the all-sums approach to indemnification costs discourages policyholders from buying coverage sufficient to insure risks.  That rationale applies equally to defense costs.

      *Narragansett Electric Co. v. American Home Assurance Co.*, 999 F. Supp. 2d 511 (S.D.N.Y. 2014), which pre-dates *Keyspan* and applies Massachusetts law, is not to the contrary.  Grumman contends that pro rata allocation is incompatible with the "complete defense" rule discussed in *Narragansett*, under which an insurer must defend any suit.  Specifically, Grumman claims that if the pro rata approach were applied, the "complete defense" rule would mean that "an insurer is obligated to pay for the entire cost of defense if it honored the duty to defend, but could reduce that obligation to its pro rata share if it breached the duty."  Opp. at 3-4.  But New York law is clear that an insurer may seek contribution from other insurers for indemnification *and* defense costs.  *See, e.g.*, *Atl. Mut. Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 241 A.D.2d 427, 428 (1st Dep't 1997).  Moreover, despite the complete defense rule, an insurer who defends a suit nonetheless retains a right to seek reimbursement directly from the insured.  *See, e.g.*, *United Specialty Ins. Co. v. CDC Hous., Inc.*, 233 F. Supp. 3d 408, 414 (S.D.N.Y. 2017) ("New York law permits insurers to provide their insureds with a defense subject to a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage."); *see*

---

[5] These temporal limitations also belie Grumman's claim that "nothing in the policies requires NG to contribute to its own defense."  Opp. at 6.  Grumman must contribute to its own defense because the Insurers' respective duties to defend, when actually triggered, are expressly limited by the relevant insurance contracts.

11

*also Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 452 (S.D.N.Y. 2019) (allocating defense costs among successive insurers and those standing in the policyholder's shoes on pro rata basis). Applying the pro rata approach to defense costs therefore would not, as Grumman contends, perversely reward insurers for shirking their duties, or render their defense duty "meaningless."

Grumman seeks to distinguish certain New York decisions allocating defense costs to the insured – including *Grumman I* decisions that allocated defense costs to Grumman – because they "pre-date *Narragansett*." Opp. Br. at 4. Although *Narragansett* applied Massachusetts law, it stated in passing that New York "allows for joint and several allocation of defense costs." *Narragansett*, 999 F. Supp. 2d at 520 (citing *Rapid-Am.*, 80 N.Y.2d at 655). However, the court understandably did not consider or address *Grumman I* or any other New York decision that allocated defense costs to an insured for non-covered periods, as expressly contemplated by *Rapid-American*. *See Rapid-Am.*, 80 N.Y.2d at 656 (allocation of defense costs to insured may be appropriate when lawsuit is "shown to involve 'occurrences' during self-insured periods").

Grumman also dismisses *Danaher* as inapposite because it purportedly applied equitable rather than contractual principles. Opp. at 4. Building upon *Keyspan*'s foundation, *Danaher* ordered a pro rata allocation of defense costs, including to years the insured bore its own litigation risk. *Danaher*, 414 F. Supp. 3d at 454. Contrary to Grumman's contention, *Danaher* (and *Keyspan*) rest on a simple contractual principle: Insureds buy insurance to cover loss during applicable policy periods, and if they opt not to purchase insurance for certain periods (or cannot access their insurance in other periods), they do not have coverage for those periods, and must bear the consequences. *See id.; see also supra* note 5. This is so whether or not allocation to the insured can also be justified by the equitable principles that allow contribution among co-

12

insurers.  *See, e.g.*, *Sec. Ins. Co. of Hartford v. Lumbermen's Mut. Cas. Co.*, 826 A.2d 107, 124 (Conn. 2003) (equitable contribution "necessarily follows from the rationale underlying the pro rata method of allocation, *i.e.*, that the duty to defend does not extend to periods of self-insurance").

### B. There Is A Reasonable Basis to Allocate Defense Costs to Grumman

As previously explained (Ins. Br. at 30-31), courts have required an insured to pay its fair share for defense of a non-covered risk unless there is "no reasonable means of prorating [such costs] between covered and non-covered items."  *Olin Corp. v. Century Indem. Co.*, 522 Fed. App'x 78, 80 (2d Cir. 2013).  Here, defense costs can readily be apportioned as "apportionment of defense costs [may] follow the method of apportionment of indemnification costs." *Danaher*, 414 F. Supp. 3d at 453.  As *Danaher* and numerous other courts have done, the Court should apply time-on-the risk as a "reasonable means" of pro rating defense costs across the injury period.

