UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
THE TRAVELERS INDEMNITY CO., et al.,                          :
                                      Plaintiffs,             :       16 Civ. 8778 (LGS)
                                                              :
            -against-                                         :       OPINION AND ORDER
                                                              :
NORTHROP GRUMMAN CORP., et al.,                               :
                                      Defendants.             :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

In this environmental insurance coverage action, the parties cross-move for summary judgment. Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation (together, "Grumman") seek a declaration that Plaintiffs The Travelers Indemnity Company and The Travelers Indemnity Company of Connecticut (together, "Travelers") and Defendant Century Indemnity Company ("Century") have a duty to defend Grumman in a putative class action lawsuit pending against Grumman, *Romano et al. v. Northrop Grumman Corporation et al.*, No. 16 Civ. 5760 (E.D.N.Y.) ("*Romano* Lawsuit"). Travelers and Century (the "Insurers") cross-move for declarations that they have no duty to defend Grumman in the *Romano* Lawsuit under the relevant policies. For the reasons below, Grumman's motion is denied, Century's motion is denied and Travelers' motion is granted.

I.    BACKGROUND

Familiarity with prior opinions in this action is assumed, but a brief description of facts and policies most relevant to the instant motions is provided below.

  A. The Bethpage Facility

From the 1930s through 1990s, Grumman operated an aircraft manufacturing and testing facility in Bethpage, New York, on Long Island ("Bethpage Facility"). An eighteen-acre parcel previously used as a dumping ground by Grumman in the Bethpage Facility was donated to the

Town of Oyster Bay in 1962, and now constitutes the Bethpage Community Park. Grumman's activities at the Bethpage Facility generated a plume of groundwater contamination on Long Island. The Bethpage Facility events are discussed in more detail in previous summary judgment opinions. *See, e.g.*, *Travelers Indem. Co., et al. v. Northrop Grumman Corp. et al.*, 413 F. Supp. 3d 263 (S.D.N.Y. 2019).

### B. The Romano Lawsuit

The *Romano* Lawsuit is a putative mass tort class action brought by residents and property owners near the Bethpage Facility on September 13, 2016. The Third Amended Complaint, which is the operative *Romano* Complaint ("*Romano* TAC"), asserts causes of action for negligence, strict liability, nuisance and trespass, and seeks damages for bodily injury allegedly sustained from exposure to chemicals purportedly released by Grumman into the air, soil and groundwater. The *Romano* TAC also seeks damages for property damage allegedly caused by exposure to such chemicals. It is undisputed that the *Romano* TAC alleges that the plaintiffs suffered bodily injury and property damage dating back to at least the late 1930s and running through at least 2016.

### C. Relevant Policies

The Century policies at issue in these motions are comprehensive general liability insurance policies with consecutive one-year policy periods from January 1, 1955, to January 1, 1962 (the "Century Primary Policies"). Each Century Primary Policy contains the following endorsement: "This policy applies only to occurrences and accidents which happen during the policy period . . ." The Century Primary Policies have two separate notice requirements. First, they require "written notice" of an accident or occurrence "as soon as practicable." Second, they require that Grumman "immediately forward to [Century] every demand, notice, summons or

2

other process received by [Grumman] or [its] representative." At issue here is the first requirement of a notice of occurrence. It is undisputed that Grumman complied with the second requirement by providing Century timely notice of the *Romano* Lawsuit.

The Travelers policies at issue are catastrophe umbrella policies with consecutive one-year policy periods running from January 1, 1968, to January 1, 1972 (the "Umbrella Policies"). Each Umbrella Policy contains a "Defense, Supplementary Payments" ("DSP") provision, which states:

> With respect to any claim or suit alleging bodily injury, personal injury, malpractice injury, advertising injury or property damage, insurance for which is not afforded by the underlying policies listed in Item 5 of the declarations or any other applicable insurance (hereinafter called "underlying insurance"), but which is insured by the terms and conditions of this policy (or would be so insured but for the application of the deductible amount stated in Item 4 of the declarations), the company shall: (a) defend, at the sole option of the insured, any suit against the insured . . . alleging such injury or damage and seeking damages on account thereof, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

## II.   STANDARD

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Choi v. Tower Research Capital LLC*, 2 F.4th 10, 16 (2d Cir. 2021) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving

3

party." *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

## III.   DISCUSSION

### A. Century's Duty to Defend

Century's motion for a declaration that it has no duty to defend Grumman in the *Romano* Lawsuit is denied because, as previously decided in this case, a more developed evidentiary record is needed to determine whether Grumman provided timely notice to Century about the occurrence underlying the *Romano* Lawsuit. Under the doctrine of law of the case, and a still undeveloped evidentiary record, that ruling is binding here.