Grumman does not dispute that the Century and Travelers policies require that indemnification be allocated pro rata based on time-on-the-risk.  Instead, Grumman contends that defense costs cannot be allocated to Grumman absent "evidence" that "establishes an alleged occurrence occurred during an uninsured period." Opp. at 7 n.2.  Here, the face of the *Romano* Complaint makes plain that there is injury outside the Century and Travelers policy periods.[6] The *Romano* Complaint alleges that Grumman continuously contaminated the Bethpage Facility and its environs throughout its operations between 1938 and 1996.  *See, e.g.,* JX13 ¶ 92

---

[6] Grumman insists that allocation cannot be based on a complaint's allegations, and that there must be "conclusive evidence," such as a jury verdict, "establishing when harm actually occurred." Opp. at 7-8. However, neither *Rapid-American* nor *Olin* impose such a rule, nor do they rule out that the complaint could contain such evidence.  *See Olin*, 522 Fed. App'x at 80-81 (where "the complaints [did] not specify when injury to individual homes or wells occurred," and absent other evidence of the timing of harm, there was no reasonable basis to allocate in that case); *Rapid-Am.*, 80 N.Y.2d at 656.

13

("Defendants and/or their predecessors owned and/or operated the Site for several decades . . . Grumman's operations at the Bethpage Facility began in 1937 and its use of the NWIRP site began in 1942. Manufacturing operations at the Site continued until 1996)[7]; *id.* ¶ 94 ("Throughout its operations at the Site, Grumman used, stored and disposed of various hazardous wastes and solvents from industrial processes directly into the environment.").[8] The Complaint also repeatedly alleges that harm caused by contamination beginning in 1938 is, and has been, "continuing in nature." JX13 ¶¶ 226, 231, 233, 236, 513, 520, 549, 566. Voluminous discovery in *Grumman I* and here (including the massive regulatory record established by NYSDEC) establish that Grumman discharged toxic chemicals into the environment throughout its operations and caused harm to groundwater that is continuing in nature. *See* ECF No. 430, at 9 ("*Grumman I* exhaustively cataloged Grumman's historical discharge practices, based on an extremely fulsome record" and "decades of evidence that Grumman's discharges resulting in environmental contamination"). Indeed, the 2019 NYSDEC Amended Record of Decision, issued after the 2016 *Romano* lawsuit was filed, describes the massive migrating contaminant plume resulting from Grumman's "past disposal practices" and notes that hundreds of millions of dollars must be expended for treatment and to halt its spread. *See, e.g.,* Reply Decl. of Jonathan S. Kaplan Ex. 1, at 15 (the "Grumman groundwater plume continues to migrate"); *id.* at 8-9, 48.

The only Century policies at issue are from 1955 to 1962, and the only Travelers policies at issue are from 1968 to 1972. It is indisputable that *Romano* alleges that contamination causing continuing property damage and bodily injury began decades before these policies began, and that injury is alleged to have occurred entirely outside of the policy periods. Indeed, 22 of the 31

---

[7] For this motion, the Insurers accept Grumman's representation that operations began in 1938.

[8] *See also* JX13 ¶¶ 7-8; 26 (alleging contamination throughout "decades," and that "[m]any toxic chemicals were used and discharged into the environment by the Defendants during their operations").

14

*Romano* plaintiffs allege injury after 1972 (JX13 at 35-60), which only could have happened after the relevant Century and Travelers policies were over and Grumman was solely responsible for its liabilities to third parties. Unlike in *Olin*, there is an abundance of factual material, both in the *Romano* pleadings and in the larger record, to establish that injury was taking place continuously throughout the allocation period and that a pro rata spreading of defense costs across the years not only is feasible, but is the best fit with how the alleged injuries and damage occurred.

## **CONCLUSION**

Century and Travelers respectfully request that the Court deny Grumman's motion for summary judgment and grant the Insurers' respective cross-motions.

Dated: January 11, 2022
New York, New York

                                                 Respectfully submitted:

| | |
|---|---|
| By: /s/ *Mary Beth Forshaw* | By: */s/ Shane R. Heskin* |
| Mary Beth Forshaw<br>Lynn K. Neuner<br>Summer Craig<br>Robert Arnay | Shane R. Heskin<br>Adam M. Berardi (admitted *pro hac vice*) |
| SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY  10017-3954<br>Tel.:  (212) 455-2000<br>Fax:  (212) 455-2502<br>mforshaw@stblaw.com<br>lneuner@stblaw.com<br>scraig@stblaw.com<br>robert.arnay@stblaw.com | WHITE AND WILLIAMS LLP<br>One Penn Plaza, Suite 4110<br>New York, NY 10119<br>Tel.:  (212) 244-9500<br>Fax:  (215) 399-9603<br>heskins@whiteandwilliams.com<br>berardia@whiteandwilliams.com |
| *Attorneys for Plaintiffs The Travelers Indemnity Company and The Travelers Indemnity Company of Connecticut* | *Attorneys for Nominal Defendants Century Indemnity Company* |