Whether an insured's notice is timely depends on (1) when the insured's notice obligation arose and (2) whether the insured promptly gave notice within the timeframe of the policy. *See Mark A. Varrichio & Assocs. v. Chi. Ins. Co.*, 312 F.3d 544, 547 (2d Cir. 2002). The Century Primary Policies require "written notice" of an accident or occurrence "as soon as practicable." "Where a policy of liability insurance requires that notice of an occurrence be given 'as soon as practicable,' such notice must be accorded the carrier within a reasonable period of time." *Great Canal Realty Corp. v. Seneca Ins. Co.*, 833 N.E.2d 1196, 1197 (N.Y. 2005); *accord Travelers Indem. Co. v. Northrop Grumman Corp.*, 677 F. App'x 701, 705 (2d Cir. 2017) (summary order) (construing New York law). For policies issued before 2009, timely notice is a condition precedent to the duty to defend regardless of a showing of prejudice by the insurer. *See*

4

*Conergics Corp. v. Dearborn Mid-West Conveyor Co.*, 43 N.Y.S.3d 6, 12 (1st Dep't 2016);[1] *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 296 (S.D.N.Y. 2019).

"The law of the case doctrine forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings" in the same case except when "cogent and compelling reasons militate otherwise." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 21 (2d Cir. 2021) (internal quotation marks omitted). "Compelling reasons to revisit a decision include an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662–63 (2d Cir. 2020) (internal quotation marks omitted).

The issue here, whether Grumman provided timely notice of occurrence to Century for purposes of the occurrence that gave rise to the *Romano* Lawsuit, presents two questions. First, what occurrence gave rise to the *Romano* Lawsuit? And second, did Grumman provide timely notice of that occurrence? The first question has been addressed twice in this action. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 416 F. Supp. 3d at 299 ("*2019 Opinion*"); *Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 16 Civ. 8778, 2020 WL 1469550, at *6 (S.D.N.Y. Mar. 26, 2020) ("*2020 Opinion*"). There is no compelling reason to reconsider those rulings.

The *2019 Opinion* in this case considered the operative occurrences that gave rise to the *Romano* Lawsuit. Century sought, as it does here, a declaratory judgment that it has no duty to

---

[1] New York law governs the insurance policies because the parties have assumed throughout the litigation that it applies. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (Because "the parties' briefs assume that [a given] state law governs," such "implied consent is . . . sufficient to establish the applicable choice of law.").

defend or indemnify Grumman on the underlying *Romano* claims.  The Court held that the question of whether Grumman provided timely notice of occurrence could not be decided because the relevant set of occurrences could not be determined on the summary judgment record.  The Century Primary Policies do not define "occurrence," and, "[w]ithout any grouping language, the *Romano* plaintiffs' exposures cannot be grouped into a single 'occurrence'. . . A more developed evidentiary record is needed to resolve whether each *Romano* plaintiff's exposure to the contaminations is a unique 'occurrence,' or whether groups of plaintiffs were exposed at nearly the same time and in the same place, therefore warranting some aggregation."  *2019 Opinion*, 416 F. Supp. 3d at 299.  Based on that finding, the *2019 Opinion* denied Century's motion for a declaration on summary judgment that Century has no coverage obligation to Grumman for the *Romano* Lawsuit.

On a motion for reconsideration, the Court again found that Century's late notice defense could not be determined on the summary judgment record.  "The Century policies require notice 'when an occurrence occurs,' but do not define 'occurrence' or establish whether an occurrence arises when an insured has knowledge of injurious conditions (as in the Travelers policies) *or* knowledge of particular victim's and property's *exposures* to the conditions . . . If the latter interpretation applies to the Century policies, it is an open issue how many and at what time Grumman learned of each exposure."  *2020 Opinion*, 2020 WL 1469550, at *6.  The Court held that the meaning of "critical terms" must first be resolved and denied Century's motion.[2]  *Id.*

---

[2] As explained in the *2019 Opinion*, "[t]he closer in time and place incidents are, the more likely they are deemed one 'occurrence.'  Thus, the New York Court of Appeals in *Appalachian Insurance* held that each individual plaintiff's exposure to asbestos insulation was a separate 'occurrence,' but noted that in some cases, like for 'the accidental release of a hazardous substance . . . result[ing] in numerous injuries or losses . . . . the grouping of some or all of' the exposures into a single occurrence is appropriate."  *2019 Opinion*, 416 F. Supp. 3d at 299

These findings -- from the *2019 Opinion* and *2020 Opinion* -- are the law of the case. In the interest of fairness to the parties and efficiency for all concerned, there is no reason to relitigate the issue as discussed above -- that interpretation of the notice of "occurrence" or "accident" provision requires factual determinations not possible on the summary judgment record. Given the duration and complexity of this litigation, many issues have been vigorously litigated and resolved over time. Relitigating these issues would extend an already protracted litigation and run counter to the purpose of the law of the case doctrine, which is to achieve "fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 93, 102 (2d. Cir. 2009).

Century argues that this Court subsequently answered the question of what occurrence gave rise to the *Romano* Lawsuit. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 16 Civ. 8778, 2021 WL 4255073, at *4 (S.D.N.Y. Sept. 17, 2021) ("*2021 Opinion*"). The *2021 Opinion* addressed Travelers' duty to defend under various policies with qualified pollution exceptions to coverage. The Court found that the "*Romano* Lawsuit 'trace[s] back to the same [Bethpage] Facility groundwater contamination' as in *Grumman I*." *Id.* And in holding that the contamination underlying the *Romano* Lawsuit is the same contamination that was at issue in *Grumman I*, Century reasons, this Court has ruled that the occurrence itself is also the same.

Century reads the *2021 Opinion* too broadly. The *2021 Opinion*'s finding that the contamination was the same as in *Grumman I* is not broad enough to encompass "accident" or "occurrence" as defined with respect to the *Romano* Lawsuit. The decision addresses only the

---

(quoting *Appalachian Ins. Co. v. Gen. Elec. Co*., 863 N.E.2d 994, 1000-01 (N.Y. 2007)) (citation omitted).

*types* of discharges at the Bethpage facility.  The *2021 Opinion* does not consider the circumstances or timing of the *Romano* plaintiffs' alleged exposures and does not resolve the "grouping" issues identified in the *2019 Opinion* and *2020 Opinion*, such as whether each plaintiff's exposure "is a unique 'occurrence,' or whether groups of plaintiffs were exposed at nearly the same time and in the same place, therefore warranting some aggregation." *2019 Opinion*, 416 F. Supp. 3d at 299.  Century's argument is therefore mistaken, and the *2019 Opinion* and *2020 Opinion* remain the law of the case.

Century's motion for declaration that it has no duty to defend Grumman in the *Romano* Lawsuit is denied because that determination depends on whether Grumman provided Century with timely notice of occurrence.  Because the relevant occurrence cannot be defined at this juncture, this opinion does not address whether Grumman's notice was timely.

### B. Century's Defense Pending Resolution of the Lawsuit

Grumman's motion that Century must provide Grumman an immediate defense is denied.  In general, an "insurer's duty to defend and to indemnify are separate and distinct, and the former duty is broader than the latter." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir. 1989).  "The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased.  So long as the claims alleged against the insured rationally may be said to fall within the policy coverage, the insurer must come forward and defend." *Id.* (citations omitted).

However, "the added breadth arises out of the duty to provide a defense against even wholly frivolous, and thus non-indemnifiable, claims so long as the allegations fall within the policy's coverage." *Com. Unions Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 273 (2d. Cir. 1987).  The insured must still comply with a proper notice-of-claim provision in an

8

insurance policy, a condition precedent to all of an insurer's obligations under the policy, including the duty to defend. *Town of Smithtown v. Nat'l Union Fire Ins. Co.*, 594 N.Y.S.2d 318, 319 (1993); *see Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 223 (S.D.N.Y. 2016); *Maryland Cas. Co. v. W.R. Grace & Co. – Conn.*, No. 88 Civ. 4337, 1994 WL 167962, at *4 (S.D.N.Y. Apr. 29, 1994). The duty to defend is not triggered if notice to insurers is late, and the insurers have "no obligation to incur defense costs pending the judicial determination of whether timely notices of suits and occurrences were provided to the insurers." *Maryland Cas. Co.*, 1994 WL 167962, at *5. That is true even when the insured makes a sufficient showing on the complaint to support the insurer's duty to defend. *See, e.g., Diamond v. J.T. Tai & Co.*, No. 96 Civ. 8389, 1998 WL 55350, at *4-5 (S.D.N.Y. Feb. 10, 1998) (denying summary judgment as to insurer's duty to defend because threshold issue of proper notice of claim had not been resolved, even though claims reasonably fell under insurance policy).

As set forth above, the question of whether notice of occurrence was timely in the *Romano* Lawsuit cannot be resolved on the current record. More evidence is required before the relevant set of occurrences can be identified. *See 2019 Opinion*, 416 F. Supp. 3d at 299. Grumman consequently cannot show that notice to Century was timely. Grumman therefore fails to satisfy a condition precedent to coverage. Century thus has no duty to defend Grumman in the *Romano* Lawsuit and has no obligation to incur defense costs pending the judicial determination of whether Grumman provided timely notice of occurrence. Until that factual issue is resolved, no defense obligation can be determined.

Grumman argues that Century must provide a defense whenever there is a reasonable possibility of coverage, and that the broad defense obligation is triggered even if Century ultimately may have no indemnification obligation. The Court's denial of Century's summary

judgment motion in the *2019 Opinion* and *2020 Opinion* confirms that there is potential coverage under the Century Primary Policies. According to Grumman, the duty to defend arises as long as at least one allegation in the *Romano* Lawsuit does not foreclose the possibility that a bodily exposure or property exposure occurred during the period of a Century Primary Policy. That argument, however, conflates the insurer's duties after coverage is established with the insured's obligation to satisfy the conditions precedent to coverage at the threshold. Without satisfying the condition precedent that requires timely notice, the duty to defend -- no matter how broad -- never arises.

Grumman also contends that Century wants to delay a ruling on its defense obligation, thus "kick[ing] the can down the road." Grumman suggests that a contractual provision for a defense of suits would be useless and meaningless unless it is offered when the suit arises. This argument is unpersuasive because, as discussed above, it is contrary to the basic principle of contract law that conditions precedent must be satisfied before any contractual term ripens into an obligation. If Grumman ultimately proves that it provided timely notice, Century would, of course, be obligated to reimburse Grumman for defense costs. Grumman's motion for a declaration that Century has a duty to defend the *Romano* Lawsuit immediately is denied.

### C. Travelers' Duty to Defend

Travelers has no obligation to defend Grumman in the *Romano* Lawsuit under the terms of the Umbrella Policies. The Umbrella Policies are construed "like any ordinary contract." *Utica Mutual Ins. Co. v. Munich Reinsurance America, Inc.*, 7 F.4th 50, 56 (2d Cir. 2021) (applying New York law) (internal quotation marks omitted). "A contract 'that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id.* (quoting *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 91 N.E.3d 1186 (N.Y. 2017)).

"Whether a contract is ambiguous is a question of law, as is the meaning of an unambiguous contract." *Id.* "A contract is unambiguous if on its face [it] is reasonably susceptible of only one meaning . . . [c]onversely, [a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *LDIR, LLC v. DB Structured Products, Inc.*, 99 N.Y.S.3d 327, 330-31 (1st Dep't 2019) (internal quotation marks and citation omitted). In a coverage dispute, language in the relevant policies "must be interpreted according to common speech and consistent with the reasonable expectation of the average insured at the time of contracting, with any ambiguities construed against the insurer and in favor of the insured." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 183 N.E.3d 443, 447 (2021) (internal quotation marks omitted). If a contract's meaning is ambiguous, then the finder of fact may look to surrounding circumstances to determine the parties' intent. *See Global Reinsurance Corp. of Am.*, 91 N.E.3d at 518 ("Reinsurance, like any other contract, depends upon the intention of the parties, to be gathered from the words used, taking into account, when the meaning is doubtful, the surrounding circumstances.") (internal quotation marks omitted). A contract must not be interpreted "as impliedly stating something which the parties have neglected to specifically include," particularly when sophisticated, counseled parties negotiated the agreement at arm's length. *Id.* at 518-19. The Court may not rely on its "own familiar notions of economic efficiency" when determining whether a contract is ambiguous. *Id.* at 519 (Courts may not impute ambiguity "to reflect [its] personal notions of fairness and equity' '[i]f [the] contract is reasonably susceptible of only one meaning").

Under the Umbrella Policies, Travelers has a duty to defend "any claim or suit alleging bodily injury, personal injury . . .or property damage . . ., insurance for which is not afforded by the underlying policies listed in Item 5 of the declarations or any other applicable insurance . . .,

11

but which is insured by the terms and conditions of this policy." The parties do not dispute that, but for Travelers' late notice, coverage would have been available under the Travelers' primary policies in effect between 1968 and 1972.

The parties' disagreement centers around the term "afforded" in the Umbrella Policies. Grumman argues that it is entitled to defense costs because it did not recoup them under the primary policies -- i.e., that the term "afforded" refers to whether a defense is actually provided or furnished by the primary policies for a given suit, not whether the policies generally provide for defense coverage. The Insurers contend that Grumman is not entitled to defense costs on the Umbrella Policies because coverage is "afforded" under the primary policies -- i.e., that the risk or loss is within the scope of coverage of the primary policies.

Because the Umbrella Policies do not define "afforded," the word is given its ordinary meaning. *See Federal Ins. Co. v. American Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011) (applying New York law); *Prusik v. Liberty Mutual Ins. Grp. Inc.*, 158 N.Y.S.3d 441, 443 (4th Dep't 2021) ("Because that term is undefined in the policy, it should be construed so as to give the term its ordinary and accepted meaning . . .") (internal quotation marks omitted). The dictionary definition of "afforded" is: "[1] to manage to bear without serious detriment; [2] to be able to bear the cost of; and [3] to make available, give forth, or provide naturally or inevitably." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/afforded (last visited Sept. 19, 2022). In the context of the Umbrella Policies, the third definition -- to make available, give forth, or provide -- is most relevant. Applying this definition, Travelers's duty to defend arises under the Umbrella Policies only if insurance is not "afforded" -- i.e., made available or provided -- by the primary policies.

12

The Umbrella Policies provide coverage when "insurance . . . is not afforded by the underlying policies." Grumman's proposed interpretation would require the Court to interpret "insurance" to mean "payment," which is not supported by the plain language of the contract. Had the parties intended umbrella coverage to be available when the primary policies are uncollectible, the Umbrella Policies would have expressly stated this by using terms referring to collection or recoverability. An example is in clause (g) of Insuring Clause I, which states that indemnification coverage is not available to the extent "any valid and *collectible* insurance . . . is available to the insured . . ." (emphasis added). As Grumman acknowledges, "[w]hen an excess insurer uses the term 'collectible' or 'recoverable' it is agreeing to drop down in the event the primary coverage becomes uncollectible or unrecoverable . . ." *See Garay v. Nat'l Grange Mut. Ins. Co.*, 117 F. App'x 785, 789 (2d Cir. 2004) (summary order) (rejecting insurer's argument that the supplemental umbrella policy came into effect only upon exhaustion of the underlying policy where the policy provided that the insured would indemnify "whether such underlying insurance is *collectible* or not") (emphasis added).

Interpreting "afforded" to mean that the risk or loss is within the scope of coverage of the primary policies is also consistent with the use of the terms "afforded" and "insurance" elsewhere in the Umbrella Policies. For instance, the Limits of Liability section states that, "with respect to any occurrence for which insurance is afforded hereunder . . . the company's liability is limited as follows." Here, if "afforded" and "insurance" were interpreted to mean whether defense or payment costs were actually provided under the Umbrella Policies, then this provision, which purports to set the policy limits, would be meaningless.

Grumman argues in the alternative that the meaning of "afforded" is ambiguous. As explained above, the terms in the Umbrella Policies prescribing Travelers' duty to defend are

13

unambiguous and must be given their plain meaning. Travelers's motion for a declaration that it has no duty to defend Grumman in the *Romano* Lawsuit under the Umbrella Policies is granted. Grumman's motion to the contrary is denied.

### D. Justiciability of Grumman's Motion against Century

Regardless of the outcome of Travelers' cross motion, Grumman's motion as to Century may be decided at this time. The Insurers argue that if Travelers' cross-motion is granted (as it is), Travelers' allocation claim against Century is moot and Grumman's motion as to Century can no longer proceed because no cross-claim exists between them. This argument was previously raised in this action by Grumman and rejected. *See 2019 Opinion*, 416 F. Supp. 3d at 297. Federal Rule of Civil Procedure 56 and the Declaratory Judgment Act generally permit any "party" or "interested party" to move for summary judgment and seek a declaration. As the Court concluded in its previous decision, it would be needlessly technical and inefficient to deny Grumman's motion as to Century, only then to allow Grumman or Century to amend their Answers to assert a cross-claim, and then renew this motion on the new claim.

### IV. CONCLUSION

For the reasons stated above, Grumman's motion for summary judgment is denied, Century's cross motion is denied and Travelers' cross motion is granted. Century has no immediate duty to defend under the Century Primary Policies for the *Romano* Lawsuit. Travelers has no obligation to defend the *Romano* Lawsuit under the Umbrella Policies. By October 5, 2022, the parties shall file a joint status letter with proposed next steps in this action.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 438, 450-451.

Dated: September 23, 2022
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE